# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| Steven Jude Hoffenberg, individually, and as constructive trustee of the Noteholders and Bondholders of Towers Financial Corporation, | Index No.<br><br>**RELATED ACTIONS:**<br>**Case No. 94 CR 213 (RWS)** |
| Plaintiff, | **Case No. 95 CR 213 (RWS)** |
| v. | **JUDGE ROBERT W. SWEET** |
| Jeffrey E. Epstein, individually, and as President and Chief Executive Officer of The Financial Trust Company, The Financial Trust Company, XYZ Corp. and ABC, Inc. | |
| Defendant. | **COMPLAINT** |

-------------------------------------------------------------------X

Steven Jude Hoffenberg ("Mr. Hoffenberg") as the Plaintiff, individually, and as constructive trustee of the Noteholders and Bondholders of Towers Financial Corporation, by his co-counsels, Gary H. Baise, Esq., and Alan P. Fraade, Esq., brings this Complaint against the Defendants, Jeffrey E. Epstein ("Mr. Epstein"), individually, and as President and Chief Executive Officer of The Financial Trust Company, The Financial Trust Company, XYZ Corp. and ABC, Inc., as follows:

## PARTIES

1.     Mr. Hoffenberg is a resident of the State of New York and at all relevant times, was Chief Executive Officer of Towers Financial Corporation, ("TFC") a dissolved Nevada corporation which had its principal place of business in New York, New York at all relevant times.

2.     Mr. Epstein, a co-conspirator in connection with the fraudulent Ponzi schemes described herein, is an individual with a residence at 9 East 71st Street, New York, New York 10021, and at all relevant times, was a full-time associate and expert consultant for Mr. Hoffenberg

in financial services including raising capital by selling securities of Mr. Hoffenberg's companies including, but not limited to, TFC.

3.      Upon information and belief, The Financial Trust Company is a fifty billion ($50,000,000,000) dollar hedge fund which was formed by Mr. Epstein, or on his behalf, under the laws of St. Thomas in the U.S. Virgin Islands, sometime between 1995 and 1997.

4.      Defendants XYZ Corp. and ABC, Inc. are fictitious names; Mr. Hoffenberg hereby reserves his right to amend this Complaint as a result of pleading such fictitious parties. It should be noted that Defendants XYZ Corp. and ABC, Inc. are limited to specific companies which are financial and real estate companies, or subsidiaries thereof, including, but not limited to, holding companies, trust companies and hedge funds, which have been created, owned or managed by Mr. Epstein during the period beginning from his employment under Mr. Hoffenberg to the present. Upon information and belief, such companies were created by and/or received the monies, securities or proceeds which were obtained and/or raised pursuant to the fraudulent Ponzi schemes described herein. Defendants XYZ Corp. and ABC, Inc. are entities which have misappropriated or converted such monies, securities and proceeds but are not, as of yet, known in this Complaint.

5.      Defendants XYZ Corp., ABC, Inc. and The Financial Trust Company shall hereinafter be collectively referred to as the "Epstein Ponzi Companies"

6.      At all relevant times, as co-conspirator with Mr. Hoffenberg, TFC and other agents of TFC, Mr. Epstein managed, and continues to control, the Epstein Ponzi Companies, which include a number of financial companies and real estate companies including, but not limited to, the Financial Trust Company. The Epstein Ponzi Companies were incorporated and created

entirely with the monies in excess of five hundred million ($500,000,000) dollars, which were fraudulently acquired through fraudulent Ponzi schemes described herein.

7.     In or around 1997, Mr. Hoffenberg was convicted for a Ponzi scheme in connection with securities frauds committed at TFC (the "TFC Ponzi Fraud"), which resulted in approximately five hundred million ($500,000,000) dollars in losses to over 200,000 individuals who directly or indirectly purchased the Bonds and Promissory Notes sold by TFC between the late 1980s to the mid-1990s (the "Noteholders and Bondholders"). During the period between the late 1980s and mid-1990s, the Noteholders and Bondholders paid monies in consideration for Bonds and Promissory Notes sold by TFC, in reliance upon the memoranda, financial statements and supporting documents which were issued by TFC and promised profitable investments.

8.     The proceeds acquired from the Noteholders and Bondholders as a result of Mr. Epstein's fraudulent Ponzi schemes, described herein, including, but not limited to, the TFC Ponzi Fraud, created a constructive trust. A constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.  Simonds v. Simonds,  45 N.Y 2d 233, 408 N.Y.S.2d 359 (1978). Mr. Epstein and the Epstein Ponzi Companies, *i.e.* the holders, acquired securities and proceeds, *i.e.* the property, by creating and operating fraudulent Ponzi schemes, described herein, such that the Defendants were unjust enriched, and therefore, may not in good conscience retain the beneficial interests.

9.     Mr. Hoffenberg is acting on behalf of the Noteholders and Bondholders as a constructive trustee pursuant to relevant New York common and case law. Mr. Hoffenberg has a

fiduciary duty to exercise the utmost good faith and loyalty towards the Noteholders and Bondholders, who are the victims of the TFC Ponzi Fraud. <u>Bodden v Kean</u>, 86 AD3d 524, 526 (2nd Dept 2011) (The Supreme Court set forth the elements of a cause of action to impose a constructive trust: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment).

## <u>RELATED ACTION</u>

10.     Mr. Hoffenberg files this Complaint as a Related Action to <u>United States of America v. Steven Hoffenberg</u>, 94 Cr. 213 (RWS), 95 Cr. 321 (RWS), 1997 U.S. Dist. LEXIS 2394 (S.D.N.Y. Mar. 4, 1997), in which the District Court convicted Mr. Hoffenberg of conspiracy to violate securities laws by fraudulently selling securities in violation of 18 U.S.C. § 371, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1342, conspiracy to obstruct justice in violation of 18 U.S.C. § 371, and tax evasion in violation of 26 U.S.C. § 7201.

11.     In the following Sentencing Opinion dated March 4, 1997, issued by the Honorable Judge Sweet, with respect to the TFC Ponzi Fraud, (the õSentencing Opinionö) Mr. Hoffenberg was sentenced to (i) twenty (20) years of imprisonment, followed by three (3) years of supervised release, (ii) a fine of one million ($1,000,000) dollars and (iii) restitution owed in the amount of $475,157,340 plus interest, which, with over 19 years of accrued interest, now totals approximately one billion ($1,000,000,000) dollars, which represents the losses as determined by the Bankruptcy Court of the victims of the TFC Ponzi Fraud.

12.     Mr. Hoffenberg was the sole Defendant in <u>Hoffenberg</u> and is the Plaintiff, acting as constructive trustee to the victims of the TFC Ponzi Fraud, in this present case. <u>Hoffenberg</u> and

this present case implicate the same or similar negligent, wrongful and fraudulent activities and substantial common issues of fact in connection with the fraudulent Ponzi schemes, described herein. Both involve conspiracies to defraud the same members of the public and the same Illinois insurance companies. No discovery demands have been made as to Mr. Epstein and the Epstein Ponzi Companies in _Hoffenberg_.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. In addition, the sum or value of the claims in this case, exclusive of interest and costs, exceeds $50,000. There is diversity of citizenship among the Parties. Therefore, this Court has jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1332(a).

14.     Mr. Hoffenberg resides in this District and, at all relevant times, the claims arose in this District. The Parties either do or did business in this District and many of the unlawful practices described herein occurred in this District. Venue in the Southern District of New York is, therefore, proper pursuant to 28 U.S.C. § 1391(a)

15.     In or around 1994, a multi-district order was issued by Honorable Judge Whitman Knapp in the this District Court which mandates that all future litigation against Mr. Hoffenberg and TFC, in connection with the fraudulent Ponzi schemes described herein, can only be held in this District Court.

16.     The Noteholder and Bondholders, *i.e.* victims of the TFC Ponzi Fraud, are not time-barred from receiving the restitution pursuant to the Mandatory Victims Restitution Act (the

õMVRAö). The MVRA grants the Government the authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means. <u>United States v. Phillips</u>, 303 F.3d 548, 550-51 (5th Cir. 2002). In addition, it is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. <u>United States v. Summerlin</u>, 310 U.S. 414, 416, 60 S. Ct. 1019, 1020 (1940).

17.     Mr. Hoffenberg, acting as a constructive trustee on behalf of the Noteholders and Bondholders, asserts this claim against Mr. Epstein and the Epstein Ponzi Companies so as to allow the United States to exercise its authority to enforce the victim restitution order pursuant the Sentencing Opinion, and therefore, is not bound by the Statute of Limitation.

## <u>STATEMENT OF FACTS</u>

18.     From 1975 through April 1993, Mr. Hoffenberg served as Chief Executive Officer of TFC, a corporation which owned and conducted business through over ten (10) operating subsidiaries, which provided financial services and assistance to its clients, and generated substantial revenues per year.

19.     Mr. Epstein, who was also referred to as õThe Talented Mr. Epsteinö in the March 2003 issue of the magazine <u>VANITY FAIR</u>, provided services including, but not limited to, assisting Mr. Hoffenberg full-time in all matters of business operations and management of TFC, including, but not limited to, raising capital as a co-conspirator in connection with the TFC Ponzi Fraud.

20.     Accordingly, every claim which was made against Mr. Hoffenberg in <u>Hoffenberg</u> was against õHoffenberg *and his co-conspirators*ö (emphasis added) as written throughout the

Sentencing Opinion. Mr. Hoffenberg's co-conspirators included Mr. Epstein and The Financial Trust Company.

21. TFC, the Financial Trust Company, Mr. Hoffenberg, Mr. Epstein and other agents of TFC operated a classic Ponzi scheme from the late 1980s to mid-1990s. They succeeding in soliciting over five hundred million ($500,000,000) dollars in investments from participants, all of which they misappropriated for improper and personal uses. They also misappropriated in excess of six million ($6,000,000) dollars in securities and cash from assets or accounts properly belonging to other companies, as described below.

22. Mr. Epstein's consultation services included, among others, creating and executing a Ponzi scheme (the "Insurance Ponzi Fraud") to finance bids to take over Pan American Airways, Inc. ("Pan Am") in 1987 and Emery Air Freight Corp. ("Emery") in 1988 through TFC's acquisition of a controlling interest in United Diversified Corporation ("UDC") and, as a result, UDC's two ailing subsidiaries, Associated Life Insurance Co. and United Fire Insurance Co., (the "Subsidiaries"). Hoffenberg, 1997 U.S. Dist. LEXIS 2394, at *2.

23. Mr. Epstein's Insurance Ponzi Fraud scheme included, among others, trading, buying and selling securities in order to generate a profit for TFC and UDC and its Subsidiaries; and because he did not have a broker's license, Mr. Epstein traded, sold and purchased stock, bonds and other securities through others. Mr. Epstein misappropriated the proceeds for personal use in connection with his investment business.

24. In order to win approval for the Acquisition by the Illinois Department of Insurance, Mr. Hoffenberg, Mr. Epstein and other individuals of TFC, promised to invest new capital in the

amount of $3,000,000 in each of the Subsidiaries pursuant to the Acquisition. *Id.* Instead, however, Mr. Hoffenberg and Mr. Epstein fraudulently utilized three million ($3,000,000) dollars of the Subsidiaries' bonds as collateral in securities brokerage accounts in order to purchase Pan Am and Emery stocks. *Id.* at *2-3.

25.      TFC and UDC and its Subsidiaries suffered trading losses of over $80,000 as a result of the failed attempt to acquire Pan Am and losses of over one million ($1,000,000) dollars as a result of the failed attempt to acquire Emery. Mr. Epstein improperly and knowingly removed the Subsidiaries' bonds from TFC and UDC to use as collateral in order to purchase the Emery shares.

26.      Mr. Epstein manipulated the price of Emery stock to minimize the losses which occurred when Mr. Hoffenberg's and Mr. Epstein's bids failed and the share price began to fall. This involved multiple brokerage accounts which were controlled by Mr. Epstein.

27.      In 1991, James W. Schacht, acting Director of Insurance of the State of Illinois, in his capacity as Conservator of UDC and as Liquidator of UDC's Subsidiaries, ("Mr. Schacht") sued Mr. Hoffenberg, TFC and several other individuals, executives and directors of TFC, (the "Insurance Lawsuit") which was settled pursuant to a settlement agreement dated May 4, 1992.

28.      Although Mr. Epstein was not named as a defendant in the Insurance Lawsuit, the Complaint submitted by Mr. Schacht alleged that Mr. Epstein and his company were recipients of improper disbursement of funds in the form of checks which were drawn from accounts of UDC and its Subsidiaries in connection with Insurance Ponzi Fraud.

29.     As was alleged in the Complaint filed by Mr. Schacht, Mr. Epstein benefitted from unjust enrichment in the form of monthly checks in the amount of $25,000 and received an aggregate of approximately $215,000 from such funds for his services including broker's fees on investment advice, in connection with the Insurance Ponzi Fraud.

30.     In addition, Mr. Epstein misappropriated and transferred the investments and cash belonging to UDC and its Subsidiaries for his personal use and benefit.  Mr. Epstein 's unjust enrichment came from all of the bonds owned by the Subsidiaries, valued in excess of two million five hundred thousand ($2,500,000) dollars, to brokerage accounts in the State of New York.

31.     In late-1980s, TFC became insolvent and Mr. Hoffenberg, Mr. Epstein and other individuals at TFC devised another fraudulent Ponzi scheme, as part of the TFC Ponzi Fraud, to raise capital for TFC by selling Promissory Notes, which were sold pursuant six (6) separate private placement offerings and induced potential investors by providing fraudulent financial statements. The six offerings resulting in the sale of approximately two hundred seventy two million ($272,000,000) dollars in Promissory Notes throughout the United States. The financial statements provided to potential investors used bogus income and asset figures to conceal TFC's true financial condition. Most of the proceeds from the sale of the Promissory Notes were used to pay TFC's operating expenses and the Promissory Notes were not properly collaterized.

32.     In or around July 1990, Mr. Hoffenberg, Mr. Epstein and other individuals at TFC devised another fraudulent Ponzi scheme, as part of the TFC Ponzi Fraud, to raise additional capital and to expand TFC by engaging in the fraudulent sale of a series of double-A rated Bonds, which were sold pursuant to five (5) separate private placement memoranda and induced potential

purchasers by providing fraudulent financial statements. TFC sold approximately two hundred ten million ($210,000,000) dollars in Bonds throughout the United States. Like the Promissory Notes, the financial statements provided to potential investors used bogus income and asset figures to conceal TFC's true financial condition. Most of the proceeds from the sale of the Bonds, like the Promissory Notes, were used to pay TFC's operating expenses.

33.     In or around 1989, the Securities and Exchange Commission ("SEC") commenced an investigation of the TFC Ponzi Fraud, which involved the fraudulent sales of TFC securities, *i.e.* the Promissory Notes and Bonds, in an amount over <u>eight hundred million ($800,000,000) dollars</u>, which ultimately resulted in a lawsuit against TFC.

34.     In or around March 1993, after the SEC commenced a lawsuit against TFC, TFC filed for Chapter 11 bankruptcy protection, and the Noteholders and Bondholders filed claims with the Bankruptcy Court to support their loss claims. See <u>In re Towers Financial Corporation, et al.</u>, Case No. 93-B-41558 (PBA) (Dec. 8, 1994).

35.     In or around April 1996, the Bankruptcy Court determined that the remaining claims of the Noteholders and Bondholders, in the total amount of $475,157,340, were valid claims.

36.     In or around the early to mid-1990s, approximately one hundred (100) lawsuits, including, but not limited to, the cases listed below, were filed in the District Court of the Southern District of New York against Mr. Hoffenberg and TFC in connection with the TFC Ponzi Fraud:

| 1:89-cv-01689-RO | Foti v. Towers Financial Cor | filed 03/13/89   closed 01/04/90 |

| | | | |
|---|---|---|---|
| 1:92-cv-08998-SS | United Air Fleet v. Hoffenberg, et al | filed 12/14/92 | closed 11/16/93 |
| 1:93-cv-00810-WK-AJP | Gold, et al v. Towers Financial, et al | filed 02/10/93 | closed 01/05/00 |
| 1:93-cv-00855-WK-KAR | Field v. Twrs Financial Corp., et al | filed 02/11/93 | closed 10/31/95 |
| 1:93-cv-00987-WK | Ziegler v. Twrs Financial Corp., et al | filed 02/19/93 | closed 01/05/00 |
| 1:93-cv-01045-WK | Izzo v. Towers Financial, et al | filed 02/23/93 | closed 01/05/00 |
| 1:93-cv-01047-WK | Batten, et al v. Towers Financial, et al | filed 02/23/93 | closed 01/05/00 |
| 1:93-cv-01094-WK | Casey, et al v. Twrs Financial Corp., et al | filed 02/25/93 | closed 01/05/00 |
| 1:93-cv-01095-WK | Leibman, et al v. Towers Financial, et al | filed 02/25/93 | closed 01/05/00 |
| 1:93-cv-01155-WK | Penner v. Towers Financial, et al | filed 03/01/93 | closed 01/05/00 |
| 1:93-cv-01303-WK | Thom, et al v. Twrs Financial Corp., et al | filed 03/04/93 | closed 01/05/00 |
| 1:93-cv-01543-WK | Siudmak, et al v. Towers Financial, et al | filed 03/12/93 | closed 01/05/00 |
| 1:93-cv-01686-WK-KAR | Bank Of Cape Verde v. TFC Funding Corp., et al | filed 03/17/93 | closed 03/10/97 |
| 1:93-cv-04449-WK | Dinsmore v. Towers Financial, et al | filed 06/30/93 | closed 08/19/98 |
| 1:94-cv-00619-WK-KAR | Davis v. Hoffenberg, et al | filed 02/01/94 | closed 08/02/00 |
| 1:94-cv-00724-WK | Rothman v. Hoffenberg | filed 02/04/94 | closed 08/02/00 |
| 1:94-cv-00725-WK | General Retirement, et al v. Hoffenberg, et al | filed 02/04/94 | closed 04/30/98 |
| 1:94-cv-00814-WK | Izzo, et al v. Hoffenberg, et al | filed 02/08/94 | closed 08/02/00 |
| 1:94-cv-02727-WK | Amer. Int'l. Lines, et al v. Towers Financial, et al | filed 04/14/94 | closed 11/30/98 |
| 1:94-cv-09344-WK-AJP | Sheridan, et al v. Hoffenberg, et al | filed 12/29/94 | closed 06/26/96 |
| 1:96-cv-04656-MGC | Cohen, et al v. Hoffenberg, et al | filed 06/21/96 | closed 06/28/96 |
| 1:96-cv-05125-PKL | Cohen, et al v. Hoffenberg, et al | filed 07/08/96 | closed 07/15/96 |
| 1:93-cv-01080-WK-KAR | Shawmut Bank v. Towers Financial, et al | filed 02/25/93 | closed 03/18/98 |
| 1:94-cv-01792-WK | Shawmut Bank Conn. v. Hoffenberg, et al | filed 03/15/94 | closed 08/02/00 |
| 1:90-cv-00056-LBS | Sahlen & Assoc. v. Towers Financial Cor | filed 01/04/90 | closed 12/10/90 |
| 1:88-cv-09178-RWS | Associated Dry Goods v. Towers Financial | filed 12/28/88 | closed 03/06/91 |
| 1:93-cv-00992-WK | Riviera v. Towers Financial, et al | filed 02/19/93 | closed 01/05/00 |
| 1:93-cv-01543-WK | Siudmak, et al v. Towers Financial, et al | filed 03/12/93 | closed 01/05/00 |
| 1:93-cv-04449-WK | Dinsmore v. Towers Financial, et al | filed 06/30/93 | closed 08/19/98 |
| 1:91-cv-05231-LJF | Superstock, Inc. v. Towers Fin. Corp., et al | filed 08/01/91 | closed 04/28/92 |
| 1:93-cv-00961-WK | Murphy, et al v. Twrs Financial Corp., et al | filed 02/18/93 | closed 03/24/97 |

| 1:93-cv-00987-WK | Ziegler v. Twrs Financial Corp., et al | filed 02/19/93 | closed 01/05/00 |
| 1:93-cv-01927-WK | Von Stange v. Twrs Financial Corp., et al | filed 03/24/93 | closed 02/21/97 |

37.     Pursuant to <u>Hoffenberg</u> and the Sentencing Opinion, the victims of the TFC Ponzi Fraud, which include over 200,000 individuals who are directly or indirectly the Noteholders and Bondholders of TFC, are entitled to $475,157,340, plus interest, which now totals approximately one billion ($1,000,000,000) dollars.

38.     The Sentencing Opinion sets forth fraudulent wrongful acts which were committed by Mr. Hoffenberg õand his co-conspiratorsö, *i.e.* Mr. Epstein and the Epstein Ponzi Companies. As per the Sentencing Opinion, Mr. Hoffenberg <u>and his co-conspirators</u>, *i.e.* Mr. Epstein and the Epstein Ponzi Companies, (i) used certain of the Subsidiariesø bonds as collateral in securities brokerage accounts in order to purchase stock of Pan Am and Emery in connection with the Insurance Ponzi Fraud; (ii) created false documents and filed false pleadings in related legal proceedings brought by state insurance regulators, closed out securities positions without regard to the profitability of the transactions; committed and suborned perjury, and concealed their fraudulent activities in connection with state insurance regulatorsø investigations in connection with the Insurance Ponzi Fraud; (iii) devised plans to sell Bonds and Promissory Notes and fraudulently induced the purchase of such Bonds and Promissory Notes in connection with the TFC Ponzi Fraud; (iv) in addition to creating fraudulent financial statements, arranged to have a certified public accountant falsely certify that the financial statements accurately reflected TFCøs financial condition; (v) although the Promissory Notes were not properly collaterized, represented to investors that the face value of the collateral exceed the face value of the Promissory Notes; (vi) deliberately misrepresented how investor funds would be used, and misused the proceeds from the

sale of the Bonds; (vii) used substantial amounts of the proceeds from the sales of the securities to meet TFC's operating expenses; (viii) created phony receivables to mispresent the true financial pictures of the Bonds; and (viii) agreed from the outset of the SEC's investigation to take whatever steps they deemed necessary to obstruct that investigation and conceal their criminal activities.

39.    Mr. Epstein continues to control the Epstein Ponzi Companies which wrongfully possess all of the money which Mr. Epstein fraudulently acquired from the Noteholders and Bondholders through the TFC Ponzi Fraud and the Insurance Ponzi Fraud and the profits earned from such monies. Such funds were misappropriated by Mr. Epstein and transferred as capital for the Epstein Ponzi Companies including, but not limited to, The Financial Trust Company.

40.    Mr. Hoffenberg, for over fifteen (15) years, has made every effort to expose Mr. Epstein's fraudulent Ponzi schemes and the Epstein Ponzi Companies as the source for the $475,157,340, plus interest, which now totals approximately one billion ($1,000,000,000) dollars, owed to the Noteholders and Bondholders.

41.    Mr. Epstein, individually, and by and through the Epstein Ponzi Companies, continuously conceals his fraudulent Ponzi schemes from banks, financial institutions and current investors of his margin account syndication.

42.    Mr. Epstein continues to deny his involvement in the TFC Ponzi Fraud and the Insurance Ponzi Fraud and continues to wrongfully possess the funds to which the Noteholders and Bondholders of TFC are entitled as victims of the TFC Ponzi Fraud.

## FIRST CAUSE OF ACTION

(Fraud)

43. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs õlö through õ42ö with the same force and effect as if more fully set forth herein.

44. With the intent to derive the use, enjoyment and profits from UDC and its Subsidiaries and from the Noteholders and Bondholders, and with the intent to injure such entities and individuals, Mr. Epstein devised the Insurance Ponzi Fraud and the TFC Ponzi Fraud pursuant to which he participated in acquiring the assets and funds from such entities and individuals though TFC for his own personal gain or use, or the gain or use of the Epstein Ponzi Companies.

45. Under the guise of acting for UDC and its Subsidiaries and for the Noteholders and Bondholders, Mr. Epstein created and executed several fraudulent Ponzi schemes.

46. Mr. Epstein concealed his actual intentions of converting the assets of UDC and its Subsidiaries and of the Noteholders and Bondholders to himself or the Epstein Ponzi Companies for his own personal gain or use.

47. Mr. Epstein transferred securities and cash valued in excess of five hundred million ($500,000,000) dollars, which properly belonged to UDC and its Subsidiaries and to the Noteholders and Bondholders of TFC and from which Mr. Hoffenberg is to make restitution as per the Sentencing Opinion. Mr. Epstein improperly removed such securities and assets from TFC to the Epstein Ponzi Companies including, but not limited to, The Financial Trust Company, and used the funds for the benefit of himself and/or the Epstein Ponzi Companies.

48. Mr. Epstein made these transfers knowing that the funds were not being used on

14

behalf of UDC and its Subsidiaries or the Noteholders and Bondholders, intending to transfer the funds to himself or to the Epstein Ponzi Companies for his own personal gain or use.

49.     TFC reasonably relied upon the Ponzi schemes which were created and executed by Mr. Epstein and that such schemes were in the best interests of TFC.

50.     UDC and its Subsidiaries reasonably relied upon the Ponzi schemes which were created and executed by Mr. Epstein and that such schemes were in the best interests of UDC and its Subsidiaries.

51.     The Noteholders and Bondholders reasonably relied upon the fraudulent Ponzi schemes which were created and executed by Mr. Epstein and that such schemes were in the best interests of the Noteholders and Bondholders.

52.     In an effort to conceal the fraud from Mr. Hoffenberg and the Noteholders and Bondholders, Mr. Epstein continues to hide and refuses to identify the securities and funds which were improperly transferred.

53.     In an effort to conceal the fraud from banks, financial institutions and current investors of his holdings and syndication of õmargin accountsö, Mr. Epstein continues to hide and refuses to identify the securities and funds which were improperly transferred.

54.     As a direct and proximate result of the foregoing fraudulent acts, UDC and its Subsidiaries have been damaged.

55.     As a direct and proximate result of the foregoing fraudulent acts, the Noteholders and Bondholders and Mr. Hoffenberg, acting as the constructive trustee acting on behalf of the Noteholders and Bondholders of TFC, have been damaged.

56.     The Defendants at all times acted with malice.

57.     The fraudulent actions of the Defendants merit the imposition of punitive damages.

## SECOND CAUSE OF ACTION

(Conversion and Unjust Enrichment)

58.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs ö1ö through ö57ö with the same force and effect as if more fully set forth herein.

59.     During the period of approximately 1987 through 1993, Mr. Epstein caused the transfer of securities, cash and assets in excess of $500,000,000 from assets or accounts in TFC properly belonging to UDC and its Subsidiaries and to the Noteholders and Bondholders who invested in bonds and promissory notes issued by TFC.

60.     Through these transfers, Mr. Epstein, by and through the Epstein Ponzi Companies, intentionally converted and disposed of the cash and interest earned on the securities for the benefit or use of Mr. Epstein and the Epstein Ponzi Companies.

61.     As a direct and proximate result of these improper acts by Mr. Epstein and the Epstein Ponzi Companies, UDC and its Subsidiaries, the Noteholders and Bondholders and Mr. Hoffenberg, acting as the constructive trustee acting on behalf of the Noteholders and Bondholders, have been damaged in the aggregate amount in excess of $500,000,000.

## THIRD CAUSE OF ACTION

(Breach of Fiduciary Duty)

62.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs õ1ö through õ61ö with the same force and effect as if more fully set forth herein.

63.     As an associate, consultant and employee of Mr. Hoffenberg and TFC, Mr. Epstein was a fiduciary and owed certain duties to UDC and its Subsidiaries and to the Noteholders and Bondholders including, but not limited to, the duty to exercise the highest degree of honesty, care, good faith and loyalty in handling the securities of TFC, UDC and its Subsidiaries and in handling the investments made by the Noteholders and Bondholders.

64.     Upon information and belief, beginning in or around 1990, through the present, Mr. Epstein, in breach of his fiduciary duties and in violation of New York law, (A) transferred cash from the accounts of UDC and its Subsidiaries for his personal use and for his companies, (B) made a series of imprudent investments and loans resulting in a loss of considerable sums of money to UDC and its Subsidiaries, and (C) concealed the true financial transactions of the Epstein Ponzi Companies from Mr. Hoffenberg, TFC, UDC and its Subsidiaries and the Noteholders and Bondholders, which involved in excess of $500,000,000. Presently, Mr. Epstein and the Epstein Ponzi Companies continue to conceal their true financial transactions from banks, financial institutions and current investors of a syndication of margin accounts.

65.     These breaches of fiduciary duty were fraudulent, a conflict of interest with Mr. Hoffenberg, TFC, UDC and its Subsidiaries and with the Noteholders and Bondholders and

constituted waste and mismanagement of the securities and investments of such entities and individuals.

66.     As a direct and proximate result of Mr. Epstein's willful, wanton and malicious breaches of fiduciary duties, individually, and by and through The Financial Trust Company, the UDC and its Subsidiaries, the Noteholders and Bondholders and Mr. Hoffenberg, acting as the constructive trustee acting on behalf of the Noteholders and Bondholders of TFC, were damaged.

## FOURTH CAUSE OF ACTION

### (Negligence)

67.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "66" with the same force and effect as if more fully set forth herein.

68.     As a member of executive and/or investment committees formed to make decisions with respect to the investment of UDC and its Subsidiaries and of the Noteholders and Bondholders, Mr. Epstein owed a duty to the UDC and its Subsidiaries and to the Noteholders and Bondholders of TFC to exercise reasonable business judgment in the handling of the securities and investments of such entities and individuals.

69.     Beginning in or around 1987 through the present, Mr. Epstein, in breach of his duties, negligently invested the funds of UDC and its Subsidiaries in securities that were inappropriate investments and caused UDC and its Subsidiaries to lose approximately $2,000,000.

70.     Beginning in or around 1987 through the present, Mr. Epstein, in breach of his obligations, negligently transferred securities and cash in excess of $500,000,000 from assets or

accounts in TFC properly belonging to the Noteholders and Bondholders who invested in bonds and promissory notes issued by TFC, into the Epstein Ponzi Companies.

71.     As a direct and proximate consequence of Mr. Epstein's negligence, individually, and by and through the Epstein Ponzi Companies, UDC and its Subsidiaries, the Noteholders and Bondholders and Mr. Hoffenberg, acting as the constructive trustee acting on behalf of the Noteholders and Bondholders of TFC, have been injured.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment against the Defendants, Mr. Epstein and The Financial Trust Company, as follows:

(A)     Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiff, individually, and on behalf of UDC and its Subsidiaries and the Noteholders and Bondholders of TFC, as a result of the Defendants' fraudulent acts;

(B)     Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiff, individually, and on behalf of UDC and its Subsidiaries and the Noteholders and Bondholders of TFC, as a result of the Defendants' wrongful conversion of funds;

(C)     Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiff, individually, and on behalf of UDC and its Subsidiaries and the Noteholders and Bondholders of

TFC, as a result of the Defendants' breach of fiduciary duties;

(D)     Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiff, individually, and on behalf of the Noteholders and Bondholders of Towers, as a result of the Defendants' continuous wrongful and negligent acts;

(E)     Ordering compensation in an amount to be determined at trial, with additional damages, for all general, special, incidental, and consequential damages suffered by the Plaintiff, individually, and on behalf of the Noteholders and Bondholders of Towers, as a result of the Defendants' unjust enrichment;

(F)     Awarding Plaintiff his reasonable attorney's fees and costs, to the fullest extent allowed by law; and

(G)  Granting all such additional or further relief as this Court deems just and equitable under the circumstances

## JURY DEMAND

The Plaintiff hereby demands a trial by jury.

Dated: New York, New York
　　　May 27, 2016

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Alan P. Fraade (AF 9602)
　　　　　　　　　　　　　　　　*Attorney for Plaintiff*
　　　　　　　　　　　　　　　　The Mintz Fraade Law Firm, P.C.
　　　　　　　　　　　　　　　　271 Madison Avenue, 12th Floor
　　　　　　　　　　　　　　　　New York, New York 10016
　　　　　　　　　　　　　　　　Tel: (212) 486-2500


　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Gary H. Baise (DC Bar #194878)
　　　　　　　　　　　　　　　　*Attorney for Plaintiff*
　　　　　　　　　　　　　　　　600 New Hampshire Ave., NW, Suite 500
　　　　　　　　　　　　　　　　Washington, D.C. 20037
　　　　　　　　　　　　　　　　Tel: (202) 518-6345