# Exhibit M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
200,000 TOWERS INVESTORS RESTITUTION
VICTIMS IN PENSION FUNDS, MUTUAL
FUNDS, THE COUNTRY OF CAPE VERDE,
BANKS, CORPORATE EMPLOYEE PENSIONS
UNIONS, CHURCHES, AND INDIVIDUAL
INVESTORS IN TOWERS FINANCIAL CORP.
WHO ARE THE BENEFICIARIES OF STEVEN
HOFFENBERG'S JUDGE SWEET ORDERED
$475 MILLION RESTITUTION THAT IS NOW
UNDER TWO BILLION DOLLARS INCLUDING
ACCRUED INTEREST,

Index No: 13 Civ. 8563 (PKC)

**Affidavit**

         Petitioners,
    -against-
UNITED STATES OF AMERICA BY THE U.S.
PROBATION OFFICE NEW YORK CITY STAFF
ONGOING BREACH OF THE CRIME VICTIMS
ACT,

         Respondents.
-----------------------------------------------------------------X

STATE OF NEW YORK  )
        ) ss
COUNTY OF NEW YORK  )

  Alan P. Fraade, being duly sworn, deposes and says:

1.  At all times relevant to this action through to the present date, Mintz & Fraade, P.C. ("M&F"), the law firm of which I am a member, has been a professional corporation duly organized and practicing law in the State of New York since 1982. I am fully familiar with the facts stated in this affidavit and know same to be true to my own knowledge. I am fully familiar with the pleadings and proceedings heretofore had herein and the matters hereinafter set forth.

N:\Clients\Hoffenberg, Steven\withdrawal petition\APF Affidavit V.8.doc

## I. No Differing Interests between the Victims and the Perpetrator

2.  Honorable Judge P. Kevin Castel by his Memorandum and Order dated December 18, 2013 (the "Order"), addressed a petition submitted to the Court on December 3, 2013, pursuant to the Crime Victims' Rights Act 18 U.S.C. § 3771 (the "CVRA") ("the Petition"). In the Order, Judge Castel questioned whether M&F's representation of the Petitioners and Mr. Steven Hoffenberg is consistent with our professional responsibilities citing in particular Rules 1.7 (a)(1) and 1.7(b)(3) of the New York Rules of Professional Conduct.

3.  It is respectfully submitted that although Rule 1.7(a)(1) generally prohibits a lawyer from simultaneously representing clients with differing interests, in the narrow circumstances of M&F's representation of Mr. Hoffenberg in connection with his supervised release and the Petitioners with respect to the issue of permitting Mr. Hoffenberg to engage in activities which would promote his restitution obligation to the victims, in this instance the narrow representation of both parties was consistent with the Rules of Conduct. In any event, Rule 1.7(b) provides, as follows:

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

The Order indicates that our firm represents "differing interests" with respect to the Petition. However, the Petitioners and Mr. Hoffenberg are not engaged in adversarial proceedings. As further explained below, their goals are aligned on the matter of Mr. Hoffenberg's restitution.

4. The Court questioned our representation based upon (A) the fact that our firm has been engaged by the perpetrator of the Towers Financial fraud, Mr. Hoffenberg, following his release from incarceration on October 11, 2013 and (B) the retention of our firm by Mr. Rey Marques, one of the victims of the Towers Financial fraud.

5. We, respectfully, would like to offer more facts to explain why we do not believe that our representation of the Petitioners and Mr. Hoffenberg constitutes a representation of "dif

6. Mr. Hoffenberg, initially upon his release from incarceration, executed a retainer agreement on November, 1, 2013 with the law firm of Olsson Frank Weeda Terman Matz PC ("OFW") in Washington, DC to represent him with respect to his restitution obligations. Due to some disagreements with the Probation Office, it became evident that Mr. Hoffenberg needed representation in Manhattan with better access to Mr. Hoffenberg's interactions with the Probation Office in Manhattan, where Mr. Hoffenberg has been ordered to remain for the duration of his release.

7. Our firm entered into an Emergency Retainer Agreement with Mr. Hoffenberg dated November 11, 2013, whereby we were retained by Mr. Hoffenberg to represent him with the limited purpose of assisting with his interactions with the New York City Probation Office and with respect to his compliance with his "supervisory release", the restrictions imposed upon him by the Probation Office for the three years following his release from incarceration.

8. By consequence of this retainer agreement and with respect to the matter of Mr. Hoffenberg's supervisory release, the sole action by the Affiant has been to make two phone calls to Mr. Hoffenberg's Probation Officer, Mr. Michael Cox, as well as sending one e-mail.

9. We do not represent Mr. Hoffenberg in any action before any court to challenge his restitution or attempt to obtain a lesser amount with respect to his obligations; indeed, we do not

N:\Clients\Hoffenberg, Steven\withdrawal petition\APF Affidavit V.8.doc

represent Mr. Hoffenberg in any action before any court against any of the victims of his past crimes.

10. Mr. Hoffenberg advised us on numerous occasions that he was seeking to comply with his restitution obligations.

11. The primary and utmost interest of any victims of Mr. Hoffenberg's past fraud, in our opinion, is to be paid restitution. This is a right specifically enumerated in the "CVRA" in subsection (a) (6), "the right to full and timely restitution as provided in law." The Petition espoused the victims' interest and their right under the CVRA to restitution. At the time of the filing of the Petition, the victims' interests were not conflicted with that of Mr. Hoffenberg.

12. Mr. Rey Marques, one of the victims, retained our firm.

13. Our firm obtained a Waiver of Conflict from Mr. Rey Marques on December 4, 2013. This was obtained before this Court had filed the Order questioning our representation.

14. The Court questioned a concurrent conflict of interest between the victims and Mr. Hoffenberg. There is no action between the perpetrator and any of the victims pending in any court.

15. We reasonably believed our representation of Towers Financial in its corporate matters two decades ago would not impair our professional ability to diligently represent the Petitioners with respect to "the efforts to submit a petition to the United States District Court for the Southern District of New York…" because Towers Financial no longer exists.

16. We believe that what we were seeking in the Petition was in the victims' best interest. It was and is our belief that the best interests of the victims would be served by Mr. Hoffenberg being permitted to work to repay restitution owed to the victims. Further, this is a specific right which is enumerated in the CVRA, the foundation for the claim in the Petition. Mr. Hoffenberg also

wants to return to work. Therefore, we believed at the time of filing and still do believe that these are not "differing interests."

## II. The Petition Is Not Frivolous

17. After Mr. Hoffenberg's release on October 11, 2013 and prior to the conclusion of the status conference before Judge Sweet of this District Court on December 5, 2013, Mr. Hoffenberg's interactions with the New York City Probation Office were unusual. Mr. Hoffenberg was told he was not allowed to speak to certain individuals, including Mr. Jeffrey Epstein and that his ability to work was limited.

18. On November 15, 2013, Mr. Hoffenberg's probation officers filed sealed papers against Mr. Hoffenberg with Judge Sweet of this District Court. The filing of sealed papers against Mr. Hoffenberg was in direct violation of CVRA subsection (a) (2), the right "to reasonable, accurate and timely notice of any public court proceeding, or any parole proceeding, involving the crime or any release or escape of the accused" *see* 18 U.S.C. § 3771(a)(2). This violation was enumerated in the Petition.

19. Based upon that sealed application by the Probation Office, Judge Sweet ordered a status conference for December 5, 2013. The Petition was directly related to the December 5, 2013 Status Conference Regarding Steven Hoffenberg Case #: 4346 Docket #: 95-cr-00213-001. At this status conference, Judge Sweet questioned why the papers had been sealed.

20. At the time the Petition was filed, our firm intended for the Petition to be in front of Judge Sweet. In fact, our firm contacted Judge Sweet's clerk in an effort to have the Petition moved to him. Accordingly, it is absolutely clear that the Petition was never intended to be a separate proceeding before a separate Judge.

21. Mr. Hoffenberg's interactions with the New York Probation Office obstructed Mr. Hoffenberg from returning to work in the business activities which would be essential to Mr. Hoffenberg earning money for paying his restitution. In particular, Mr. Hoffenberg was told he could not speak with Mr. Jeffrey Epstein, an individual whom Mr. Hoffenberg believes owes a debt to Mr. Hoffenberg which if collected Mr. Hoffenberg could become a source through which Mr. Hoffenberg could begin to pay his restitution.

22. Mr. Marques was concerned that the restrictions being imposed would restrain Mr. Hoffenberg from performing his restitution efforts. Due to the urgency of the impending status conference, Mr. Marques retained our firm in order to submit a petition to the Court to instruct the probation officers not to obstruct restitution.

23. At the time the Petition was filed, the victims had no other opportunity to be heard. Our firm believed that the CVRA was the vehicle by which the concerns by the victims for the repayment of the restitution could be under the Court's consideration and this was the very relief being sought by the Petition. In fact, as was enumerated in the Petition, Mr. Marques had personally reached out to Mr. Michael Cox, Mr. Hoffenberg's Probation Officer, to discuss Mr. Hoffenberg's occupational restrictions by telephone, but was not granted any relief in doing so.

24. At the status conference held by Judge Sweet on December 5, 2013, many of the concerns of the victims raised in the Petition were alleviated therefore rendering their requests pursuant to the Petition moot.

25. As stated above, Judge Sweet unsealed the papers filed against Mr. Hoffenberg at the status conference and he questioned why they were sealed from public access in the first instance. By doing so, the violation of the CVRA subsection (a) (2) with respect to notice to the victims of these proceedings was corrected by the Court. *See* 18 U.S.C. § 3771(a)(2).

N:\Clients\Hoffenberg, Steven\withdrawal petition\APF Affidavit V.8.doc

26. Judge Sweet, on the record at the status conference, ordered that Mr. Hoffenberg be permitted to engage in any occupation as long as it was not with Towers Financial and that he could speak with anyone he wished, including Mr. Epstein, from whom Mr. Hoffenberg believed he could possibly collect a large debt. In doing so, Judge Sweet removed the barriers to Mr. Hoffenberg working and recovering and earning money in order to repay his restitution, the primary concern of the victims including, but not limited to, Mr. Marques.

27. Further, subsequent to being granted greater latitude in his occupational opportunities, Mr. Hoffenberg decided he would not seek to relocate and seek business opportunities in China, one of the requests raised in the Petition and one of the questions raised by the Court in the Order. At the time the Petition was filed, because of restrictions placed upon Mr. Hoffenberg in the U.S., Mr. Hoffenberg sought a place outside the U.S. to earn a living and pay his restitution.

28. Further, after Judge Sweet's status conference, Mr. Hoffenberg has advised us that he contacted his Probation Officer and told him that he was not trying to leave United States jurisdiction and that he was only trying to work. He acknowledged the jurisdiction of the Court and explained to his Probation Officer that he no longer wanted to move to China.

29. Having been apprised of the results of Judge Sweet's status conference, Mr. Marques, a victim of the fraud, has consented to the withdrawal of the Petition on behalf of the victims. Because of the greater freedom which Mr. Hoffenberg has with respect to work and the greater access to the Court granted by the unsealing of the papers against him, the requests of the victims in the Petition have become moot. Mr. Hoffenberg can now, with greater ease, attend to his obligation of repaying his restitution.

## III. The CVRA as a Cause of Action

30.     Judge Castel indicted that the CVRA does not grant legal basis for private action, citing in particular two cases. One was a judgment in a district court in Washington, DC and the other in California.

31.     Our reading of the two cases provides a basis for a different interpretation of the victims' rights under the CVRA, because of the different facts and application of the law involved.

32.     Judge Castel cites Cunningham v. DOJ, 2013 BL 222493, 10 (D.D.C. Aug. 21, 2013), the "CVRA expressly disallows a suit for damages against the federal government or its officials, see 18 U.S.C. § 3771(d)(6)."

33.     The Petition filed by our firm did not seek damages. The language of the Petition makes it clear what relief was being sought. Subsection (a)(4) of the CVRA is the crux of the Petition and our appearance before this Court because it affords the victims the right to be heard. The language is simple enough, "The right to be reasonably heard at any public proceeding in the district court involving, release, plea, sentencing, or any other parole proceeding." The government, through its agent, Michael Cox of the U.S. Probation Office, and the sealing of the documents in the instant related proceeding against Mr. Hoffenberg had been attempting to deny the victims of their right to be heard. The victims had a right to access to the Court with respect to the then pending related proceeding under Judge Sweet and with respect to the requests in the Petition, because the actions of the Government were clear violations of their rights under the CVRA. *See* the Petition at Section "III" Paragraph "5."

34.     In addition, the CVRA clearly provides that "[t]he crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described" in

N:\Clients\Hoffenberg, Steven\withdrawal petition\APF Affidavit V.8.doc

the CVRA *see* 18 U.S.C. § 3771 (d) (1). By filing the Petition, our firm was acting on behalf of the victims, which is proper under the statute's language.

35. Therefore, the relief sought by the victims was the opportunity to be heard. This relief requested is a further extension of another section of the CVRA wherein the statute provides the victims in section (a)(6) the right to timely restitution. The filing of the Petition was the only vehicle through which the victims could be heard.

36. The second case cited by Judge Castel was Upton v. Fakhoury (2011 WL 3703364) (E.D.Cal.), is also distinguishable from the present matter. The petitioner in Upton was a prisoner, dissatisfied with his original parole agreement, who subsequently filed "a new action." The new action directly aimed to modify a portion of his own parole agreement that he deemed "patently, facially invalid and unenforceable."

37. The victims' utmost interest is in the payment of the restitution owed to them. At the time the Petition was filed, it appeared that the New York City Probation Office was obstructing their right to restitution. These concerns were alleviated by the action by Judge Sweet.

38. Accordingly, we believe that neither of the two cases cited by the Court are sufficiently on point to preclude an action on behalf of the Petitioners to protect their interests under the CVRA. Further, neither of the cases are factually comparable with the circumstances of the victims on whose behalf our firm filed the Petition, and even less so now because of Judge Sweet's actions.

## IV. Remedy To Be Granted

39. The Court's Order also perceived the Petition as a requirement to "modify the terms of a criminal sentence lawfully imposed upon non-party Hoffenberg by another judge of this Court in an entirely separate criminal action."

N:\Clients\Hoffenberg, Steven\withdrawal petition\APF Affidavit V.8.doc

40. This was not the purpose of the Petition.

41. We did not ask for the Court to modify the sentence imposed on Mr. Hoffenberg; on the contrary, we asked the Court to restrain the probation officers from obstructing Mr. Hoffenberg from complying with his restitution obligation.

42. Without the support from the probation officers, Mr. Hoffenberg's plan of restitution was likely to be delayed and impaired. Mr. Marques, a victim who is duly entitled to the right to be repaid restitution, retained us to file the Petition to ask the Court to order the probation officers not to obstruct Mr. Hoffenberg's restitution process.

43. The requests embodied in the Petition have now become moot by the subsequent judicial action of Judge Sweet.

44. Because of the exigency of the then impending Dec. 5th status conference based upon sealed documents, we were not able to reach more of the victims and thus did not attempt to file the Petition as a class action, as duly noted by the Court's order.

## Conclusion

45. At the time the Petition was filed, we believed that the victims were being denied an opportunity to be heard and believed their right to timely restitution was being obstructed by the restraints placed on Mr. Hoffenberg.

46. We believe that we did not, and we certainly did not intend to, bring a frivolous claim or shirk our professional responsibilities. We believed the Petition had sound, meritorious legal basis and sought a remedy that could be granted by the Court.

47. Notwithstanding our assertions with respect to the meritorious nature of the claim the Petition is based upon, the requests of the Petition are now moot.

48. We respectfully believe we have offered sufficient additional facts to explain why we believe the Court should allow for the Petition to be withdrawn without sanctions imposed.

WHEREFORE, it is respectfully requested that this Court allow for our firm to withdraw the Petition with no sanctions imposed.

Alan P. Fraade (AF 9602)
(Counsel of Record)
MINTZ & FRAADE, P.C.
488 Madison Avenue, Suite 1100
Telephone: 212-486-2500
apf@mintzfraade.com

Sworn to before me
This 14th day of January, 2014

Notary Public



# MINTZ & FRAADE, P.C.

COUNSELORS AT LAW
488 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
EDWARD C. KRAMER
ARTHUR L. PORTER, JR
JON M. PROBSTEIN
SEYMOUR REITKNECHT
I. FREDERICK SHOTKIN
JOSEPH J. TOMASEK

January 14, 2014

**VIA FACSIMILE (212) 805-7949**
Honorable P. Kevin Castel
United States District Judge
United States Court House
500 Pearl Street
New York, New York 10007-1312

Re: 200,000 Towers Investors Restitution Victims et. al
Petitioners v. Unites States of America
Index # 13 CIV 8563 (PKC)

Honorable Judge Castel:

Reference is made to your Memorandum and Order in the above-referenced matter dated December 18, 2013, requiring that the undersigned show cause, in writing, by January 17, 2014, why this action should not be dismissed and sanctions imposed with Petitioners counsel being disqualified from representing Petitioners.

I have been advised by one of your law clerks, Matt, to submit this application by facsimile. For the reasons set forth in the attached Affidavit, we respectfully request that the Petition be withdrawn and that sanctions not be imposed.

I have spoken with Shawn Cargo, Esq., the Assistant United States Attorney who has appeared in this matter and verbally advised him of our intended application and provided him with a draft of our papers. Mr. Cargo has advised us that he will send a letter to the Court consenting to our withdrawal and stating that he will not take any position with respect to sanctions.

Respectfully submitted,

Mintz & Fraade, P.C.

By: _____
Alan P. Fraade

CC: Shawn Cargo, Esq. (via email)

Encl.
APF.ek

N:\Clients\Towers Investors Group\Correspondence\Ltr.Honorable.Judge.Castel.01.13.14.doc