UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

MARVIN GERBER AND KALMA KOENIG,  :
on behalf of themselves and all others similarly  :
situated,  :
    :
    :
           Plaintiffs,  :    Index No. 1:18-cv-07580-JPO
    :
    -against-  :
    :
    :
THE FINANCIAL TRUST COMPANY, XYZ  :
CORPORATION, ABC, INC., and JEFFREY  :
E. EPSTEIN,  :
    :
           Defendants.  :
    :

------------------------------------- X

## DEFENDANTS' MOTION TO DISMISS

TROUTMAN SANDERS LLP
875 Third Avenue
New York, New York 10022
Tel: 212-704-6000
Fax: 212-704-6288

*Attorneys for Defendants*
*The Financial Trust Company and Jeffrey E. Epstein*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT: MULTIPLE SDNY JUDGES WARNED THE
      PERSON DRIVING THIS ACTION AGAINST SUCH FRIVOLOUS LAWSUITS ..... 1

II.   ALLEGED FACTS: PLAINTIFFS' CLAIMS EXPIRED AT LEAST 15 YEARS AGO. 3

III.  LEGAL ARGUMENTS ................................................................ 8

      a.    Plaintiffs' claims are time-barred ................................................ 8

      i.    The time for Plaintiffs to bring their claims expired at least 15
            years ago. ........................................................................ 8

      ii.   Plaintiffs may not invoke a tolling period because their allegations
            show they discovered their claims in 1997, if not earlier ........................ 9

      iii.  The documentary evidence establishing what was in the public
            realm since at least 2003 independently demonstrates that
            Plaintiffs' claims are time barred ............................................ 11

      b.    Plaintiffs' claims must be dismissed for the independent reason that they
            sound in fraud but lack the particularity that Rule 9(b) requires ..................... 12

      c.    Plaintiffs fail to state a claim even under the general pleadings standard .......... 14

      i.    Legal Standard: Plaintiffs' legal conclusions and contradictory
            allegations are not accepted as true ........................................ 14

      ii.   Plaintiffs' claims for Fraud and Fraudulent Concealment are
            missing various elements and defy logic .................................... 15

      iii.  Plaintiffs' Conversion claim is improper because they allege a
            mere obligation of Defendants to pay Plaintiffs money ........................ 17

      iv.   Plaintiffs' Unjust Enrichment claim must be dismissed because
            they have an adequate remedy at law ...................................... 17

      v.    Plaintiffs' Breach of Fiduciary Duty claim fails because it is
            missing elements and otherwise defies logic ........................... 19

      vi.   Plaintiffs' Negligence claim fails because Plaintiffs do not allege
            Epstein had a duty to them .................................................. 20

DEFENDANTS RESERVE THEIR RIGHTS TO MOVE FOR SANCTIONS ........................ 21

CONCLUSION ............................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100,000 Victim Families Note Holders Owners of Secs. in Towers Fin. Corp. v.*
*Schulte Roth & Zable*,
210 F. Supp. 2d 286 (S.D.N.Y. 2001)........................................................................1, 2

*200,000 Towers Inv'rs Restitution Victims v. United States*,
No. 13-cv-8563, 2013 WL 6673612 (S.D.N.Y. Dec. 18, 2013) ................................2

*Abercrombie v. Andrew Coll.*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006) ......................................................................19

*Anatian v. Coutts Bank (Switz.) Ltd.*,
193 F.3d 85 (2d Cir. 1999)........................................................................................12

*Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*,
No. 14-cv-2065 (AJN), 2015 WL 13654007 (S.D.N.Y. Mar. 26, 2015)................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................14, 15, 16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................15

*Baez v. Rathbun*,
No. 16-CV-6552L, 2018 WL 3551630 (W.D.N.Y. July 24, 2018) .........................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................14, 15, 16

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,*
*Inc.*,
369 F.3d 212 (2d Cir. 2004)......................................................................................11

*Boyle v. Kelley*,
42 N.Y.2d 88 (1977) ................................................................................................17

*Calcutti v. SBU, Inc.*,
224 F. Supp. 2d 691 (S.D.N.Y. 2002)........................................................................8

*Carson Optical Inc. v. eBay Inc.*,
202 F. Supp. 3d 247 (E.D.N.Y. 2016) .....................................................................15

# TABLE OF AUTHORITIES
## (continued)

Page

*A.Q.C. ex rel. Castillo v. United States*,
    656 F.3d 135 (2d Cir. 2011)...................................................................10

*Childers v. N.Y. & Presbyterian Hosp.*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014)........................................................20

*Chubb & Son, Inc. v. Kelleher*,
    92 CV 4484, 95 CV 951, 1998 U.S. Dist. LEXIS 22542 (E.D.N.Y. Feb. 26,
    1998) ...........................................................................................................9

*Cooper v. Sony Records Int'l*,
    No. 00 Civ. 233 (RMB), 2001 WL 1223492 (S.D.N.Y. Oct. 12, 2001)................20

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) .............................................................................18

*In re Crude Oil Commodity Litig.*,
    Master File 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28,
    2007) .........................................................................................................14

*deBecdelievre v. Anastasia Musical LLC*,
    No. 16 Civ. 9471 (AKH), 2018 WL 1633769 (S.D.N.Y. Apr. 2, 2018).................11

*Doe v. Menefee*,
    391 F.3d 147 (2d Cir. 2004).....................................................................10

*Ehrlich v. Howe*,
    848 F. Supp. 482 (S.D.N.Y. 1994) ..........................................................17

*Faktor v. Yahoo! Inc.*,
    No. 12 Civ. 5220, 2013 WL 1641180 (S.D.N.Y. 2013) ..........................20

*Feliciano v. U.S. Bank N.A.*,
    No. 13-CV-5555, 2014 WL 2945798 (S.D.N.Y. June 27, 2014) ............10

*Fiorenti v. Cent. Emergency Physicians*,
    762 N.Y.S.2d 402 (2003)..........................................................................17

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) .....................................................12

*Gonzales v. Nat'l Westminster Bank PLC*,
    847 F. Supp. 2d 567 (S.D.N.Y. 2012)......................................................11

## TABLE OF AUTHORITIES
### (continued)

Page

*High View Fund, L.P. v. Hall*,
    27 F. Supp. 2d 420 (S.D.N.Y. 1998)...................................................................17

*Hinds Cty. v. Wachovia Bank N.A.*,
    790 F. Supp. 2d 121 (S.D.N.Y. 2011)................................................................11

*Hoffenberg v. Epstein*,
    No. 1:16-cv-03989-RJS (S.D.N.Y. May 27, 2016) ............................................1, 3

*Hoffenberg v. Hoffman & Pollok*,
    288 F. Supp. 2d 527 (S.D.N.Y. 2003) (Sweet, J.)...............................................2

*IDT Corp. v. Morgan Stanley*,
    879 N.Y.S.2d 355 (2009)......................................................................................8

*Krys v. Butt*,
    486 F. App'x 153 (2d Cir. 2012) ........................................................................19

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n*,
    558 F.Supp.2d 378 (E.D.N.Y. 2008) ...................................................................8

*Lama Holding Co. v. Smith Barney, Inc.*,
    88 N.Y.2d 413 (1996) ........................................................................................15

*Lefebvre v. Morgan*,
    234 F. Supp. 3d 445 (S.D.N.Y. 2017)................................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014)..................................................................14

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986).................................................................................14

*Lucero v. Matallana*,
    2009 N.Y. slip op. 32023(U) (Sup. Ct.).............................................................18

*Matana v. Merkin*,
    957 F. Supp. 2d 473 (S.D.N.Y. 2013)..................................................................8

*Mercado v. Playa Realty Corp.*,
    No. CV 03-3427 (JO), 2005 WL 1594306 (E.D.N.Y. July 7, 2005)....................12

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*,
    505 F. Supp. 2d 1 (D.D.C. 2007) .......................................................................11

## TABLE OF AUTHORITIES
### (continued)

Page

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993).........................................................................14

*In re Mirena IUD Prods. Liab. Litig.*,
  29 F. Supp. 3d 345 (S.D.N.Y. 2014) (dismissing complaint under Fed. R. Civ.
  P. 12(b)(6) based on expired statute of limitations)..............................................9

*P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*,
  754 N.Y.S.2d 245 (App. Div. 2003) ..............................................................15

*Pearl v. City of Long Beach*,
  296 F.3d 76 (2d Cir. 2002)...........................................................................10

*Plaintiffs' St. & Sec. Law Settlement Class Counsel v. Bank of N.Y. Mellon*,
  985 N.Y.S.2d 398 (Sup. Ct. 2014)..................................................................19

*Reilly v. U.S. Physical Therapy, Inc.*,
  No. 17-civ-2347 (NRB), 2018 WL 3559089 (S.D.N.Y. July 23, 2018)................................11

*Res. Funding Corp. v. Congrecare, Inc.*,
  No. 91 Civ. 8163 (RWS), 1994 WL 24825 (S.D.N.Y. Jan. 19, 1994) ...................................17

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)...............................................................12

*Rosenblatt v. Christie, Manson & Woods Ltd.*,
  No. 04 Civ. 4205 (PKC), 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005) ("Nor
  can a fiduciary relationship be found based on a plaintiff's repeated
  conclusory assertion of a relationship of 'trust and confidence.'") .........................................20

*Ross v. Bolton*,
  904 F.2d 819 (2d Cir. 1990).........................................................................12

*Samiento v. World Yacht Inc.*,
  2008 N.Y. slip op. 1258, 10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008) .........................................17

*Sejin Precision Indus. Co. v. Citibank, N.A.*,
  726 F. App'x 27 (2d Cir. 2018) ....................................................................10

*Selinger Enters., Inc. v. Cassuto*,
  860 N.Y.S.2d 533 (App. Div.).......................................................................17

## TABLE OF AUTHORITIES
### (continued)

Page

*Shaw v. Dig. Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996)..................................................12

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..................................................12

*Simmons v. Ambit Energy Holdings*, LLC,
  2016 NY Slip Op 32107(U) (Sup. Ct.) .....................................18

*Talley v. Loancare Servicing*,
  No. 15-CV-5017 (JMA) (AKT), 2018 WL 4185705 (E.D.N.Y. Aug. 31, 2018)...................11

*U.S. v. Hoffenberg*,
  94-cr-213, 1997 WL 96563 (S.D.N.Y. Mar. 4, 1997) ......................1, 4

*Vitale v. Steinberg*,
  764 N.Y.S.2d 236 (App. Div. 2003) .........................................20

*Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP*,
  348 F. Supp. 2d 255 (S.D.N.Y. 2004)......................................19

*Walker v. Jastremski*,
  430 F.3d 560 (2d Cir. 2005)..................................................10

*Watkins v. Smith*,
  No. 12 Civ. 4635 (DLC), 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013) ..................14

*Whitley v. Bowden*,
  No. 17-CV-3564 (KMK), 2018 WL 2170313 (S.D.N.Y. May 9, 2018) ...............15

*Wynn v. AC Rochester*,
  273 F.3d 153 (2d Cir. 2001)..................................................15

## Other Authorities

CPLR § 213(8).............................................................8, 9

Fed. R. Civ. P. 9(b) ....................................................3, 12, 13, 14, 16

Fed. R. Civ. P. 9(b) and 12(b)(6) ........................................1

N.Y.L.J. (Feb. 22, 2018) ................................................17

Rule 11(b) .............................................................2

**TABLE OF AUTHORITIES**
**(continued)**

Page

Rule 12(b)(6)........................................................................................................................11, 14

Defendants The Financial Trust Company ("FTC") and Jeffrey E. Epstein ("Epstein," and together with FTC, the "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs Marvin Gerber and Kalma Koenig's (together, the "Plaintiffs") time-barred and otherwise deficient Complaint [ECF 7] in its entirety and with prejudice pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## I.   PRELIMINARY STATEMENT: MULTIPLE SDNY JUDGES WARNED THE PERSON DRIVING THIS ACTION AGAINST SUCH FRIVOLOUS LAWSUITS

Judges Sweet, Berman and Castel warned Steven Hoffenberg ("Hoffenberg"), whom Plaintiffs identify as the "Non-Party Affiant" (Compl. ¶ 15) and whose affidavit forms the entire basis for their Complaint, against pursuing frivolous and improper litigation like this action. Nevertheless, Hoffenberg remains intent on shifting blame for his own massive Ponzi scheme. Hoffenberg's scheme culminated in 1997 when Judge Sweet sentenced Hoffenberg to a 20-year prison sentence and ordered him to pay $475,157,340 in restitution to investors in Towers Financial Corporation ("Towers").[1]

Plaintiffs' claims here, which allege fraud against Defendants because of their alleged role in Hoffenberg's decades-old scheme, are unquestionably time-barred. Plaintiffs admit they knew, *since at least 1997*, about Hoffenberg and Defendant Epstein's alleged misconduct. This is when, *according to Plaintiffs*, Judge Sweet's Sentencing Opinion "la[id] bare the fraudulent conduct that resulted in Hoffenberg's conviction and which was imputed to Hoffenberg's co-conspirators." (Compl. ¶ 2, at fn. 2).

Plaintiffs' central, legally-erroneous argument is that Hoffenberg's affidavit executed last month somehow permits them to bring their claims. Plaintiffs assert that, until the affidavit, they

---

[1] *See U.S. v. Hoffenberg*, 94-cr-213, 1997 WL 96563 (S.D.N.Y. Mar. 4, 1997), a copy of which is attached as Exhibit B to the Declaration of Bennet J. Moskowitz ("Moskowitz Decl.") dated September 14, 2018 and submitted herewith.

did not know Defendant Epstein was the "co-conspirator" Plaintiffs admit knowing about for 20 years.

It therefore bears mention that this action is just Hoffenberg's rehashing of several of his prior lawsuits aimed at harassing Defendants and others, including by falsely accusing Defendant Epstein of being the so-called co-conspirator:

- **2001**: Judge Berman dismissed a similar case in which Hoffenberg attempted to sue on behalf of his fraud victims (*i.e.*, Plaintiffs in this action), warning Hoffenberg that "he may not assert baseless claims or abuse the judicial process through the instigation of frivolous or duplicative suits."[2]

- **2003**: Judge Sweet dismissed, including as time-barred, a case Hoffenberg filed against certain of his counsel in the criminal and civil actions emanating from his massive Ponzi scheme, finding "*Hoffenberg has [] been warned* … [he] will be enjoined from filing any further litigation … without prior approval."[3]

- **2013**: Hoffenberg brazenly filed another action in this District on behalf of his own victims (*i.e.*, Plaintiffs in this action).[4] Judge Castel found "[t]he petition appears in several respects to be a frivolous pleading filed in violation of Rule 11(b)." His Honor ordered Hoffenberg and his counsel to show cause why the action should not be dismissed as frivolous and sanctions imposed.[5] Hoffenberg's counsel, under threat of sanctions, withdrew the "offending pleading."[6]

- **2015**: Hoffenberg filed a Verified Petition to perpetrate Epstein's testimony, alleging Epstein was Hoffenberg's "co-conspirator" in the same fraudulent activities described in the Complaint in this action. Hoffenberg also alleged Epstein should be required to pay restitution to Towers investors (*i.e.*, Plaintiffs in this action).[7]

- **2016**: Hoffenberg, represented by the same counsel who faced sanctions from Judge Castel, as well as by Gary H. Baise, who represents Plaintiffs in this latest baseless matter, filed a duplicative action in which Hoffenberg claimed money damages on behalf of victims of his own Ponzi scheme, this time against

---

[2] *See 100,000 Victim Families Note Holders Owners of Secs. in Towers Fin. Corp. v. Schulte Roth & Zable*, 210 F. Supp. 2d 286, 289 (S.D.N.Y. 2001).

[3] *See Hoffenberg v. Hoffman & Pollok*, 288 F. Supp. 2d 527, 540 (S.D.N.Y. 2003) (Sweet, J.) (emphasis added)).

[4] *See 200,000 Towers Inv'rs Restitution Victims v. United States*, No. 13-cv-8563, 2013 WL 6673612, at *1 (S.D.N.Y. Dec. 18, 2013).

[5] A true and correct copy of the Order is attached as Ex. C to the Moskowitz Decl.

[6] A true and correct copy of the Order is attached as Ex. D to the Moskowitz Decl.

[7] A true and correct copy of the Petition is attached as Ex. E to the Moskowitz Decl.

Defendants in this action.[8] Defendants filed a pre-motion-to-dismiss letter, demonstrating that such claims were time-barred and Hoffenberg lacked Article III standing.[9] Hoffenberg withdrew the action, *with prejudice*, implying he may recruit class members he claimed to represent, to bring the same frivolous, withdrawn claims in his place.[10]

In addition to being time-barred, Plaintiffs' claims must be dismissed because they fail to state a claim. Each of Plaintiffs' claims sounds in fraud, yet none are pleaded with particularity per Fed. R. Civ. P. 9(b). The Complaint also lacks many of the elements required for each cause of action and thus fails even under the general pleading standard.

## II.   ALLEGED FACTS: PLAINTIFFS' CLAIMS EXPIRED AT LEAST 15 YEARS AGO.

Plaintiffs' own allegations, which are assumed to be true solely for purposes of this analysis,[11] show their claims expired around 15 years ago, if not earlier. Plaintiffs allege they are noteholders and bondholders of Towers who have known, *since at least 1997*, about all the alleged fraud that is the subject of their Complaint (Compl. ¶¶ 1-2, at fn. 2). Plaintiffs further allege that, *since at least 1997*, they have known that such fraud was carried out both by Mr. Hoffenberg and an "unindicted co-conspirator." (Compl. ¶¶ 1-2, at fn. 2).

Plaintiffs allege the following timeline of key events:

- "Defendants' deceptive practices" -- which allegedly consisted of Hoffenberg, Towers' CEO from 1975 until 1993, and Epstein, whom Hoffenberg hired as a consultant back in 1987, conspiring to "fraudulently obtain[] investor funds" and using the entity Defendants to carry out the fraud -- "date back to the mid-1980s." (Compl. ¶¶ 4, 15, 18-19, 22-23).

- Defendants purport to give examples of the alleged fraud, which, though very muddled, are clearly alleged to have occurred from 1982 through 1992. (Compl.

---

[8] A true and correct copy of the Complaint filed in *Hoffenberg v. Epstein*, No. 1:16-cv-03989-RJS (S.D.N.Y. May 27, 2016) is attached as Ex. F to the Moskowitz Decl.

[9] A true and correct copy of Defendants' pre-motion-to-dismiss letter is attached as Ex. G to the Moskowitz Decl.

[10] A true and correct copy of Hoffenberg's response letter is attached as Ex. H to the Moskowitz Decl.; *see also* July 5, 2016 Order, a true and correct copy of which is attached as Ex. I to the Moskowitz Decl.

[11] As explained below in Section III(b), Plaintiffs' contradictory and conclusory allegations, of which there are many, are not entitled to such deference. Even assuming all of Plaintiffs' claims are true, however, their claims still fail for the reasons explained here.

¶¶ 25-48). (Noticeably absent from these so-called examples are any details of who said what to whom, when. This legal deficiency is addressed below in Section III(B).)

- "Beginning in the early 1990's, approximately one hundred (100) lawsuits, including, but not limited to, the cases listed below, were filed in the District Court of the Southern District of New York against Hoffenberg and [Towers] in connection with the [Towers] Ponzi Scheme." (Compl. ¶ 60).

- In 1993, the SEC filed a lawsuit against Hoffenberg, Towers and others (not including Defendants here)[12] for securities fraud. (Compl. ¶ 49).

- That same year, 1993, Towers filed for Chapter 11 bankruptcy protection. (Compl. ¶ 50).

- In 1994, Hoffenberg was indicted on various fraud charges, in multiple jurisdictions, including the SDNY. (Compl. ¶¶ 51-52).

- On March 4, 1997, "Judge Robert Sweet issued a Sentencing Opinion ("Sentencing Opinion") *which lays bare the fraudulent conduct that resulted in Hoffenberg's conviction and which was imputed to Hoffenberg's co-conspirators.*" (Compl. ¶ 2, at fn. 2; *see also* Compl. ¶¶ 58-59) (emphasis added).

Notwithstanding that Plaintiffs' claims recited above show that this action is based completely on alleged misconduct that ended decades ago and resulted in a criminal conviction in 1997 and nearly 100 civil lawsuits filed beginning in the early 90's, Plaintiffs contend this action is somehow timely. Plaintiffs acknowledge they face a serious statute of limitations problem while attempting, unsuccessfully, to preempt it by asserting contradictory, hopelessly confusing claims. Plaintiffs' claims serve as a tacit admission that they did in fact previously know about Defendants' alleged involvement in the subject fraud.

_____

[12] Indeed, and though not a fact on which this Motion depends, Defendants have *never* been charged, let alone found guilty of any wrongdoing related to Hoffenberg's fraud. This, despite a years' long federal investigation, an indictment acknowledging the existence of "co-conspirators," 100 related civil suits, a massive bankruptcy case, and Hoffenberg's many public accusations. Notably, Judge Sweet's sentencing opinion describes Hoffenberg's "history of mental illness" and as "suffering from a condition that from time to time has limited his ability to perceive reality accurately." *U.S. v. Hoffenberg*, 94-cr-213 (RWS), 1997 WL 96563, at *15 (S.D.N.Y. Mar. 4, 1997), Ex. B to Moskowitz Decl.

Specifically, Plaintiffs allege that they and the putative class "*were aware* of the illegal activities which caused them and many others to lose hundreds of millions of dollars," and further "knew that Hoffenberg had 'co-conspirators'" (Compl. ¶ 63) (emphasis added), but that they could not have discovered the "*full extent* of Defendant Epstein's involvement … prior to Hoffenberg's execution of the Affidavit annexed hereto." (Compl. ¶ 62) (emphasis added). Plaintiffs later contradict themselves, claiming they "could not have discovered, even after exercising reasonable diligence, any of the claims for relief pleaded herein against Defendants prior to the affidavit of Non-Party Hoffenberg, executed on August 17, 2018." (Compl. ¶ 80).

Plaintiffs then assert six overlapping, muddled causes of action. Each of Plaintiffs' causes of action sounds in fraud but neither specifies what the fraud was nor when it occurred. Nor do Plaintiffs allege a nexus between them and Defendants.

Plaintiffs' causes of action are: (1) fraud, alleging Epstein "participated in creating and executing several fraudulent Ponzi schemes" and "utilized securities and cash," which belonged to Towers and Plaintiffs; (2) conversion, alleging that from "1987 through 1993," Epstein "caused the transfer of securities, cash and assets from [Towers] to himself and/or to the Defendant Entities" by acting "dishonestly"; (3) unjust enrichment, again alleging that from "1987 through 1993," Epstein "caused the transfer of securities, cash and assets from [Towers] to himself and/or to the Defendant Entities" and "received improper disbursements of funds from [Towers]" by participating in the alleged Ponzi Scheme; (4) breach of fiduciary duty, alleging (i) Epstein somehow owed fiduciary duties to Plaintiffs by virtue of his rendering consulting services *to Towers*; (ii) Epstein breached these duties and that such breaches "were fraudulent"; and (iii) without any support and notwithstanding that Plaintiffs allege multiple times earlier in the Complaint that such consulting services ended in 1993 and, further, that Towers imploded the

same year, such breaches continue "through the present"; (5) <u>negligence</u>, alleging, in circular fashion, that, starting in 1987, Epstein acted negligently in his role as a Towers consultant by "negligently transfer[ring] securities and cash" from Towers; and Plaintiffs again allege, without explanation and thus in a brazen attempt to plead around their statute of limitations problems, that such conduct occurs "through the present"; and (6) <u>fraudulent concealment</u>, essentially realleging the allegations in the first count (fraud).

While Plaintiffs' own allegations sink their attempt to avoid the applicable statutes of limitations, the court filings and other following documentary evidence attached to the attorney declaration submitted herewith, all of which are subject to judicial notice and therefore appropriately considered by the Court on this Motion to Dismiss,[13] further expose as false Plaintiffs' claim that they "could not have discovered" Defendants' identities until Hoffenberg signed his affidavit last month:

- In March 2003, Vanity Fair published a feature-length article that discussed, in detail, Defendant Epstein's alleged role in Hoffenberg's Ponzi scheme. The article identifies Epstein as Hoffenberg's "protégé" and describes Hoffenberg's years' old (at that time) allegations that Epstein played a critical role in the very schemes that Plaintiffs cite in their Complaint:

  o "Hoffenberg claimed in a 1993 hearing before a grand jury in Illinois that Epstein came up with the idea of financing these bids through Towers' acquisition of two ailing Illinois insurance companies, Associated Life and United Fire. 'He was hired by us to work on the securities side of the insurance companies and Towers Financial, supposedly to make a profit for us and for the companies,' Hoffenberg reportedly told the grand jury. He also alleged that Epstein was the "technician," executing the schemes."

  o "Epstein, according to Hoffenberg, also came up with a scheme to manipulate the price of Emery Freight stock in an attempt to minimize the losses that occurred when Hoffenberg's bid went wrong and the share price began to fall."

(Moskowitz Decl. at Ex. J, pp. 6-10).

---

[13] *See* Section II(b).

- Since 2010, Hoffenberg has operated a website, www.towersinvestors.com, that, since at least 2013, has linked to the Vanity Fair article discussed above and otherwise describes Defendants' alleged role in Hoffenberg's scheme. (Moskowitz Decl. at Ex. K).

- On December 5, 2013, Mr. Baise, counsel for Plaintiffs in this matter, appeared before Judge Sweet and identified Defendant Epstein as a "critical player" in Hoffenberg's efforts to pay restitution to Towers bondholders and noteholders (*i.e.*, Plaintiffs in this action): "[I]t seems given [Hoffenberg's] requirement for restitution, $475 million, that he needs to have considerable latitude in obtaining restitution for those individuals. Part of that involves a personality I'm sure your Honor is familiar with, Mr. Jeffrey Epstein … Mr. Epstein, I'm told, and Mr. Kramer may want to address this in more specifics, but Mr. Epstein is a critical player here. … and he's [Epstein] not a victim." (Moskowitz Decl. at Ex. L, 13:23-14:2, 14:16-18, 35:11).

- On January 14, 2014, Hoffenberg's counsel in the lawsuit that Judge Castel questioned as frivolous affirmed, under penalty of perjury and in a publicly filed document, that Defendant Epstein was key to Hoffenberg's ability to pay restitution to Towers bondholders and noteholders (*i.e.*, Plaintiffs in this action). [*See* Case 1:13-cv-08563-PKC [ECF 7] ¶¶ 21, 26.] (Moskowitz Decl. at Ex. M).

- In June 2015, Hoffenberg filed a Verified Petition to Perpetrate Testimony, alleging that Epstein (i) was his "co-conspirator" in the same fraudulent activities described in the instant Complaint, and (ii) "played a crucial role in all acts of misconduct with [Hoffenberg]." The Petition also claimed Epstein should be required to contribute to Hoffenberg's restitution to the investors (*i.e.*, Plaintiffs in this action). (Moskowitz Decl. at Ex. E).

- On May 27, 2016, Hoffenberg, in his Complaint in the 2016 action he brought on behalf of Plaintiffs, confirmed that he, "for over fifteen (15) years, has made every effort to expose Mr. Epstein's fraudulent Ponzi schemes and the Epstein Ponzi Companies as the source for the $475,157,340, plus interest, which now totals approximately one billion ($1,000,000,000) dollars, owed to the [Towers] Noteholders and Bondholders." (Moskowitz Decl. at Ex. F, ¶ 40).

It bears reiterating that Mr. Baise, an attorney for Plaintiffs in this copycat action in which Plaintiffs feign the inability to have discovered Defendants' identities until last month, represented Hoffenberg in the 2016 action. Yet, in the 2016 action, Hoffenberg unequivocally confirmed that, for "over fifteen (15) years," he has done everything in his power to out Defendant Epstein as Hoffenberg's "co-conspirator." This is troubling at best.

Compounding the frivolous nature of Plaintiffs' allegations is the fact that the Complaint alleges FTC was not even formed until 1996[14] (Compl. ¶ 12)—*after* Plaintiffs allege class members invested in Towers. Of course, a company not even in existence during the entire class period could not have possibly defrauded all of them. Therefore, the claims against FTC are particularly egregious.

## III.   LEGAL ARGUMENTS

### a.   Plaintiffs' claims are time-barred.

#### i.   The time for Plaintiffs to bring their claims expired at least 15 years ago.

As explained above, Plaintiffs, by attempting to invoke a tolling period, tacitly admit that the applicable statutes of limitations for their claims expired long ago. Indeed, Plaintiffs' claims expired at least 15 years ago.

Plaintiffs' causes of actions and the corresponding statutes of limitation[15] are: (1) fraud: 6 years from occurrence or 2 years from discovery, whichever is later (CPLR § 213(8)); (2) conversion: 3 years from occurrence (*Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 702 (S.D.N.Y. 2002)); (3) unjust enrichment: 6 years from the wrongful act (*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n*, 558 F.Supp.2d 378, 409 (E.D.N.Y. 2008)); (4) breach of fiduciary duty: 3 or 6 years from knowledge of the breach (*IDT Corp. v. Morgan Stanley*, 879 N.Y.S.2d 355, 359-60 (2009)); (5) negligence: 3 years from injury (*Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013)); and (6) fraudulent concealment: 6 years from occurrence or 2 years from discovery, whichever is later (CPLR § 213(8)).

---

[14] In fact, FTC was not incorporated until November 6, 1998—*after* Hoffenberg was sentenced and thus necessarily after the fraud had ceased. *See* Moskowitz Decl. Exs. N, O.

[15] Plaintiffs claim that "the unlawful and fraudulent conduct alleged herein originated in and arose out of this District." (Compl. ¶ 8). Accordingly, New York law applies for purposes of this analysis.

Plaintiffs allege that Hoffenberg's Ponzi scheme took place in the 1980's; and it necessarily ended sometime before Hoffenberg's 1997 conviction (Compl. ¶¶ 4, 15, 18-19, 22-23). Therefore, Plaintiffs' deadline to assert their claims arising from Defendants' alleged participation in Hoffenberg's scheme expired around 15 years ago, at the very latest. Accordingly, their claims must be dismissed. *See, e.g., In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 349 (S.D.N.Y. 2014) (dismissing complaint under Fed. R. Civ. P. 12(b)(6) based on expired statute of limitations).

### ii. Plaintiffs may not invoke a tolling period because their allegations show they discovered their claims in 1997, if not earlier.

Plaintiffs' invocation of an equitable tolling period or the New York "discovery rule" for fraud claims (*i.e.*, CPLR § 213(8)), whichever is the case, fails because their own alleged facts and, separately, the documentary evidence establishing what was in the public realm at that time show nothing extraordinary prevented Plaintiffs from bringing their claims decades ago. Moreover, Plaintiffs do not even allege, as the law requires them to do, that they have been diligently pursuing their rights since they were allegedly defrauded back in the 1980's. *See Chubb & Son, Inc. v. Kelleher*, 92 CV 4484 (CBA), 95 CV 951 (CBA), 1998 U.S. Dist. LEXIS 22542, at *22 (E.D.N.Y. Feb. 26, 1998) (granting motion to dismiss based on statute of limitations in part because "plaintiffs [did] not allege[] any facts suggesting that they exercised due diligence in discovering their injuries.").[16]

The law is clear that this is not an extraordinary situation in which an equitable tolling period or discovery rule may apply:

> Equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act, and . . . the party

---

[16] A copy of *Chubb & Son, Inc. v. Kelleher*, 92 CV 4484 (CBA), 95 CV 951 (CBA), 1998 U.S. Dist. LEXIS 22542 (E.D.N.Y. Feb. 26, 1998) is filed herewith.

> 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (third alteration in original) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)) … "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks omitted); *see also Feliciano v. U.S. Bank N.A.*, No. 13-CV-5555, 2014 WL 2945798, at *6 (S.D.N.Y. June 27, 2014) (same). The Second Circuit has explained that the type of situation warranting equitable tolling is one "where a plaintiff could show that it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (internal quotation marks omitted).

*Lefebvre v. Morgan*, 234 F. Supp. 3d 445, 459 (S.D.N.Y. 2017); s*ee also Sejin Precision Indus. Co. v. Citibank, N.A.*, 726 F. App'x 27, 30 (2d Cir. 2018) (holding plaintiffs could not satisfy the New York discovery rule for fraud claims, finding: "'The test as to when fraud should with reasonable diligence have been discovered is an objective one … [W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him. *For instance, public reports of and lawsuits alleging fraud 'are sufficient to put a plaintiff on inquiry notice of fraud. Similarly, evidence of losses may put plaintiffs on inquiry notice.*'" (emphasis added) (citations omitted)).

As a matter of law, Plaintiffs were not permitted to sit on their rights merely because, while they knew for decades that they were victims of Hoffenberg's and his "co-conspirator's" scheme, they did not know Defendant Epstein was the alleged "co-conspirator":

> Once a plaintiff becomes aware [of its injury and the cause thereof] the clock begins to run for statute of limitations purposes. Neither a lack of knowledge of the specific pattern of fraudulent activity, *[n]or an inability to know the particular identities of some of the perpetrators of the fraud* alters this result.

*Hinds Cty. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 121, 123-24 (S.D.N.Y. 2011) (alteration in original) (emphasis added) (quoting *U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*, 505 F. Supp. 2d 1, 9 (D.D.C. 2007)). Therefore, Plaintiffs' own allegations preclude them from benefiting from any extension of the applicable statutes of limitations.

### iii. The documentary evidence establishing what was in the public realm since at least 2003 independently demonstrates that Plaintiffs' claims are time barred.

The documentary evidence establishing what was in the public realm since at least 2003 separately establishes that Plaintiffs' claims are time barred. "In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings." *Talley v. Loancare Servicing*, No. 15-CV-5017 (JMA) (AKT), 2018 WL 4185705, at *1 (E.D.N.Y. Aug. 31, 2018) (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)). Courts routinely take judicial notice of public disclosures, including websites and news articles, to determine whether certain information has been in the public realm at a specific time. *See Baez v. Rathbun*, No. 16-CV-6552L, 2018 WL 3551630, at *2 n.2 (W.D.N.Y. July 24, 2018) (citing *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 569 n.2 (S.D.N.Y. 2012)); *deBecdelievre v. Anastasia Musical LLC*, No. 16 Civ. 9471 (AKH), 2018 WL 1633769, at n.8 (S.D.N.Y. Apr. 2, 2018); *Reilly v. U.S. Physical Therapy, Inc.*, No. 17-civ-2347 (NRB), 2018 WL 3559089, at *10 n.14 (S.D.N.Y. July 23, 2018) ("[C]ourts routinely take judicial notice of news articles in securities cases to assess whether information was in the public realm.").

Here, the public realm has, since at least 2003 when Vanity Fair purported to out Defendant Epstein as Hoffenberg's co-conspirator, included numerous, detailed allegations that Defendant Epstein was Hoffenberg's co-conspirator. As described more fully in Section II,

*supra*, the public realm included not only Hoffenberg's website and his fifteen-year crusade to "make every effort to expose Mr. Epstein's [alleged] fraudulent Ponzi schemes," (Moskowitz Decl. at Ex. F, ¶ 40), but also the many public judicial filings, in at least three separate court cases, wherein Hoffenberg and his lawyers accused Epstein of being Hoffenberg's "co-conspirator." The law simply does not permit Plaintiffs to wait fifteen years or more to sue Defendants in these circumstances.

### b.   Plaintiffs' claims must be dismissed for the independent reason that they sound in fraud but lack the particularity that Rule 9(b) requires.

Regardless of their titles, all of Plaintiffs' claims "sound in fraud" and thus are subject to the heightened pleadings standard in Rule 9(b), under which fraud allegations must be stated "with particularity." *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 392 (E.D.N.Y. 2013) ("It is the allegation of fraud, not the 'title' of the claim that brings the policy concerns [underlying Rule 9(b)] . . . to the forefront.") (alteration in original) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1222-23 (1st Cir. 1996)). This heightened standard "raises the bar on pleading" and is "rigorously enforced" by the Second Circuit. *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001); *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) ("We recognize and rigorously enforce these salutary purposes of Rule 9(b)."). To withstand a motion to dismiss, allegations of fraud must: (1) specify the statements were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiffs' Complaint fails miserably to meet this standard. Under Rule 9(b), Plaintiffs must do more than make conclusory allegations that Defendants made misstatements. *Mercado v. Playa Realty Corp.*, No. CV 03-3427 (JO), 2005 WL 1594306, at *13 (E.D.N.Y. July 7, 2005).

Plaintiffs' claims merely contend, in very general terms, that Epstein created "false memoranda," "financial statements," and "supporting documents," which concealed Towers' true financial condition and promised investors their money would be used for a particular purpose that was not later realized. The Complaint, however, is completely devoid of any allegations describing the allegedly false documents, including what statements in the documents were false, the way in which they were false, when they were created, or when they were shared with investors.

Likewise, while the Complaint alleges the proceeds from the sale of promissory notes and bonds were not used "for the purpose stated in the offering documents," (Compl. ¶ 40) there are no allegations whatsoever stating what "the purpose" was or why such conduct was fraudulent.

Plaintiffs also allege that Epstein manipulated the price of Emery Air Freight stock by "execut[ing] false trades … through licensed brokers." (Compl. ¶ 31). Yet, nowhere does the Complaint describe these trades, including the date or amount, or explain how executing trades through licensed brokers was fraudulent. These vague assertions about false documents, diversion of funds, and market manipulation are exactly the type of allegations Rule 9(b) was meant to prevent.

To the extent Plaintiffs' claims are directed against the Defendant Entities (the Complaint neglects to identify which claims are brought against which defendant), they are even more deficient. In addition to lacking the necessary "what," "where," and "how," of the alleged fraud, the allegations against the Defendant Entities do not even contain the "who." Instead, the allegations against the Defendant Entities are lumped together in impermissible group pleading, thereby depriving Defendants the ability to ascertain each Defendant's allegedly fraudulent conduct.

This is insufficient under Rule 9(b). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 463 (S.D.N.Y. 2014) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.") (quoting *In re Crude Oil Commodity Litig.*, Master File 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007)); *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at *9 (S.D.N.Y. Feb. 22, 2013) ("When, as here, a complaint contains allegations of fraud against multiple defendants, the plaintiff must plead facts that describe each defendant's involvement in the fraud."); *Natowitz v*, 542 F. Supp. at 676 (plaintiff "has an obligation to allege specifically the fraud perpetrated by each defendant."). Accordingly, all claims against all Defendants must be dismissed for failure to comply with Rule 9(b).

### c.  **Plaintiffs fail to state a claim even under the general pleadings standard.**

#### i.  **Legal Standard: Plaintiffs' legal conclusions and contradictory allegations are not accepted as true.**

Even assuming Rule 9(b) does not apply to Plaintiffs' claims—it clearly does—Plaintiffs still fail to state a single viable cause of action. To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint is properly

dismissed, where, as here, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

Although the Court must normally accept as true all well-pleaded factual allegations in the Complaint and draw all inferences in Plaintiffs' favor, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), those principles are "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "'[w]here [the] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'" *Whitley v. Bowden*, No. 17-CV-3564 (KMK), 2018 WL 2170313, at *11 (S.D.N.Y. May 9, 2018) (alterations in original) (quoting *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)).

### ii.  Plaintiffs' claims for Fraud and Fraudulent Concealment are missing various elements and defy logic.

Under New York law, to state a claim for fraud, a plaintiff must plead: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)). A cause of action for fraudulent concealment requires the foregoing elements plus an allegation that defendants had a duty to disclose material information but failed to do so. *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 250 (App. Div. 2003).

As explained above, the Complaint does not allege any misrepresentations or omissions of material fact beyond stating, in merely conclusory terms, that Defendant Epstein made

fraudulent statements, concealed Towers' financial status, and manipulated stock prices. The absence of such allegations falls short not only of the heightened pleading standard espoused by Rule 9(b), but also the general pleading standards under *Twombly* and its progeny. Without allegations identifying the actual statements that were fraudulent, *i.e.*, the first element, the Court cannot "draw the reasonable inference" that Epstein made any fraudulent statements. *See Iqbal*, 556 U.S. at 663.

Plaintiffs also fail to adequately plead the fourth element: reliance. Although the Complaint alleges in formulaic and conclusory terms that Plaintiffs and the Class "reasonably relied upon the Ponzi scheme" (Compl. ¶¶ 88, 123), there are no factual allegations describing this reliance (or, for that matter, the so-called Ponzi scheme). Nothing in the Complaint identifies what, exactly, Class Members relied upon, whether a document, an oral statement or something else entirely. Such deficient allegations prevents the Court from drawing any inference that Plaintiffs and Class Members relied on fraudulent statements or that such reliance was reasonable.

There is an additional, independent justification for dismissing these claims against Defendant FTC in particular: the Complaint alleges FTC was formed in 1996 (Compl. ¶ 12) but defines the putative class as comprised of Towers' Noteholders, and/or Bondholders who purchased the bonds and promissory notes between 1987 and 1993, *i.e.*, before FTC was even formed.[17] Of course, a company not even in existence during the entire class period could not have made fraudulent statements to those alleged investors or concealed matters from them. Therefore, the claims for fraud and fraudulent concealment fail to state claims and must be dismissed against all Defendants.

---

[17] As explained in fn.14, *supra*, FTC was actually not incorporated until November 6, 1998—*after* Hoffenberg was sentenced his fraud concluded.

### iii.  Plaintiffs' Conversion claim is improper because they allege a mere obligation of Defendants to pay Plaintiffs money.

Under New York law, a claim for conversion is not properly pleaded where the defendant has "a mere obligation to pay money," as opposed to "specific, tangible funds of which claimant was the owner and entitled to immediate possession." *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994); *Selinger Enters., Inc. v. Cassuto*, 860 N.Y.S.2d 533, 536 (App. Div.) ("mere right to payment cannot be the basis for a cause of action alleging conversion") (quoting *Fiorenti v. Cent. Emergency Physicians*, 762 N.Y.S.2d 402 (2003)); *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) ("Plaintiffs seek only to recover $ 1 million—the amount that they invested in United Golf. Because plaintiffs do not claim ownership of a specifically identifiable, segregated $1 million, they fail to state a claim for conversion of money. Defendants' motion to dismiss plaintiffs' sixth claim is therefore granted.") (internal citation omitted)); *Res. Funding Corp. v. Congrecare, Inc.*, No. 91 Civ. 8163 (RWS), 1994 WL 24825 (S.D.N.Y. Jan. 19, 1994).

Here, as in *High View Fund*, Plaintiffs' claim for conversion is merely a right to receive payment based on alleged investments in Towers. Plaintiffs do not claim ownership in "specifically identifiable" funds. *See High View Fund, L.P.*, 27 F. Supp. 2d at 429. This failure is fatal to Plaintiffs' claim for conversion and it must be dismissed against all Defendants.

### iv.  Plaintiffs' Unjust Enrichment claim must be dismissed because they have an adequate remedy at law.

Plaintiffs fail to state a claim for unjust enrichment because they contend they have an adequate remedy at law based on the same set of facts. *See*, *e.g.*, *Boyle v. Kelley*, 42 N.Y.2d 88, 91 (1977) ("equity will not entertain jurisdiction where there is an adequate remedy at law") (citations omitted); N.Y.L.J. at 30 (Feb. 22, 2018) (*Samiento v. World Yacht Inc.*, 2008 N.Y. slip

op. 1258, ¶ 7, 10 N.Y.3d 70, 81, 854 N.Y.S.2d 83, 89 (2008) ("As to plaintiffs' third cause of action for unjust enrichment, this action does not lie as plaintiffs have an adequate remedy at law and therefore this claim was likewise properly dismissed.").

As with Plaintiffs' other claims, their unjust enrichment claim is based on Defendant Epstein's alleged participation in the so-called "TFC Ponzi Scheme," alleged "improper disbursements of funds from [Towers]," and alleged "intentional diversion of cash and assets." (Compl. ¶¶ 101-103). Plaintiffs do not—and cannot—allege they lack an adequate remedy at law. Rather, damages for fraud and conversion constitute an adequate remedy at law; and Plaintiffs assert they are entitled to both. *See Lucero v. Matallana*, 2009 N.Y. slip op. 32023(U), ¶ 4 (Sup. Ct.) ("Plaintiff's claim for unjust enrichment, however, is not viable. Unjust enrichment is equitable in nature and will not lie if an adequate remedy at law exists. Here damages for conversion and fraud constitute an adequate remedy at law, precluding an [sic] cause of action for unjust enrichment based on the same set of facts and circumstances.") (citations omitted).

Plaintiffs are not permitted to use "unjust enrichment [as] a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790-91 (2012). Instead, unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (citations omitted); *see also Simmons v. Ambit Energy Holdings, LLC*, 2016 NY Slip Op 32107(U), ¶ 13 (Sup. Ct.).

Here, Plaintiffs assert five other causes of action based on the same set of vague allegations about Ponzi schemes, diversions of assets, and other allegedly improper activity.

Plaintiffs cannot invoke an equitable doctrine to secure against sloppy pleading of their actions at law. Consequently, their claim for unjust enrichment must be dismissed against all Defendants.

### v. Plaintiffs' Breach of Fiduciary Duty claim fails because it is missing elements and otherwise defies logic.

"In order to plead breach of fiduciary duty, plaintiffs must allege that (1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct." *Plaintiffs' St. & Sec. Law Settlement Class Counsel v. Bank of N.Y. Mellon*, 985 N.Y.S.2d 398, 405 (Sup. Ct. 2014) (internal quotations and citations omitted).

Here, Plaintiffs fail to plausibly allege the existence of a fiduciary duty. The Complaint asserts only that Epstein, "[a]s an associate and consultant to [Towers]" owed fiduciary duties to Plaintiffs and the Class. (Compl. ¶ 107). This is insufficient. *See Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) ("[T]he existence of a consulting relationship does not automatically establish a fiduciary relationship."). There are no allegations explaining why an associate or consultant to Towers would owe such fiduciary duties to Plaintiffs or the Class. Even more problematic—there are no allegations whatsoever regarding the other Defendants and any fiduciary duties they allegedly owed.

"[C]ourts routinely have held that conclusory allegations of a special relationship and complete trust and confidence are insufficient to state a claim of a fiduciary duty." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 275 (S.D.N.Y. 2006) (internal quotation and citations omitted); *Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012) ("[E]very allegation in the Amended Complaint … regarding [defendant's] fiduciary duty is either conclusory or entirely derivative…. Nowhere in their complaint or, for that matter, in their briefs do Plaintiffs tell us why [defendant]—as opposed to RAI—owed them a fiduciary duty. … Such derivative allegations are legally insufficient to state a claim for breach of fiduciary duty against

19

[defendant].”); *Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205 (PKC), 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005) (“Nor can a fiduciary relationship be found based on a plaintiff’s repeated conclusory assertion of a relationship of ‘trust and confidence.’”) (quoting *Vitale v. Steinberg*, 764 N.Y.S.2d 236 (App. Div. 2003)); *Cooper v. Sony Records Int’l*, No. 00 Civ. 233 (RMB), 2001 WL 1223492, at *5 (S.D.N.Y. Oct. 12, 2001) (“Plaintiffs’ conclusory allegations that a fiduciary duty was owed by [defendant] cannot survive a motion to dismiss.”).

“[T]he Court is not required to credit mere legal conclusions that are dressed up as factual allegations that a defendant was in a fiduciary relationship with a plaintiff.” *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (citing *Faktor v. Yahoo! Inc.*, No. 12 Civ. 5220, 2013 WL 1641180, at *3 (S.D.N.Y. 2013)) (internal quotation marks omitted). Therefore, Plaintiffs’ purely conclusory statements that a fiduciary duty existed are insufficient and their claim for breach of fiduciary duty must be dismissed against all Defendants.

In addition, as with Plaintiffs’ fraud and fraudulent concealment claims, because Defendant FTC did not even exist when class members allegedly invested in Towers, FTC could not have owed them a fiduciary duty. The claim for breach of fiduciary duty must be dismissed against FTC for this independent reason.

### vi.   Plaintiffs’ Negligence claim fails because Plaintiffs do not allege Epstein had a duty to them.

“To state a claim of negligence under New York law, Plaintiff must allege (1) a duty on the part of the defendant; (2) a breach of that duty by conduct involving an unreasonable risk of harm; (3) damages suffered by the plaintiff; and (4) causation, both in fact and proximate, between the breach and the plaintiff’s harm.” *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-cv-2065 (AJN), 2015 WL 13654007, at *20 (S.D.N.Y. Mar. 26, 2015) (internal quotations and citations omitted).

The Complaint fails to state a negligence claim because it fails to allege a duty held by Epstein to Plaintiffs. To the contrary, the Complaint simply alleges in conclusory terms that Epstein owed a duty as a "consultant" *to Hoffenberg or Towers*. Epstein's consultant relationship with Hoffenberg or even to Towers does not mean by law he owed a duty to Towers' investors.

Nor are there any allegations whatsoever concerning an alleged duty owed by any of the other Defendants. As FTC did not even exist when Plaintiffs allegedly invested in Towers, FTC could not have owed Plaintiffs any duty. Therefore, Plaintiffs' negligence claim must be dismissed against all Defendants.

## DEFENDANTS RESERVE THEIR RIGHTS TO MOVE FOR SANCTIONS

Considering Hoffenberg's extensive pattern of engaging in frivolous litigation, including his prior, withdrawn action against Defendants, in which he asserted the same claims as Plaintiffs in this action, Defendants respectfully reserve the right to seek sanctions if appropriate, including their costs for pursuing this Motion.

## CONCLUSION

Defendants respectfully request that: (i) their Motion to Dismiss be granted in all respects because Plaintiffs' claims are time-barred and, separately, because Plaintiffs fail to state a claim; and (ii) the Court grant Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York.       Respectfully submitted,
      September 14, 2018

TROUTMAN SANDERS LLP
875 Third Avenue
New York, New York 10022

By: */s/ Bennet J. Moskowitz*
 Bennet J. Moskowitz

*Attorneys for Defendants The Financial Trust
Company and Jeffrey E. Epstein*