**User Name:** Molly DiRago

**Date and Time:** Friday, September 14, 2018 2:10:00 PM CDT

**Job Number:** 73581968

## Document (1)

1. *Chubb & Son, Inc. v. Kelleher, 1998 U.S. Dist. LEXIS 22542*

   **Client/Matter:** 238227.000015

   **Search Terms:** 1998 U.S. Dist. LEXIS 22542

   **Search Type:** Natural Language

   **Narrowed by:**

| Content Type | Narrowed by |
| --- | --- |
| Cases | Court: 2nd Circuit,New York |

 Neutral
As of: September 14, 2018 7:10 PM Z

# *Chubb & Son, Inc. v. Kelleher*

United States District Court for the Eastern District of New York

February 26, 1998, Decided ; February 27, 1998, Filed

92 CV 4484 (CBA), 95 CV 951 (CBA)

**Reporter**
1998 U.S. Dist. LEXIS 22542 *

CHUBB & SON, INC., et al., Plaintiffs, -against- MICHAEL KELLEHER, et al., Defendants. CHUBB & SON, INC., et al., Plaintiffs, -against- JAMES KELLEHER, et al., Defendants.

**Notice:** **[*1]** NOT FOR PUBLICATION

**Subsequent History:** Magistrate's recommendation at *Chubb & Son, Inc. v. Kelleher, 2006 U.S. Dist. LEXIS 46200 (E.D.N.Y., Mar. 24, 2006)*

**Disposition:** Claims dismissed in this Memorandum and Order dismissed without leave to replead.

## Core Terms

enterprise, plaintiffs', allegations, state law claim, statute of limitations, defendants', continuity, pattern of racketeering activity, participated, breach of fiduciary duty, motion to dismiss, conspiracy claim, aiding and abetting, fraudulent, conspiracy, inflated, predicate act, particularity, bribes, conversion, pleaded, fiduciary duty, inducing, managed, racketeering activity, mail fraud, employees, insureds, mailings, replead

## Case Summary

### Procedural Posture

Plaintiff insurers filed actions against defendants, policyholders, claims representatives, public adjusters, independent contractors, and claims loss experts for fraud. They sought civil damages against defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. §§ 1961-1968*. Multiple defendants moved to dismiss the complaints against them pursuant to *Fed. R. Civ. P. 12(b)(6)*.

### Overview

The insurers alleged that defendants participated in enterprises and conspiracies engaged in an ongoing pattern of mail and wire fraud that made them liable for civil damages under RICO. Because many of the named defendants entered guilty pleas in a criminal action, there was no dispute that they defrauded the insurers by fabricating and inflating insurance claims. Nevertheless, the court dismissed claims against defendants on various grounds, including that: the RICO and common law fraud claims were not plead with particularity as required by *Fed. R. Civ. P. 9(b)*; a bank was not vicariously liable under RICO or state law for the independent fraudulent acts of its employees because no high-level employees participated in the racketeering and the bank did not benefit from the fraud; and, although certain defendants committed mail fraud, their mailing of a single fraudulent claim was insufficient to show continuity of illegal activity or a threat of continuity as required under RICO. The RICO claims were sustained against engineering experts because their submission of multiple fraudulent claims evidenced their operation of an enterprise engaged in a pattern of racketeering.

### Outcome

The court denied in part and granted in part defendants' motions to dismiss as set out in the court's opinion. Due to the number of defendants and claims involved, the court summarized its rulings on defendants' motions to dismiss in a chart. Except as otherwise indicated, the claims were dismissed without leave to replead.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State

Claim

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

### HN1[⬇] Motions to Dismiss, Failure to State Claim

In deciding a *Fed. R. Civ. P. 12(b)(6)* motion, a court's function is to determine whether the complaint is legally sufficient. A motion to dismiss must be denied unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Looking at the complaint, the court must accept as true the plaintiff's factual allegations, drawing all reasonable inferences in the plaintiff's favor.

Antitrust & Trade Law > ... > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

### HN2[⬇] Private Actions, Racketeer Influenced & Corrupt Organizations

The Racketeer Influenced and Corrupt Organizations Act (RICO) provides a civil cause of action to any person injured in his business or property by reason of a violation of *18 U.S.C.S. § 1962*. *18 U.S.C.S. § 1964(c)*. Section 1962(c) provides that it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. *18 U.S.C.S. § 1962(c)*. Section 1962(d) states that it is unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. *18 U.S.C.S. § 1962(d)*.

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

International Trade Law > General Overview

### HN3[⬇] Racketeering, Racketeer Influenced & Corrupt Organizations Act

The United States Supreme Court states that a violation of *18 U.S.C.S. § 1962(c)* requires proof of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The United States Court of Appeals for the Second Circuit, in turn, adheres to a seven-part test for a violation of *§ 1962(c)*. That test, which is consistent with the broad framework provided by the U.S. Supreme Court, requires the plaintiff establish the following elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Governments > Legislation > Statute of Limitations > General Overview

### HN4[⬇] Racketeering, Racketeer Influenced & Corrupt Organizations Act

Causes of action pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO) are governed by a four-year statute of limitations. Under the so-called rule of "separate accrual," RICO claims accrue for statute of limitations purposes each time a potential plaintiff suffers an injury. In the U.S. Court of Appeals for the Second Circuit, the rule of separate accrual dictates that each time that a plaintiff suffers an injury caused by a violation of *18 U.S.C.S. § 1962*, a cause of action to recover damages based on the injury accrues to the plaintiff at the time he discovered or should have discovered the injury.

Governments > Legislation > Statute of Limitations > Time Limitations

Securities Law > ... > Civil Liability > Fraudulent Interstate Transactions > General Overview

Governments > Legislation > Statute of Limitations > General Overview

**HN5[⤓]  Statute of Limitations, Time Limitations**

In the context of securities fraud, the United States Court of Appeals for the Secend Circuit applies an objective discovery rule to determine when a plaintiff "should have discovered" a fraud for purposes of triggering the applicable statute of limitations. Specifically, a plaintiff will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable person of ordinary intelligence would have discovered the existence of the fraud. This rule also imposes a "duty of inquiry," under which knowledge of a fraud will be imputed to the plaintiff if the plaintiff fails to inquire into circumstances that would suggest to a person of ordinary intelligence the probability that she has been defrauded.

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Discovery Rule

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

**HN6[⤓]  Tolling of Statute of Limitations, Discovery Rule**

District courts in the U.S. Court of Appeals for the Second Circuit apply an objective discovery rule in Racketeer Influenced and Corrupt Organizations Act (RICO) cases and specify that on a motion to dismiss, a RICO claim will be time-barred if the facts alleged in the complaint indicate that the plaintiff, with reasonable diligence, should have uncovered the alleged fraud prior to the limitations period. Application of the rule involves a two-part inquiry. First, the court must determine whether the facts alleged in the complaint show that plaintiffs had inquiry notice of the fraud. The court may find that plaintiffs had inquiry notice of the alleged frauds if the allegations in the complaint establish that plaintiffs were confronted with clear evidence contradicting representations made to them. This evidence must relate directly to the alleged fraudulent activity of the defendant at issue. If the information is so related, a

plaintiff need not have full knowledge of the fraud to be put on notice; mere awareness of the general nature of the fraudulent scheme is enough. Second, if plaintiffs had such inquiry notice, the court must consider whether they responded with reasonable diligence.

Antitrust & Trade Law > ... > Private Actions > Racketeer Influenced & Corrupt Organizations > Statute of Limitations

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraud

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraudulent Concealment

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Governments > Legislation > Statute of Limitations > Tolling

**HN7[⤓]  Racketeer Influenced & Corrupt Organizations, Statute of Limitations**

Under the Racketeer Influenced and Corrupt Organizations Act (RICO), the standard tolling exceptions apply to the rule of separate accrual, including the doctrine of fraudulent concealment. Under this doctrine, the statute of limitations is tolled if a plaintiff establishes the following three elements: (1) the defendant fraudulently concealed his actions from the plaintiff, (2) this concealment prevented the plaintiff's discovery of the claim until some point within four years of the commencement of the action, and (3) the plaintiff exhibited due diligence in pursuing discovery of the claim. The United States Supreme Court holds that the due diligence requirement is a necessary component of fraudulent concealment in civil RICO claims. A plaintiff who is not reasonably diligent in trying to discover his civil RICO cause of action may not rely upon "fraudulent concealment" to toll the limitations period.

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraud

Governments > Legislation > Statute of Limitations > Pleadings & Proof

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraudulent Concealment

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Tolling

*HN8*[⬇] **Tolling of Statute of Limitations, Fraud**

Because fraudulent concealment claims come within the ambit of *Fed. R. Civ. P. 9(b)*, a plaintiff must plead with particularity all three elements of fraudulent concealment for the doctrine to toll the statute of limitations on a motion to dismiss. The U.S. Court of Appeals for the Second Circuit recognizes that such a pleading must include distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been made earlier. Finally, a plaintiff must plead fraudulent concealment as to each individual defendant and specify which defendant committed the alleged acts of concealment.

Antitrust & Trade Law > ... > Racketeer Influenced & Corrupt Organizations > Claims > General Overview

Criminal Law & Procedure > ... > Crimes Against Persons > Coercion & Harassment > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN9*[⬇]   **Racketeer   Influenced   &   Corrupt Organizations, Claims**

To successfully plead a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), plaintiffs must allege a pattern of racketeering activity rather than isolated or sporadic criminal acts. *18 U.S.C.S. § 1962(c)*. By the terms of the RICO statute, a pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of the chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity. *18 U.S.C.S. § 1961(5)*. The United States Supreme Court notes, however, that *§ 1961(5)* does not define a pattern of racketeering activity so much as it states a minimum necessary condition for the existence of such a pattern. Proof of the requisite pattern requires an additional showing that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.Thus, to satisfy the "pattern of racketeering activity" element of civil RICO, plaintiffs must plead and prove that the predicate acts they allege (1) are related and (2) either show continuity or pose a threat of continuity.

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > General Overview

Criminal Law & Procedure > ... > Fraud > Wire Fraud > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN10*[⬇] **Fraud Against the Government, Mail Fraud**

"Racketeering activity" within the meaning of the Racketeer Influenced and Corrupt Organizations Act includes mail fraud and wire fraud. *18 U.S.C.S. § 1961(1)(B)*.

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN11*[⬇]   **Racketeering,   Racketeer   Influenced   &**

1998 U.S. Dist. LEXIS 22542, *1

## Corrupt Organizations Act

The United States Supreme Court has held that the relatedness requirement for showing the "pattern of racketeering activity" element of a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) is satisfied if the predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. The United States Court of Appeals for the Second Circuit, in turn, directs that the "relatedness" of predicate acts may be evidenced by their temporal proximity, repetition, common goal and similar methodology. On a motion to dismiss, the question that must always be answered is whether a complaint adequately alleges facts from which it may be inferred that the predicate acts are interrelated, using the above factors as indications of relatedness.

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

### HN12[⤓] Racketeering, Racketeer Influenced & Corrupt Organizations Act

To satisfy the "pattern of racketeering activity" element of civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), plaintiffs must not only plead and prove that the predicate acts they allege are related, but also that they demonstrate the requisite continuity or threat of continuity. On this point, the U.S. Supreme Court explains that continuity is both a closed- and open-ended concept. Closed-ended continuity is established upon proof of repeated predicate acts over a "substantial" period of time, i.e., some period of time exceeding weeks or months. Open-ended continuity, on the other hand, is demonstrated by predicate acts that present a threat of repetition.

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

### HN13[⤓] Racketeering, Racketeer Influenced & Corrupt Organizations Act

The assessment of whether a plaintiff has established closed-ended continuity, to satisfy the "pattern of racketeering activity" element of civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), must give considerable weight to the somewhat mechanistic evaluation of the duration of the alleged activities. It is suggested that a duration of at least two years may be required. However, additional non-dispositive factors to assist courts in determining whether closed-ended continuity exists the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes.

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

### HN14[⤓] Racketeering, Racketeer Influenced & Corrupt Organizations Act

As for open-ended continuity determinations, for purposes of establishing the "pattern of racketeering activity" element of civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), courts look first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed. Thus, an inherently unlawful act performed at the behest of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity. Where the nature of conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other external factors. The assessment of whether a threat of continuity exist is necessarily a fact-bound, contextual inquiry. Specifically, a court must consider the factual allegations concerning (1) the nature of the enterprise, (2) the nature of the acts themselves, and (3) other external factors.

Criminal Law & Procedure > ... > Crimes Against
Persons > Coercion & Harassment > General
Overview

Criminal Law & Procedure > Criminal
Offenses > Obstruction of Administration of
Justice > General Overview

Criminal Law &

1998 U.S. Dist. LEXIS 22542, *1

Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

**HN15**[🔗]  **Crimes Against Persons, Coercion & Harassment**

An enterprise's affiliation with organized crime would demonstrate a threat of continued criminal activity for purposes of establishing the "pattern of racketeering activity" element of civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO). If the enterprise is not affiliated with organized crime, the nature of the enterprise does not of itself suggest that racketeering acts will continue. The nature of a "legitimate" enterprise may nonetheless support a finding of a threat of continuity if it regularly engages in illegal activities. Inherently unlawful predicate acts also support a finding of the requisite threat of continuity. In cases where the acts of the defendant or the enterprise are inherently unlawful, such as murder or obstruction of justice, and are in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally conclude that the requisite threat of continuity is adequately established by the nature of the activity, even though the period spanned by the racketeering acts is short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally find no threat of continuing criminal activity arising from conduct that extended over even longer periods.

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

**HN16**[🔗]  **Racketeering, Racketeer Influenced & Corrupt Organizations Act**

In determining the "pattern of racketeering activity" element of civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), a defendant is not to be held accountable for predicate acts committed by others. Moreover, a plaintiff may not artificially fragment a singular act into multiple acts simply to invoke RICO.

Criminal Law &

Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Criminal Law & Procedure > ... > Inchoate Crimes > Conspiracy > General Overview

**HN17**[🔗]  **Racketeering, Racketeer Influenced & Corrupt Organizations Act**

Conspiracy law does not apply to the pattern requirement of the Racketeer Influenced and Corrupt Organizations Act (RICO). The elements of a substantive RICO violation must be satisfied as to each defendant, rather than as to the enterprise as a whole. The focus of *18 U.S.C.S. § 1962(c)* is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by *§ 1962(d)*.

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

**HN18**[🔗]  **Racketeering, Racketeer Influenced & Corrupt Organizations Act**

The Racketeer Influenced and Corrupt Organizations Act (RICO) specifies that the term "enterprise" includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *18 U.S.C.S. § 1961(4)*.

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

**HN19**[🔗]  **Racketeering, Racketeer Influenced & Corrupt Organizations Act**

For purposes of establishing a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), the United States Supreme Court explains that an association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct, the existence of which is proven by evidence of an ongoing organization, formal or

1998 U.S. Dist. LEXIS 22542, *1

informal, and by evidence that the various associates function as a continuing unit. The Second Circuit Court of Appeals, in turn, observes that the identification and proof of an association-in-fact enterprise often turns on a consideration of what it does, rather than by abstract analysis of its structure. Based on this observation, the Court of Appeals sanctions reliance on proof of various racketeering acts to establish the existence of an association-in-fact enterprise. The U.S. Court of Appeals for the Second Circuit does not require that proof of an enterprise and pattern be distinct. This Circuit holds that an association-in-fact enterprise may be based on a common illicit purpose as evidenced by the alleged racketeering acts without proof of a formalistic, organizational structure. A court must remain cognizant, however, the an enterprise is an entity separate and apart form the pattern of activity in which it engages the existence of which at all times remains a separate element which must be proven.

Criminal Law &
Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > Elements

Criminal Law &
Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN20*[⤓] **Racketeer Influenced & Corrupt Organizations Act, Elements**

A legal entity could be both an enterprise as defined under the Racketeer Influenced and Corrupt Organizations Act (RICO) and a victim of the alleged racketeering activity.

Criminal Law & Procedure > ... > Bribery > Public Officials > General Overview

Criminal Law &
Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN21*[⤓] **Bribery, Public Officials**

The Racketeer Influenced and Corrupt Organizations Act (RICO) statute mandates that to be liable, an alleged racketeer must participate, directly or indirectly,

in the conduct of such enterprise's affairs. *18 U.S.C.S. § 1962(c)*. The U.S. Supreme Court has held that to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs, one must participate in the operation or management of the enterprise itself. An enterprise is operated and managed by upper management, lower rung participants in the enterprise who are under the direction of upper management, and even others outside but associated with the enterprise who exert control over it as, for example, by bribery. In adopting this "operation or management" test, the U.S. Supreme Court rejects the more stringent position that a RICO defendant must have "significant" control over the enterprise to violate *§ 1962(c)* in favor of the view that such a defendant must either have directed or have had some part in directing the enterprise's affairs. A defendant can act under the direction of superiors in a RICO enterprise and still participate in the operation of the enterprise within the meaning of *§ 1962(c)*. However, the simple taking of directions and performance of tasks that are necessary or helpful to the enterprise, without more, is insufficient to bring a defendant within the scope of *§ 1962(c)*.

Criminal Law &
Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN22*[⤓] **Racketeering, Racketeer Influenced & Corrupt Organizations Act**

For a lower-level participant to operate or manage an enterprise for purposes of liability under the Racketeer Influenced and Corrupt Organizations Act (RICO), that participant must actually be on the "management chain" or "ladder of operation." Moreover, the lower-level participant acting at the behest of upper-level actors operates or controls an enterprise within the meaning of RICO if the participant (1) is involved in the decisionmaking or management process; (2) acts with discretion in carrying out orders; or (3) provides "substantial assistance" in carrying out the illicit activities of the enterprise. Finally, the lower-level actor must act with awareness of the broader enterprise.

Criminal Law &
Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > Elements

Criminal Law & Procedure > ... > Crimes Against Persons > Bribery > General Overview

Criminal Law & Procedure > ... > Bribery > Public Officials > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

*HN23*[⬇]   **Racketeer Influenced & Corrupt Organizations Act, Elements**

Someone who bribes an upper-level manager of an enterprise to impel criminal behavior that would not otherwise occur certainly plays some part in directing the enterprise's affairs with regard to liability under the Racketeer Influenced and Corrupt Organizations Act (RICO). However, allegations of bribery may be insufficient to warrant RICO liability when the factual allegations demonstrate that true "control" of the enterprise resided with the recipients, not the payors, of the bribes.

Criminal Law & Procedure > Accessories > Aiding & Abetting

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > Elements

*HN24*[⬇]   **Accessories, Aiding & Abetting**

Simply aiding and abetting a violation is not sufficient to trigger liability under the Racketeer Influenced and Corrupt Organizations Act even though *18 U.S.C.S. § 1962(c)* punishes those who participate "directly or indirectly" in the enterprise's affairs.This conclusion does not alter the well-established principle that a defendant may be held liable for committing a predicate act of racketeering activity if he aided and abetted the commission of that act.

Criminal Law &

Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Torts > ... > Employers > Activities & Conditions > General Overview

Torts > Vicarious Liability > Corporations > General Overview

*HN25*[⬇]   **Racketeering, Racketeer Influenced & Corrupt Organizations Act**

Employers may be held vicariously liable under the Racketeer Influenced and Corrupt Organizations Act for the malfeasance of their employees under certain circumstances. These circumstances may be identified through the application of the "central figure" test. A corporation may be found vicariously liable under *18 U.S.C.S. § 1962(c)* only where the corporation may fairly be said to be a "central figure" (or "aggressor") in the alleged scheme. What constitutes a "central figure" will vary with the factual circumstances of each case. In order to establish corporate liability under *§ 1962(c)*, however, it is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity. Once knowledge or reckless indifference at this high corporate level has been determined, the court may then consider other factors, including the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted from the racketeering activity. However, the fact that a corporation benefits from an illegal scheme does not in itself establish that the corporation participated as a "central figure" in that scheme.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN26*[⬇]   **Motions to Dismiss, Failure to State Claim**

In determining a motion to dismiss, a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. If a district court considers matters outside the pleadings in deciding a *Fed. R. Civ. P. 12(b)(6)* motion, it must treat

1998 U.S. Dist. LEXIS 22542, *1

the motion as one for summary judgment.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

**HN27**[⬇] **Amendment of Pleadings, Leave of Court**

Although leave to amend a pleading shall be freely given when justice so requires pursuant to *Fed. R. Civ. P. Rule 15(a)*, leave need not be granted when further amendment would be futile.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > Fraud Claims

Torts > ... > Concerted Action > Civil Conspiracy > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

**HN28**[⬇] **Heightened Pleading Requirements, Fraud Claims**

Although allegations of conspiracy, unlike any underlying claims of fraud, need not comport with the specificity requirements of *Fed. R. Civ. P. 9(b)*, a complaint must nonetheless allege some factual basis for a finding of a conscious agreement among the defendants. The court must look to the specific allegations against each defendant to determine whether any factual basis exists for plaintiffs' conspiracy claim against that particular defendant.

Criminal Law & Procedure > ... > Inchoate Crimes > Conspiracy > Elements

Torts > ... > Concerted Action > Civil Conspiracy > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

**HN29**[⬇] **Conspiracy, Elements**

To incur liability for conspiracy under the Racketeer Influenced and Corrupt Organizations Act: a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > Fraud Claims

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Criminal Law & Procedure > ... > Fraud > Wire Fraud > General Overview

Torts > Business Torts > Fraud & Misrepresentation > General Overview

**HN30**[⬇] **Heightened Pleading Requirements, Fraud Claims**

Pursuant to *Fed. R. Civ. P. 9(b)*, allegations of mail or wire fraud must be pleaded with particularity. Pursuant to *Rule 9(b)*, allegations of fraud must allege the time, place, speaker and, sometimes, the content of the alleged misrepresentations. Scienter may be averred generally, but a plaintiff must articulate some factual basis providing a strong inference of intent.

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > General Overview

Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > General

Overview

### HN31[⬇] Jurisdiction, Jurisdictional Sources

A federal district court's power to decide state claims is governed by *28 U.S.C.S. § 1367(a)*. This supplemental jurisdiction can extend to a party over whom there is no original federal jurisdiction, so long as the state and federal claims that remain part of the case share a common nucleus of operative facts. However, a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. *28 U.S.C.S. § 1367(c)*.

Governments > Courts > Common Law

Torts > Business Torts > Fraud & Misrepresentation > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Torts > ... > Fraud & Misrepresentation > Actual Fraud > General Overview

Torts > Procedural Matters > Statute of Limitations > General Overview

### HN32[⬇] Courts, Common Law

Common law fraud claims are barred if they are brought more than six years from the date of the alleged fraud or two years from when plaintiffs discovered or should have discovered their injury, whichever is longer. *N.Y. C.P.L.R. 203(g)*, *213*. As with violations of the Racketeer Influenced and Corrupt Organizations Act, knowledge of an injury from common law fraud is imputed to plaintiffs upon inquiry notice, absent a showing that despite due diligence they were unable to uncover the fraud.

Contracts Law > Defenses > Fraud &

Misrepresentation > General Overview

Governments > Fiduciaries

Torts > ... > Fraud & Misrepresentation > Actual Fraud > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > Fraud Claims

### HN33[⬇] Defenses, Fraud & Misrepresentation

*Fed. R. Civ. P. 9(b)* extends to all averments of fraud or mistake, whatever may be the theory of legal duty: statutory, common law, tort, contractual or fiduciary.

Governments > Fiduciaries

Torts > ... > Statute of Limitations > Tolling > Discovery Rule

Business & Corporate Law > ... > Causes of Action & Remedies > Breach of Fiduciary Duty > General Overview

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Torts > Business Torts > Fraud & Misrepresentation > General Overview

Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview

Torts > Intentional Torts > Breach of Fiduciary Duty > Defenses

Torts > Malpractice & Professional Liability > General Overview

Torts > Procedural Matters > Statute of Limitations > General Overview

### HN34[⬇] Governments, Fiduciaries

New York law does not provide an express statute of

limitations for a breach of fiduciary duty. Rather, a cause of action for the breach of a fiduciary duty may be governed by either a three-year or a six-year limitations period. In general, the choice of the applicable statute of limitations depends on the substantive remedy that the plaintiff seeks. An action for damages from a breach of fiduciary duty is governed by the three-year period set forth in *N.Y. C.P.L.R. 214(4)*, while an action seeking equitable relief is governed by the six-year catch-all period in *N.Y. C.P.L.R. 213(1)*. A court must also take the gravamen of the complaint into consideration in identifying the applicable limitations period. Thus, if a claim for breach of fiduciary duty sounds in fraud, courts apply the analogous six-year statute of limitations to that claim. Moreover, the "discovery rule" is generally utilized in the context of fraud claims to breach of fiduciary duty claims governed by a six-year statute of limitations, such that the statute of limitations does not accrue until a plaintiff has actual or constructive knowledge of the defendant's breach of fiduciary duty.

Governments > Fiduciaries

Torts > Intentional Torts > Breach of Fiduciary Duty > Defenses

Business & Corporate Law > ... > Causes of Action & Remedies > Breach of Fiduciary Duty > General Overview

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Time Limitations

Torts > Business Torts > Fraud & Misrepresentation > General Overview

Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview

Torts > Procedural Matters > Statute of Limitations > General Overview

*HN35*[⤓] **Governments, Fiduciaries**

New York law lacks an express statute of limitations for inducing or aiding and abetting a breach of fiduciary duty. Nevertheless, when plaintiffs' claims for inducing or aiding and abetting a breach of fiduciary duty are predicated upon the same fraudulent scheme giving rise

the plaintiffs' common law fraud and breach of fiduciary duty claims, plaintiff's inducing or aiding and abetting a breach of fiduciary duty claims are subject to a six-year statute of limitations that commences upon actual or constructive knowledge of the acts giving rise to the claim.

Business & Corporate Law > Agency Relationships > Fiduciaries > General Overview

Contracts Law > Contract Interpretation > Fiduciary Responsibilities

Governments > Fiduciaries

*HN36*[⤓] **Agency Relationships, Fiduciaries**

Under New York law, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. New York courts have recognized that a fiduciary duty may exist where one entity is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. An arms-length commercial transaction, without more, generally does not give rise to a fiduciary duty.

Governments > Fiduciaries

Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview

Business & Corporate Law > ... > Causes of Action & Remedies > Breach of Fiduciary Duty > General Overview

Torts > Malpractice & Professional Liability > Professional Services

*HN37*[⤓] **Governments, Fiduciaries**

To plead a claim for inducing a breach of fiduciary duty, a complaint must allege (1) a breach of by a fiduciary of obligations to another; (2) the defendant's knowing inducement or participation in the breach; and (3) resulting damage to the plaintiff. The gravamen of the claim of participation in a breach of fiduciary duty is the defendant's knowing participation in the fiduciary's

breach of trust.

Governments > Fiduciaries

Torts > Intentional Torts > Breach of Fiduciary Duty > Elements

Business & Corporate Law > ... > Causes of Action & Remedies > Breach of Fiduciary Duty > General Overview

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > Fraud Claims

Torts > Business Torts > Fraud & Misrepresentation > General Overview

Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview

Torts > Malpractice & Professional Liability > Professional Services

*HN38*[⬇] **Governments, Fiduciaries**

A three-part test applies to a claim for aiding and abetting a breach of a fiduciary duty. Specifically, a plaintiff must show (1) the existence of a violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. To the extent that the primary violation is grounded in fraud, the allegations of a defendant's aiding and abetting that violation must comport with the particularity requirements of *Fed. R. Civ. P. 9(b)*. Conclusory assertions of aider-abettor liability which refer to the general charges of wrongdoing are insufficient when the primary violation is based on fraud.

Torts > Intentional Torts > Conversion > Defenses

Torts > Intentional Torts > Conversion > General Overview

Torts > Intentional Torts > Conversion > Elements

*HN39*[⬇] **Conversion, Defenses**

Under New York law, to establish conversion the plaintiff must establish legal ownership or an immediate superior right to the possession to a specific identifiable thing. A conversion of property is any unauthorized exercise of dominion or control over the property by one who is not the owner thereof which interferes with another person's superior possessory rights in the property. Money may be the subject of a conversion action, but only if the plaintiff can show that the money was contained in a specific, identifiable fund and was designated for a particular purpose for the plaintiff's benefit. The mere claim that a sum of money, not specifically identifiable has been wrongfully paid out will not support a claim of conversion. A mere claim of monies paid out by mistake based upon contract will not support an action for conversion. Furthermore, New York law provides that a conversion action may be maintained where there is an obligation to return or otherwise treat in a particular manner the specific money in question.

Torts > Intentional Torts > Conversion > General Overview

*HN40*[⬇] **Intentional Torts, Conversion**

New York courts are clear that money can be the subject of conversion and a conversion action only when it can be described, identified, or segregated in the manner that a specific chattel can be.

Business & Corporate Compliance > ... > Contracts Law > Types of Contracts > Quasi Contracts

Governments > Legislation > Statute of Limitations > Time Limitations

Governments > Legislation > Statute of Limitations > General Overview

*HN41*[⬇] **Types of Contracts, Quasi Contracts**

The applicable statute of limitations period for unjust enrichment claims under New York law is six years. *N.Y. C.P.L.R. 213(1)*. The statute of limitations accrues at the time of the act that gives rise to the duty of restitution.

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraud

1998 U.S. Dist. LEXIS 22542, *1

Governments > Legislation > Statute of Limitations > Equitable Estoppel

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraudulent Concealment

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Tolling

*HN42*[⬇] **Tolling of Statute of Limitations, Fraud**

Equitable tolling concerns the running of the statute of limitations and the circumstances under which the running of the limitations period should be suspended. Fraudulent concealment operates to toll the limitations period. Equitable estoppel, on the other hand, functions to preclude a defendant from asserting a statute of limitations defense in an untimely action when that defendant's affirmative actions after his wrongdoing induced plaintiff to forebear from bringing suit.

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraud

Governments > Legislation > Statute of Limitations > Equitable Estoppel

Civil Procedure > ... > Statute of Limitations > Tolling of Statute of Limitations > Fraudulent Concealment

Governments > Legislation > Statute of Limitations > General Overview

Governments > Legislation > Statute of Limitations > Pleadings & Proof

Governments > Legislation > Statute of Limitations > Tolling

Torts > Business Torts > Fraud & Misrepresentation > General Overview

*HN43*[⬇] **Tolling of Statute of Limitations, Fraud**

A plaintiff's allegations are insufficient to establish that the statute of limitations should be tolled as a result of

defendants' fraudulent concealment when plaintiffs do not specify when they uncovered defendants' frauds and do not demonstrate that they exercised due diligence in discovering their injuries. Under New York law, a plaintiff advancing an equitable estoppel argument based upon fraudulent misrepresentations bears a similar burden of showing due diligence in bringing suit after discovering the facts giving rise to the estoppel. The burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational. The absence of any allegations concerning the relevant dates of discovery or plaintiffs' due diligence in commencing suit is therefore also fatal to their equitable estoppel argument.

Governments > Fiduciaries

Labor & Employment Law > Employment Relationships > Fiduciary Responsibilities

Torts > Intentional Torts > Breach of Fiduciary Duty > Elements

Civil Procedure > ... > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims

Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview

*HN44*[⬇] **Governments, Fiduciaries**

New York law establishes that an employee-employer relationship is fiduciary.

Torts > Intentional Torts > General Overview

Torts > Vicarious Liability > General Overview

Torts > Vicarious Liability > Employers > General Overview

Torts > ... > Employers > Activities & Conditions > General Overview

Torts > ... > Employers > Activities & Conditions > Intentional Torts

Torts > ... > Employers > Scope of Employment > General Overview

*HN45*[⬇️]  **Torts, Intentional Torts**

Under New York law, an employer is vicariously liable for the torts of its employee, even when the employee's actions are intentional, if the actions were done while the employee was acting within the scope of his or her employment. However, there is no vicarious liability on the part of the employer for torts committed by the employee solely for personal motives unrelated to the furtherance of the employers' business. Under this standard, courts have refused to hold an employer vicariously liable for the intentional torts of its employees if the wrongful acts were not "incidental" to the furtherance of the employer's business or if an employer acted in good faith and did not induce the employee to commit the intentional tort in question.

Banking Law > ... > Criminal Offenses > Check Fraud > Elements

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > Elements

Banking Law > ... > Criminal Offenses > Bank Fraud > General Overview

Banking Law > ... > Criminal Offenses > Bank Fraud > Elements

Business & Corporate Compliance > ... > Enforcement > Duties & Liabilities of Parties > Forgery, Fraud & Mistake

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > General Overview

Governments > Federal Government > US Postal Service

*HN46*[⬇️]  **Check Fraud, Elements**

The federal mail fraud statute, *18 U.S.C.S. § 1341*, provides that whoever, having devised or intending to devise any scheme or artifice to defraud for the purpose of executing such scheme places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail any such matter or thing is guilty of mail fraud. To state a claim for mail fraud, the plaintiff must allege: (1) a scheme or artifice to defraud; ( 2) for the purpose of

obtaining money or property; and (3) use of the mails in furtherance of the scheme.Multiple mailings in furtherance of a single scheme to defraud constitute multiple offenses under the mail fraud statute.

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > General Overview

*HN47*[⬇️]  **Fraud Against the Government, Mail Fraud**

A scheme to defraud for purposes of claiming mail fraud includes everything designed to defraud by representations as to the past or present. A scheme to defraud requires fraudulent or deceptive means, such as material misrepresentation or concealment. The scheme to defraud must have been devised with the specific intent to defraud.

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > Elements

Criminal Law & Procedure > ... > Fraud Against the Government > Mail Fraud > General Overview

*HN48*[⬇️]  **Mail Fraud, Elements**

The mail fraud statute requires that the defendant, for the purpose of executing a scheme to defraud, place matter in the mail or knowingly cause the matter to be delivered by mail. *18 U.S.C.S. § 1341*. Thus, for plaintiffs to state a claim for mail fraud, they must allege (1) that they used or caused the use of the mails and (2) that such use was in furtherance of the scheme to defraud. The first requirement does not mean that a defendant must have actually mailed the material himself. Instead, a defendant "causes" the use of the mails within the meaning of the statute when he does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended. The courts, when construing the mail fraud statute in the context of schemes to defraud an insurance company, have consistently held that defendants "caused" mailings that are part of the ordinary claims process. In alleging that the use of the mails is in furtherance of the scheme to defraud, the U.S. Supreme Court has held that this component does not require that use of the mails be an essential part of the scheme. Rather, the mailing or transmission need only be incident to an essential part of the scheme.

Governments > Fiduciaries

Torts > Intentional Torts > Breach of Fiduciary
Duty > Defenses

Governments > Legislation > Statute of
Limitations > General Overview

Governments > Legislation > Statute of
Limitations > Time Limitations

Torts > Business Torts > Fraud &
Misrepresentation > General Overview

Torts > Intentional Torts > Breach of Fiduciary
Duty > General Overview

Torts > Procedural Matters > Statute of
Limitations > General Overview

## *HN49*[⤓] Governments, Fiduciaries

New Jersey law imposes a six-year statute of limitations
on plaintiffs' claims for fraud and inducing, aiding, and
abetting a breach of fiduciary duty. *N.J. Stat. Ann. §
2A:14-1*. New Jersey courts apply a "discovery rule" to
cases governed by that statute, under which a cause of
action does not accrue until the plaintiff discovers, or by
exercise of reasonable diligence and intelligence should
have discovered, facts that form the basis of a cause of
action.

Civil Procedure > Sanctions > Baseless
Filings > General Overview

## *HN50*[⤓] Sanctions, Baseless Filings

There is apparently no requirement that the court grant
a litigant leave to file a *Fed. R. Civ. P. 11* motion. If a
party believe that they have a good faith basis upon
which to make a *Rule 11* motion, they should do so in
compliance with the Federal Rules of Civil Procedure
and the Local Rules of the Eastern District of New York.

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

## *HN51*[⤓] Racketeering, Racketeer Influenced &
Corrupt Organizations Act

The United States Court of Appeals for the Second
Circuit has suggested without deciding that predicate
acts injuring non-plaintiffs may be considered in
evaluating whether a pattern exists for purposes of
establishing liability under the Racketeer Influenced and
Corrupt Organizations Act. Such a view of the pattern
requirement appears to be a correct reading of *18
U.S.C.S. § 1964(c)*.

Civil
Procedure > ... > Justiciability > Standing > General
Overview

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

## *HN52*[⤓] Justiciability, Standing

Under the Racketeer Influenced and Corrupt
Organizations Act (RICO), a plaintiff only has standing
if, and can only recover to the extent that, he has been
injured in his business or property by the conduct
constituting the violation. Furthermore, a cause of action
does not accrue under RICO until the injury and the
resulting damages are provable.

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > Elements

Criminal Law & Procedure > ... > Crimes Against
Persons > Coercion & Harassment > General
Overview

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

## *HN53*[⤓] Racketeer Influenced & Corrupt
Organizations Act, Elements

Generally speaking, acts extending over a few weeks or
months do not satisfy the pattern of activity requirement
for establishing liability under to the Racketeer

Influenced and Corrupt Organizations Act (RICO). However, when conduct alleged in a complaint is that which threatens future criminal conduct, the pattern requirement for RICO liability is satisfied.

> Business & Corporate Law > General Partnerships > Management Duties & Liabilities > General Overview

> Torts > ... > Concerted Action > Civil Conspiracy > General Overview

> Business & Corporate Law > ... > Directors & Officers > Management Duties & Liabilities > General Overview

**HN54[** ↯ **] General Partnerships, Management Duties & Liabilities**

The United States Court of Appeals for the Second Circuit has held that the intra-corporate conspiracy doctrine does not apply to partnerships. Certain courts have stated that there is no conspiracy when two or more agents of a corporation take action on behalf of the corporation. But this reasoning does not apply at all to a partnership.

**Counsel:** For CHUBB & SON, INC., FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, SEA INSURANCE COMPANY OF AMERICA, GREAT NORTHERN INSURANCE COMPANY, plaintiffs (95-CV-951): Howard S. Veisz, Kornstein Veisz & Wexler, New York, NY.

For JAMES KELLEHER, defendant (95-CV-951): James O'Rourke, Spota, O'Rourke & Ammerman, Hauppauge, NY.

For RICH & SIMON, defendant (95-CV-951): Evan Glassman, LaRossa, Mitchell & Ross, New York, NY.

For ALAN ROSENKRANZ, defendant (95-CV-951): Lawrence K. Katz, Garden City, NY.

For LOUIS ROSENKRANZ, defendant (95-CV-951): David B. Newman, Cooperman Levitt & Winikoff, P.C., David B. Newman, Cooperman, Levitt & Winikoff, New York, NY.

For STEVEN CHERNOFF, defendant (95-CV-951): Jerry D. Bernstein, Wachtel & Masyr, LLP, New York, NY.

For FRANK KLEIN, CARNIVAL CREATIONS, defendants (95-CV-951): Robert M. Callagy, Daniel G.

Gurfein, Satterlee Stephens Burke & Burke, New York, NY.

For JERRY CLAIR, STANLEY SLOAN, VENUS TRIMMING AND BINDING, INC., defendants (95-CV-951): S. Reid Kahn, Kane Kessler, P.C., New York, NY.

For **[*2]** ELEGANT KNITTED HEADWEAR, INC., JULIUS TEMPLER, defendants (95-CV-951): Nancy R. Sills, Graubard, Mollen & Miller, New York, NY.

For RICH & SIMON, cross-claimant (95-CV-951): Evan Glassman, LaRossa, Mitchell & Ross, New York, NY.

For ELEGANT KNITTED HEADWEAR, INC., JULIUS TEMPLER, cross-claimants (95-CV-951): Nancy R. Sills, Graubard, Mollen & Miller, New York, NY.

For JAMES KELLEHER, cross-defendant (95-CV-951): James O'Rourke, Spota, O'Rourke & Ammerman, Hauppauge, NY.

For ALAN ROSENKRANZ, cross-defendant (95-CV-951): Lawrence K. Katz, Garden City, NY.

For LOUIS ROSENKRANZ, cross-defendant (95-CV-951): David B. Newman, Cooperman Levitt & Winikoff, P.C., New York, NY.

For FRANK KLEIN, CARNIVAL CREATIONS, cross-defendants (95-CV-951): Robert M. Callagy, Daniel G. Gurfein, Satterlee Stephens Burke & Burke, New York, NY.

For JERRY CLAIR, STANLEY SLOAN, VENUS TRIMMING AND BINDING, INC., cross-defendants (95-CV-951): S. Reid Kahn, Kane Kessler, P.C., New York, NY.

For EDWARD A. RICH, third-party defendant (95-CV-951): Peter G. Goodman, Kurzman, Karelson & Frank, LLP, New York, NY.

For EDWARD A. RICH, counter-claimant (95-CV-951): Peter G. Goodman, **[*3]** Kurzman, Karelson & Frank, LLP, New York, NY.

**Judges:** Carol Bagley Amon, United States District Judge.

**Opinion by:** Carol Bagley Amon

# Opinion

MEMORANDUM & ORDER

AMON, U.S. DISTRICT JUDGE

1998 U.S. Dist. LEXIS 22542, *3

Introduction

Multiple defendants in the above-captioned related actions have moved to dismiss the complaints against them pursuant to *Fed. R. Civ. P. 12(b)(6)*. [1] The complaints in these cases allege that the named defendants engaged in an ongoing pattern of mail and wire fraud that makes them liable for civil damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. §§ 1961-1968*. Although the complaints detail different specific acts of fraud, they allege nearly identical RICO enterprises. Moreover, many of the alleged instances of fraud in the 1992 action involve defendants named in the 1995 action and vice versa. Consequently, it is most logical to view these complaints together.

 **[*4]**  TABLE OF CONTENTS

Background

Discussion

I. THE RICO CLAIMS

    A. *Standard for a Motion to Dismiss*

    B. *Elements of a Civil RICO Cause of Action*

    C. *Statute of Limitations*

    D. *Pattern of Racketeering*

        1. Relatedness

        2. Continuity

    E. *Enterprise*

    F. *The Reves Operation or Management Test*

        1. Aiding and Abetting Liability

    G. *Vicarious Liability*

    H. *Conspiracy*

---

[1] In a Memorandum and Order dated October 23, 1997 (the "October Opinion"), the Court disposed of one such motion made by defendants Michael Kelleher and Kim Luttinger. The Court will address the remaining motions to dismiss in the context of this prior ruling, familiarity with which is assumed. The Court further notes that plaintiffs have voluntarily dismissed their complaint against Burton Berson, thereby making his pending motion to dismiss moot.

II. PLEADING ISSUES

    A. *Particularity of the Fraud Claims*

    B. *Multiple Enterprises in a Unitary RICO Cause of Action*

III. PENDENT CLAIMS

    A. *Supplemental Jurisdiction*

    B. *Common Law Fraud*

        1. Statute of Limitations

        2. Particularity of Pleading

    C. *Breach of Fiduciary Duty and Its Inducement*

        1. Statute of Limitations

        2. Sufficiency of the Complaint

    D. *Conversion*

    E. *Unjust Enrichment*

IV. MOTIONS OF INDIVIDUAL DEFENDANTS

    A. *Jerome Chamlin & Chamlin Spitzer Associates (92 Complaint)*

        1. Particularity of Plaintiffs' Fraud Allegations

        2. RICO Conspiracy Claim

        3. State Law Claims

        4. **[*5]** Defendant Chamlin's Guilty Plea

    B. *M.F. Bank (92 Complaint)*

        1. Vicarious Liability

        2. Aiding and Abetting

        3. Vicarious Liability Under New York Law

    C. *All American Poly Corp. and George Pscherhofer (92 Complaint)*

        1. Sufficiency of Substantive RICO Claims

        a. *Predicate Acts*

        b. *Pattern of Racketeering Activity*

        2. Sufficiency of Plaintiffs' RICO Conspiracy Claims

        3. RICO Statute of Limitations

1998 U.S. Dist. LEXIS 22542, *5

4. Supplemental Jurisdiction

5. Timeliness of State Law Claims

6. Particularity of Fraud Allegations

7. Rule 11 Sanctions and Severance

D. *Joel Spira (92 Complaint)*

1. Pattern of Racketeering Activity

2. RICO Standing

3. RICO Conspiracy Claim

4. Jurisdiction over State Law Claims

E. *Jacob Adoni (95 Complaint)*

1. Pattern of Racketeering Activity

2. The *Reves* Test

3. RICO Conspiracy Claim

4. State Law Claims

a. *Jurisdiction*

b. *Statute of Limitations*

F. *James Kelleher and Prime Decisions (95 Complaint)*

1. Statute of Limitations

2. The Association-in-Fact Enterprises

3. The *Reves* Test as Applied  [*6]  to Chubb the Enterprise

4. Pattern of Racketeering Activity

5. RICO Conspiracy Claim

6. State Law Claims

G. *Frank Klein & Carnival Creations (95 Complaint)*

1. Pattern of Racketeering Activity

2. The *Reves* Test

3. RICO Conspiracy Claim

4. RICO Statute of Limitations

5. Jurisdiction over State Law Claims

6. State Law Claims

H. *Rich & Simon (95 Complaint)*

1. Enterprise Allegations

2. The *Reves* Test

3. Pattern Requirement

4. Statute of Limitations

a. *RICO Claims*

b. *State Law Claims*

5. Intracorporate Conspiracy Doctrine

6. Fiduciary Duty

I. *Louis Rosenkranz (95 Complaint)*

1.   The *Reves* Test and the Pattern Requirement

2. RICO Conspiracy

3. Statute of Limitations

4. Jurisdiction Over State Law Claims

5. Statute of Limitations

6. Punitive Damages

J. *Alan Rosenkranz (95 Complaint)*

1. RICO Enterprise

2. Pattern of Racketeering Activity

3. RICO Statute of Limitations

4. State Law Claims

K. *Steven Chernoff (95 Complaint)*

1. Pattern of Racketeering Activity

2. Particularity  [*7]  of Fraud Claims

3. RICO Enterprise

4. The *Reves* Test

5. RICO Conspiracy Claim

6. State Law Claims

1998 U.S. Dist. LEXIS 22542, *7

7. Punitive Damages

L. *Jerry Clair, Stanley Sloan, Venus Trimming & Binding, Inc. (95 Complaint)*

   1. Pattern of Racketeering

   2. Particularity of RICO Fraud Claims

   3. The *Reves* Test

   4. RICO Conspiracy Claim

   5. Statute of Limitations

   6. Punitive Damages

   7. State Law Claims

   a. *Particularity of Common Law Fraud Claims*

   b. *Breach of Fiduciary Duty Claim*

   c. *Conversion Claim*

   d. *Jurisdiction*

M. *Julius Templer & Elegant Knitted Headwear, Inc. (95 Complaint)*

   1. Pattern of Racketeering Activity

   2. The *Reves* Test

   3. RICO Conspiracy

   4. Statute of Limitations

   5. Punitive Damages

   6. State Law Claims

Background

These cases involve a number of alleged RICO enterprises and conspiracies designed to systematically defraud the plaintiffs Chubb & Son Inc., Federal Insurance Company, Vigilant Insurance Company, Sea Insurance Company of America and Great Northern Insurance Company through a pattern of racketeering activity. As a result of criminal **[*8]** actions in which many of the named defendants entered guilty pleas, there is no dispute that many of the defendants fabricated and inflated insurance claims and that the plaintiffs lost a great deal of money as a result of blatant fraud. The parties do dispute, however, whether

plaintiffs' factual allegations are sufficient to establish that those committing this fraud were part of RICO enterprises and conspiracies. This dispute is at the heart of defendants' motions to dismiss.

The moving defendants in the above-entitled actions seek dismissal based on a variety of legal grounds. For the sake of clarity, the Court first will outline the applicable law in this case, taking into consideration the legal arguments advanced by the parties. The Court will then apply that law to each of the defendants' motions. Before turning to the applicable law, however, a brief discussion of the roles played by the defendants in the insurance industry is warranted.

Defining the Roles of the Defendants

The defendants in this action fall into five main categories, which are outlined below.

Policy Holders

Many of the defendants in this action are individuals or businesses who held policies **[*9]** with the plaintiffs. As noted above, some of these policy holders have pleaded guilty to mail fraud for either inflating or fabricating claims under their policies. This group includes both commercial insureds and homeowner insureds.

Claims Representatives

"Claims Representatives" are employees of plaintiff Chubb & Son Inc. hired "to ensure that Chubb pays the appropriate amount for claims submitted under [Chubb & Son Inc.'s] policies." (92 Compl. P 4.) [2] Claims Representatives, when acting in their routine capacity, are responsible for "inspecting the damage that forms the basis of a claim or claims and calculating the amounts that should be paid to insureds for losses that the insureds actually incurred." Id.

Public Adjusters

_____

[2] All references to the "92 Compl." are to the Second Amended Complaint in *Chubb & Son Inc., et al. v. Michael Kelleher, et al., 1998 U.S. Dist. LEXIS 22542, 92* CV 4484, *whereas references* to the "95 Compl." are to the Complaint in *Chubb & Son Inc., et al. v. James Kelleher, et al., 1998 U.S. Dist. LEXIS 22542, 95* CV 951.

**[*10]**  As the plaintiffs explain in their 92 Complaint:

> Public Adjusters are individuals and entities licensed in some states in which they operate, including New York, to assist insureds in processing claims under insurance policies. Public Adjusters perform such services as preparing and presenting evidence in support of claims and negotiating with Claims Representatives over the amount insureds are to be paid. In return for such services, Public Adjusters typically charge insureds a percentage of the payment they receive from their insurers.

(Id. P 5.)

*Salvors*

Plaintiffs, through their Claims Representatives, hire "Salvors" to assist with commercial claims. Salvors are independent contractors hired to inspect damaged inventory, "appraise the damaged goods, and determine the extent to which their value has been impaired by the event giving rise to the claim." (Id. P 6.) Salvors also recommend how damaged goods should be disposed. In some instances, Salvors sell the damaged goods, retaining a commission or a fee. "The objective is to choose the method that will yield the maximum value for the goods, and, conversely, to minimize the extent of the loss paid by **[*11]** the insurer." Id.

*Experts*

When dealing with complex commercial claims, Claims Representatives are authorized to retain "Experts" to help determine the extent of a claimed loss. These Experts include engineering consultants who "appraise the extent of the loss and the cost of repairing . . . damaged equipment," (95 Compl. P 7), as well as accountants who help ascertain the extent of claimed business interruption damages, (see id. P 8).

Discussion

I. THE RICO CLAIMS

A. *Standard for a Motion to Dismiss*

Defendants move to dismiss the complaints against them for failure to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)*. HN1[↑] In deciding a *Rule 12(b)(6)* motion, the Court's function is to determine whether the complaint is legally sufficient. See *Festa v. Local 3 Int'l Bhd. Of Elec. Workers, 905 F.2d 35, 37 (2d Cir. 1990)*. A motion to dismiss must be denied "unless it appears beyond a reasonable doubt that the plaintiff can *prove no* set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. Looking at plaintiffs' complaints, the **[*12]** Court must accept as true the plaintiffs' factual allegations, drawing all reasonable inferences in their favor. See *Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995)*.

B. *Elements of a Civil RICO Cause of Action*

HN2[↑] ] RICO provides a civil cause of action to "any person injured in his business or property by reason of a violation of *Section 1962* of this chapter." *18 U.S.C. § 1964(c)*. Plaintiffs contend that they are entitled to relief based on the defendants' alleged violations of *section 1962(c)* and *section 1962(d)* of RICO.

*Section 1962(c)* provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of, which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*18 U.S.C. § 1962(c)*. *Section 1962(d)* states as follows:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**[*13]** *18 U.S.C. § 1962(d)*.

HN3[↑] ] The Supreme Court has stated that a violation of *§ 1962(c)* requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985)*. The Second Circuit, in turn, has adhered to a seven-part test for a violation of *§ 1962(c)*. That test, which is consistent with the broad framework provided by the Supreme Court, requires that the plaintiff establish the following elements:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983)*.

In the cases at bar, most defendants do not contend that plaintiffs' complaints fail to properly allege "racketeering activity." The RICO statute defines "racketeering activity" to include mail fraud, see *18 U.S.C. § 1961* **[*14]** *(1)(B)*, and most defendants have pleaded guilty to at least one count of mail fraud.

Instead, defendants primarily contend that plaintiffs have failed to properly allege (1) a pattern of racketeering activity, (2) the existence of a definable RICO enterprise, and (3) sufficient participation in the management or operation of a RICO enterprise. Some defendants also argue that the statute of limitations bars the claims against them. The Court now turns to an examination of the law underlying these various arguments, beginning with a consideration of the applicable statute of limitations.

### C. *Statute of Limitations*

A number of the defendants argue that plaintiffs' RICO claims against them are time-barred. **HN4**[⬆] RICO causes of action are governed by a four-year statute of limitations. See *Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987)*. Under the so-called rule of "separate accrual," RICO claims accrue for statute of limitations purposes each time a potential plaintiff suffers an injury. See *Bankers Trust Co. V. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988)*. In the Second Circuit, the **[*15]** rule of separate accrual dictates that "each time a plaintiff suffers an injury caused by a violation of *18 U.S.C. 1962*, a cause of action to recover damages based on the injury accrues to plaintiff at the time he discovered or should have discovered the injury." Id.

Defendants contend that the statute of limitations for this case began running on the dates that Chubb & Son Inc. made the alleged inflated payments. Some defendants specifically argue that plaintiffs "should have discovered" their injuries when Chubb & Son Inc. made these payments because the amount of the claims put them on notice of the possibility of fraud. Plaintiffs dispute that they "should have discovered" their injuries at some time more than four years before they commenced their suit. Thus, a central issue in evaluating defendants' statute of limitations arguments concerns when plaintiffs "should have discovered" the RICO injuries that are the subject of this action. [3]

**[*16]** **HN5**[⬆] In the context of securities fraud, the Second Circuit has applied an objective discovery rule to determine when a plaintiff "should have discovered" a fraud for purposes of triggering the applicable statute of limitations. See *Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983)* ("The test as to when fraud should with reasonable diligence have been discovered is an objective one."). Specifically, a plaintiff "will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable [person] of ordinary intelligence would have discovered the existence of the fraud." *Dodds v. Cigna Secs., Inc., 12 F.3d 346, 350 (2d Cir. 1993)* (citing *Armstrong, 699 F.2d at 88*). This rule also imposes a "duty of inquiry," under which knowledge of a fraud will be imputed to the plaintiff if the plaintiff fails to inquire into circumstances that "would suggest to [a person] of ordinary intelligence the probability that she has been defrauded." Id.

**HN6**[⬆] District courts in this Circuit have applied this objective discovery rule in RICO cases and have specified that "on a motion to dismiss, a RICO claim will be time-barred **[*17]** if the facts alleged in the complaint indicate that the plaintiff, with reasonable diligence, should have uncovered the alleged fraud prior to the limitations period." *Butala v. Agashiwala, 916 F. Supp. 314, 318 (S.D.N.Y. 1996)*; see also, e.g., *Congregion de la Mision Provincia de Venezuela v. Curi, 978 F. Supp. 435, 1997 WL 570692*, at *4 (E.D.N.Y. 1997) (discussing and applying objective discovery rule in RICO action); *In re Integrated Resources Real Estate Limited Partnerships Secs. Litig. 850 F. Supp. 1105, 1117-18 (S.D.N.Y. 1994)* (same); *Griffin v. McNiff, 744 F. Supp. 1237, 1255-56 (S.D.N.Y. 1990)*, aff'd, *996 F.2d 303 (2d Cir. 1993)*(same).

Application of this rule in this case involves a two-part inquiry. First, the Court must determine whether the

---

[3] The Court notes that plaintiffs have carefully avoided alleging a specific date of discovery in either the 92 Complaint or the 95 Complaint. Rather, in their Memorandum of Law, plaintiffs suggest that the Court should infer that they discovered their injuries in 1992 because (1) Chubb & Son Inc. continued to employ three of the defendant Claims Representatives until that year, and (2) the first criminal indictments were unsealed in 1992. Even if the Court were to make such an inference, however, defendants will nonetheless prevail on their limitations arguments if plaintiffs should have discovered their injuries at some point more than four years before the commencement of the present actions.

1998 U.S. Dist. LEXIS 22542, *17

facts alleged in the complaint show that plaintiffs had inquiry notice of the fraud. See *Butala, 916 F. Supp. at 318*. The Court may find that plaintiffs had inquiry notice of the alleged frauds if the allegations in the complaint establish that plaintiffs were confronted with "clear evidence contradicting representations made **[*18]** to them." Curi, 1997 WL 570692, at *5. This evidence must relate directly to the alleged fraudulent activity of the defendant at issue. See *id. at *6*. If the information is so-related, "[a] plaintiff need not have full knowledge of the fraud to be put on notice; mere awareness of the general nature of the fraudulent scheme is enough." Id. at *4; see also *In re Merrill Lynch Limited Partnerships Litig., 7 F. Supp. 2d 256, 1997 WL 529010*, at *10 (S.D.N.Y. 1997). Second, if plaintiffs had such inquiry notice, the Court must consider whether they responded with reasonable diligence. See *Butala, 916 F. Supp. at 318*.

Plaintiffs have argued, however, that the Court cannot determine when plaintiffs discovered or should have discovered their injuries in this case in the context of a motion to dismiss. According to plaintiffs, defendants' position that plaintiffs "should have discovered" their injuries at some point more than four years before they commenced suit is unavailing because defendants' actions were concealed by their very nature. In support of this argument, plaintiffs cite case law concerning the equitable tolling **[*19]** doctrine of fraudulent concealment. Thus, although they do not clearly articulate their legal theory, plaintiffs appear to be asserting that regardless of when the statute of limitations accrued as to their various injuries, it was subsequently tolled by defendants' fraudulent concealment until some point within the four-year period before they commenced the relevant action.

*HN7*[↑] Under RICO, "the standard tolling exceptions apply" to the rule of separate accrual, *Bankers Trust Co., 859 F.2d at 1105*, including the doctrine of fraudulent concealment upon which plaintiffs rely, see id. (citing *New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1084 (2d Cir. 1988))*. Under this doctrine, the statute of limitations is tolled if a plaintiff establishes the following three elements: (1) the defendant fraudulently concealed his actions from the plaintiff, (2) this concealment prevented the plaintiff's discovery of the claim until some point within four years of the commencement of the action, and (3) the plaintiff exhibited due diligence in pursuing discovery of the claim. *Hendrickson Bros., Inc., 840 F.2d at 1083*; see also *Butala, 916 F. Supp. at 319* **[*20]** (applying three-part test in consideration of motion to dismiss RICO

action); In re Merrill Lynch Limited Partnership Litig., 1997 WL 529010, at *20-21 (same). The Supreme Court recently held that the due diligence requirement is a necessary component of fraudulent concealment in civil RICO claims, stating that "a plaintiff who is not reasonably diligent in trying to discover his civil RICO cause of action may not rely upon "fraudulent concealment" to toll the limitations period." *Klehr v. A.O. Smith Corp., 521 U.S. 179, 117 S. Ct. 1984, 1987, 138 L. Ed. 2d 373 (1997)*.

In addition, *HN8*[↑] as "fraudulent concealment claims come within the ambit of *Rule 9(b)*" of the Federal Rules of Civil Procedure, *Moll v. U.S. Life Title Ins. Co., 700 F. Supp. 1284, 1289 (S.D.N.Y. 1988)*, a plaintiff must plead with particularity all three elements of fraudulent concealment for the doctrine to toll the statute of limitations on a motion to dismiss. See *Butala, 916 F. Supp. at 319*; *Griffin, 744 F. Supp. at 1256*. The Second Circuit has recognized that such a pleading must include "distinct averments as to the time **[*21]** when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the Court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made." *Armstrong, 699 F.2d at 89* (internal quotations omitted). Finally, a plaintiff must plead fraudulent concealment as to each individual defendant and specify which defendant committed the alleged acts of concealment. See *O'Brien v. National Property Analysts Partners, 719 F. Supp. 222, 232 (S.D.N.Y. 1989)* ("Allegations that other defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against all defendants."); see also *Bingham v. Zolt, 683 F. Supp. 965, 975 (S.D.N.Y. 1988)*.

A review of the 92 and 95 Complaints reveals that the Court need not delve into an involved analysis of whether the plaintiffs have sufficiently alleged that each of the defendants asserting the statute of limitations defense fraudulently concealed their actions because plaintiffs clearly have not adequately pled the second and third elements of fraudulent concealment. As noted above, plaintiffs have **[*22]** not specifically alleged when they discovered their alleged injuries. [4] Nor have

_____

[4] The closest plaintiffs come to asserting a date of discovery in the 95 Complaint is in their statement that Claims Representative Nicolas Addesa "continued to facilitate fraudulent claims until the scheme began to unravel in 1992." See 95 Compl. P 38.)

they explained how they came to know of the defendants' purported fraudulent activity. Consequently, they have failed to plead with particularity that the defendants' fraudulent concealment prevented them from discovering the frauds until some point within the limitations period. Additionally, plaintiffs have not alleged any facts suggesting that they exercised due diligence in discovering their injuries.

Consequently, in evaluating the statute of limitations arguments of particular defendants below, the Court's analysis will focus solely on the question of whether the facts alleged in the complaint establish (1) that plaintiffs had inquiry notice that they had been injured **[*23]** by a fraud, and (2) if they had such notice, that they exercised reasonable diligence in uncovering that fraud.

### D. *Pattern of Racketeering*

**HN9**[↑] To successfully plead a civil RICO claim, plaintiffs must allege a "pattern of racketeering activity." *18 U.S.C. § 1962(c)*; *Moss, 719 F.2d at 17*. The pattern requirement is designed to ensure that the RICO statute is not applied to "isolated or sporadic criminal acts." *Cosmos Forms Ltd. v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997)*; see also *H.J Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989)* (reviewing legislative history indicating that "[a] pattern is not formed by sporadic activity" (internal quotations omitted)).

By the terms of the RICO statute, a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *18 U.S.C. § 1961(5)*. [5] The Supreme Court has noted, **[*24]** however, that *§ 1961(5)* does not define a pattern of racketeering activity so much as it "state[s] a minimum necessary condition for the existence of such a pattern." *H.J. Inc., 492 U.S. at 237*; see also *Sedima, S.P.R.L., 473 U.S. at 496 n.14* ("While two acts are necessary, they may not be sufficient."). Proof of the requisite pattern requires an additional showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc., 492 U.S. at 239*.

Thus, to satisfy the "pattern of racketeering activity" element of civil RICO, plaintiffs must plead and prove that the predicate acts they allege (1) are related and (2) either show continuity or pose a threat of continuity. Defendants argue the plaintiffs have not met this standard. As these elements of the pattern requirement **[*25]** are distinct, the Court will address each separately.

### 1. Relatedness

Two moving defendants, James Kelleher and Prime Decisions, specifically argue that the allegedly fraudulent claims outlined in plaintiffs' complaints are unrelated as pleaded. (See J. Kelleher Mem. Supp. Mot. Dismiss at 9.) **HN11**[↑] The Supreme Court has held that the relatedness requirement is satisfied if the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id. at 240* (internal quotations omitted); see also *Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994)*. The Second Circuit, in turn, has directed the "relatedness" of predicate acts may be evidenced by their temporal proximity, repetition, common goal and similar methodology. See *Cosmos Forms Ltd., 113 F.3d at 310*; Azrielli; *21 F.3d at 520*; *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc., 879 F.2d 10, 16 (2d Cir. 1989)*; *United States v. Indelicato, 865 F.2d 1370, 1382 (2d Cir. 1989)* (en **[*26]** banc).

On a motion to dismiss, "the question that must always be answered . . . is whether a complaint adequately alleges facts from which it may be inferred that the predicate acts are interrelated, using the above factors as indications of relatedness." *Procter & Gamble Co., 879 F.2d at 17*. Whether plaintiffs have met this burden with regard to James Kelleher and Prime Decisions will be discussed in the context of their motion.

### 2. Continuity

As noted above, **HN12**[↑] to satisfy the "pattern of racketeering activity" element of civil RICO, plaintiffs must not only plead and prove that the predicate acts they allege are related, but also that they demonstrate the requisite continuity or threat of continuity. See *H.J. Inc., 492 U.S. at 240*. On this point, the Supreme Court has explained that "'continuity' is both a closed- and open-ended concept." *Id. at 241*. Closed-ended continuity is established upon proof of repeated

---

[5] As noted earlier, **HN10**[↑] "racketeering activity" includes mail fraud and wire fraud. *18 U.S.C. § 1961(1)(B)*.

predicate acts over a "substantial" period of time, i.e., some period of time exceeding weeks or months. See *id. at 242*. Open-ended continuity, on the other hand, is demonstrated by predicate acts that **[\*27]** present a threat of repetition. See *id. at 241*.

The Second Circuit Court of Appeals provided additional guidance on the proof necessary to establish both closed- and open-ended continuity in *GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463 (2d Cir. 1995)*, cert. denied, 518 U.S. 1017, 116 S. Ct. 2547, 135 L. Ed. 2d 1067 (1996). *HN13*[⬆] The assessment of whether a plaintiff has established closed-ended continuity must give considerable weight to the "somewhat mechanistic" evaluation of the duration of the alleged activities. *Id. at 468*. The GICC Capital Corp. opinion suggests that a duration of at least two years may be required. See *id. at 467* (noting that Second Circuit has found closed-ended continuity in only two cases; one involving acts which occurred over eight years and one involving predicates which spanned two years). The GICC Capital Corp. court, however, identified additional nondispositive factors to assist courts in determining whether closed-ended continuity exists. In addition to the period of time over which the predicates occurred, these factors include "the **[\*28]** number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." Id.

*HN14*[⬆] As for open-ended continuity determinations, the GICC Capital Corp. opinion provides the following direction:

> Our cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed. Thus, an inherently unlawful act performed at the behest of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity. Where the nature of conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other external factors.

*Id. at 466* (internal citations omitted). The assessment of whether a threat of continuity exist is necessarily a fact-bound, contextual inquiry. See *United States v. Aulicino, 44 F.3d 1102, 1113 (2d Cir. 1995)* (noting courts must "determine continuity with reference to the specific facts of each case"). Specifically, a court must consider the factual allegations **[\*29]** concerning (1) the

nature of the enterprise, (2) the nature of the acts themselves and (3) other external factors.

The case law informing the GICC Capital Corp. court's discussion of open-ended continuity provides additional insight into how this contextual inquiry is to be conducted. Turning first to the nature of the enterprise, the Court of Appeals has suggested that *HN15*[⬆] an enterprise's affiliation with organized crime would demonstrate a threat of continued criminal activity. See *Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir. 1989)* (noting that if enterprise is not affiliated with organized crime, "the nature of the enterprise does not of itself suggest that racketeering acts will continue"); *Indelicato, 865 F.2d at 1384-85* (finding threat of continuity in three virtually simultaneous murders committed by participant of organized crime activity). Although the alleged enterprises in this case lack such an affiliation, the nature of a "legitimate" enterprise may nonetheless support a finding of a threat of continuity if it regularly engages in illegal activities. See *H.J. Inc., 492 U.S. at 243* ("The continuity requirement **[\*30]** is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . ."); *United States v. Khan, 53 F.3d 507, 515 (2d Cir. 1995)* (finding threat of continuity based on clinics' regular practice of defrauding Medicaid even though individual doctor only worked at clinics for nine weeks).

"Inherently unlawful" predicate acts also support a finding of the requisite threat of continuity. See *Aulicino, 44 F.3d at 1111-12*; *United States v. Simmons, 923 F.2d 934, 951 (2d Cir. 1991)*. In Aulicino, the Court of Appeals elaborated on the nature and import of inherently unlawful acts as follows:

> In cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering **[\*31]** activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods.

1998 U.S. Dist. LEXIS 22542, *31

*Aulicino, 44 F.3d at 1111*.

Although the precise parameters of "inherently unlawful activity" are somewhat difficult to discern under this articulation, the frauds allegedly committed in submitting insurance claims in this case do not appear to fall in that category. See *Simmons, 923 F.2d at 951* (finding that three murders committed to maintain discipline within a narcotics trafficking enterprise posed the requisite threat of continuity); *Aulicino, 44 F.3d at 1113* (holding that multiple kidnapings and attempted kidnapings carried out to obtain million dollar ransom payments posed threat of continuity). Thus, the nature of the acts alleged in this case does not, in and of itself, suggest a threat of continuity.

However, as noted above, the GICC Capital Corp. decision also instructs that a court may consider "other external factors" in determining whether predicate acts present a **[*32]** threat of continued criminal activity. In this regard, a court may look to conduct of the defendant beyond the predicate acts alleged. For example, in *United States v. Kaplan, 886 F.2d 536 (2d Cir. 1989)*, the Court of Appeals faced the question of whether the defendant's two acts of bribery posed the requisite threat of continuity. The court ultimately found such a threat based upon other uncharged acts in the record that "amplified the full character of the predicate acts" and demonstrated the defendant's "continuing intent and ability to participate in various ways in the corruption of the enterprise." *Id. at 543*.

The Court also took external factors into consideration in *Beauford v. Helmsley, 865 F.2d 1386* (2d Cir.) (en banc), vacated and remanded, *492 U.S. 914*, original decision adhered to, *893 F.2d 1433 (2d Cir. 1989)*. Beauford involved purported frauds committed in the conversion of an apartment building to condominiums. See *865 F.2d at 1388*. Even though the frauds all arose from a single conversion, the Court found sufficient allegations in the complaint to support a finding **[*33]** that the predicate acts presented a threat of continuity. See *id. at 1390-92*. Specifically, the Court of Appeals noted that 8000 mailings of fraudulent material hardly could be considered isolated or sporadic criminal activity and emphasized that several amendments had been made to the original offering plan that perpetuated the misrepresentations. See *id. at 1392*. Moreover, the complaint indicated that additional fraudulent mailings were to have been made in the future prior to the commencement of the lawsuit. See id.

Thus, Second Circuit precedent clearly establishes that

the determination of whether a given defendant's predicate acts posed a threat of continued criminal activity is a contextual one which requires that the Court evaluate the factual allegations concerning the nature of the enterprise, the nature of the predicates themselves and other factual circumstances relevant to the issue of continuity. In conducting this inquiry with respect to each of the moving defendants, however, the Court remains mindful that this approach also has limits. In particular, **HN16**[↑] a defendant is not be held accountable for predicate acts committed by others. **[*34]** [6] See *Indelicato, 865 F.2d at 1384*. Moreover, a plaintiff "[may] not artificially fragment[] a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)*. The above-noted standards concerning both closed- and open-ended continuity are applied to each moving defendant below.

**[*35]** E. *Enterprise*

Of the legal questions presented in these motions, the questions surrounding the concept of "enterprise" represent some of the most widely contested points. Here, there are two primary issues. First, defendants argue that Chubb has failed to properly plead the existence of the association-in-fact enterprises in Counts One, Two and Three of their 92 Complaint and Counts One and Two of their 95 Complaint. Second, several defendants contend that plaintiffs cannot allege that "Chubb"--defined to include all of the plaintiff companies--constitutes a RICO enterprise.

---

[6] Plaintiffs argue that the acts of codefendants should inform the evaluation of open-ended continuity based on conspiracy principles. Plaintiffs support this assertion by citing a number of cases, all of which stand for the proposition that co-conspirators are liable for all actions foreseeably taken in furtherance of the conspiracy.

**HN17**[↑] The Court rejects plaintiffs' application of conspiracy law to RICO's pattern requirement. Indeed, the Second Circuit, in *United States v. Persico, 832 F.2d 705 (2d Cir. 1987)*, clearly explained that the elements of a substantive RICO violation must be satisfied as to each defendant, rather than as to the enterprise as a whole:

> The focus of *Section 1962(c)* is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by *Section 1962(d)*. We reject the . . . attempt to analyze *Section 1962(c)* as if it were a second RICO conspiracy statute.

*Id. at 714*.

HN18[ ] RICO specifies that the term "enterprise" includes:

> any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

18 U.S.C. § 1961(4). Although plaintiffs allege both legal entities and associations-in-fact as enterprises, defendants' arguments are directed almost exclusively to the alleged association-in-fact enterprises.

HN19[ ] The Supreme Court has explained that an association-in-fact enterprises is "a group of persons associated together for a common purpose [*36] of engaging in a course of conduct," the existence of which is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981). The Second Circuit Court of Appeals, in turn, has observed that the identification and proof of an association-in-fact enterprise often turns on a consideration of "what it does, rather than by abstract analysis of its structure." United States v. Coonan, 938 F.2d 1553, 1559 (2d Cir. 1991) (internal quotations omitted). Based on this observation, the Court of Appeals has sanctioned reliance on proof of various racketeering acts to establish the existence of an association-in-fact enterprise. See id. at 1560; see also, Hansel ' N Gretel Brand, Inc. v. Savitsky, 1997 U.S. Dist. LEXIS 13324, No. 94 Civ. 4027, 1997 WL 543088, at *2 (S.D.N.Y. Sept, 3, 1997) (noting Second Circuit does not require that proof of enterprise and pattern be distinct); Giuliano v. Everything Yogurt, Inc., 819 F. Supp. 240, 247 (E.D.N.Y. 1993) ("This Circuit has [*37] held that an association-in-fact enterprise may be based on a common illicit purpose as evidenced by the alleged racketeering acts without proof of a formalistic, organizational structure."). A court must remain cognizant, however, the an enterprise "is an entity separate and apart form the pattern of activity in which it engages [the existence of which] at all times remains a separate element which must be proved." Turkette, 452 U.S. at 583.

Plaintiffs' 92 Complaint specifically alleges three association-in-fact enterprises, (see 92 Compl. PP 345, 350, 355), while plaintiffs' 95 Complaint contains two, (see 95 Compl. PP 187, 192). In its October Opinion addressing Michael Kelleher and Kim Luttinger's motion to dismiss, the Court found that plaintiffs adequately alleged the association-in-fact enterprises in Counts

One, Two and Three of their 92 Complaint. (See October Opinion at 18-26.) The parties are referred to that decision for the reasoning underlying those findings. The Court further finds the under the rational articulated in its October Opinion, plaintiffs also have adequately pled the association-in-fact enterprises in Counts One and Two of [*38] their 95 Complaint.

Moreover, as noted above, in Count Five of both the 92 and 95 Complaints, plaintiffs assert that Chubb is an enterprise. (See 92 Compl. P 365; 95 Compl. P 207.) Although the Complaints do not specify what type of enterprise plaintiffs consider Chubb to be, the Court has previously construed Count Five of the 92 Complaint to allege that Chubb, defined to include the five plaintiff insurance companies, constitutes an association-in-fact enterprise. (See October Opinion at 26-29.) The Court also found that as such, plaintiffs adequately pleaded an enterprise in Count Five of the 92 Complaint. The Court now reaches the same conclusion with regard to the alleged enterprise in Count Five of the 95 Complaint.

Although they do not alter the Court's conclusion on this issue, the Court will briefly address two arguments made by the defendants with regard to the association-in-fact enterprises that were not addressed in the October Opinion. First, in a November 18, 1997 letter, defendants All American Poly Corp. and George Pscherhofer argue that the Court should follow the recent opinion in Hansel ' N Gretel Brand, Inc. v. Savitsky, No. 94 Civ. 4027, 1997 WL 543088 (S.D.N.Y. Sept. 3, 1997) and find that plaintiffs have not adequately pleaded the association-in-fact enterprises in the 92 Complaint. In that case, the court refused to find that the plaintiff adequately alleged an association-in-fact enterprises in the 92 Complaint. In that case, the court refused to find that the plaintiff adequately alleged an association-in-fact enterprise when two of the four alleged participants had no conneciton to one another, did not depend on the other's cooperation for the success of their respective operations and were unaware the their action formed part of a larger scheme. See id. at *4-5. In the instant actions, in contrast, plaintiffs have alleged that the successful operation of the scheme required the close cooperation among all of the participants in the enterprises. (See e.g., 92 Compl. P 9; 95 Compl. PP10, 17.) Moreover, with respect to insureds like All American Poly Corp., plaintiffs claim that knowledge of the "larger scheme" was the inducement for and essential to their participation. (See 92 Compl. P 10; 95 Compl. P 18.) Accordingly, the allegations before this Court are distinguishable from these presented in Hansel 'N Gretal Brand and support

1998 U.S. Dist. LEXIS 22542, *38

the finding articulated above.

Second, defendants contend that Chubb is not a properly pleaded enterprise because it cannot be both the victim of the racketeering activity and the RICO enterprise. This argument is based primarily on the Supreme Court's decision in *National Organization of Women, Inc. v. Scheidler, 510 U.S. 249, 127 L. Ed. 2d 99, 114 S. Ct. 798 (1994).* **[*39]** The question before the Court in Scheidler was whether a RICO enterprise must have an economic motive. In analyzing this issue, however, the Court commented on the nature of RICO enterprises, noting that "the 'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." *Id. at 259.*

Before the Scheidler decision, courts in this Circuit and others had recognized that an entity could be both the enterprise and the victim of the racketeering activity. See *Sun Savings and Loan Assoc. v. Dierdorff, 825 F.2d 187, 194-95 (9th Cir. 1987)*; *United States v. Provenzano, 688 F.2d 194, 200 (3d Cir 1982)*; *United States v. Kovic, 684 F.2d 512, 516-17 (7th Cir. 1982)*; *Com-Tech Assocs. v. Computer Assocs. Int'l, 753 F. Supp. 1078, 1088-89 (E.D.N.Y. 1990)*, aff'd, *938 F.2d 1574 (2d Cir. 1991)*. After Schiedler, however, the courts that have considered the question have reached differing conclusions.

The Third Circuit, in interpreting Scheidler, has asserted that "a victim corporation 'drained of its own money' by pilfering officers and employees could not reasonable be viewed as the enterprise *through* which employee persons carried out their racketeering activity." *Jaguar Cars, Inc, v. Royal Oaks Motor Car Co., 46 F.3d 258, 267 (3d Cir. 1995)*. The Seventh Circuit Court of Appeals considered the Jaguar Cars decision in *LaSalle Bank Lake View v. Seguban, 54 F.3d 387 (7th Cir. 1995)*, and suggested in dicta that after Scheidler, the RICO enterprise may not also be the victim of the racketeering activity. See *id. at 393*.

On remand, however, the district court in *LaSalle Bank Lake View v. Seguban, 937 F. Supp. 1309 (N.D. Ill. 1996)*, expressly held that a corporation may allege that it is both a RICO enterprise and a RICO victim. See *id. at 1322-24*. Similarly, without discussing Scheidler, the First Circuit Court of Appeals held that an entity harmed by purported racketeering activity could constitute the RICO enterprise. See *Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1558 (1st Cir. 1994)*. Finally, although the Second Circuit Court of Appeals has not

directly addressed the issue, in Hansel 'N Gretel Brand, discussed supra, the court stated that an entity could be both the victim of the alleged racketeering activity **[*40]** and the enterprise because "Scheidler was not intended to prescribe a blanket rule." Hansel ' N Gretel Brand, 1997 WL 543088, at *3; see also *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)* (without mentioning Scheidler, noting that *section 1962(c)* recognizes that "the enterprise itself is often a passive instrument or victim of the racketeering activity" (quoting *Bennett v. U.S. Trust Co., 770 F.2d 308, 315 (2d Cir. 1985))*.

**HN20**[⬆] Recognizing that pre-Scheidler decisions in this Circuit and others state that a legal entity could be both a RICO enterprise and a victim of the alleged racketeering activity, this Court agrees with those decisions that have found that Scheidler does not alter this position of law. The Scheidler Court did not specifically address the issue of whether an entity could be both an enterprise and a victim. The comment noted above, therefore, cannot be read as a holding on this question. Moreover, the Court's analysis of RICO enterprise, even if it were read to be holding, does not stand for the proposition that, as a matter of law, a *§ 1962(c)* enterprise cannot **[*41]** also be a victim. At most, the Court suggested that an enterprise is "generally" not a victim. This implies that, at times, a RICO enterprise can also be the victim of the RICO violation.

Indeed, as the district court noted in LaSalle Bank, such a view comports with "the broad purpose and language of RICO." *LaSalle Bank, 937 F. Supp. 1309 at 1324*; see also *Com-Tech Assocs., 753 F. Supp. at 1089* (holding that allowing plaintiff partnership to constitute RICO enterprise was consistent with language of *section 1962(c)* and policy behind that section of preventing racketeering activity from infiltrating legitimate entities). Thus, this argument does not alter the Court's conclusion that plaintiffs have adequately alleged their association-in-fact enterprises.

## F. *The Reves Operation or Management Test*

**HN21**[⬆] The RICO statute mandates that, to be liable, an alleged racketeer must "participate, directly or indirectly, in the conduct of such enterprise's affairs." *18 U.S.C. § 1962(c)*. Many defendants, particularly the homeowner and commercial insureds, contend plaintiffs have failed to allege that they operated or managed any **[*42]** enterprise.

The Supreme Court has held that "'to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young, 507 U.S. 170, 185, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993)* (citation omitted). An enterprise is operated and managed by upper management, "lower rung participants in the enterprise who are under the direction of upper management" and even others outside but associated with the enterprise "who exert control over it as, for example, by bribery." *Id. at 184*. In adopting this "operation or management" test, the Court rejected the more stringent position that a RICO defendant must have had "significant" control over the enterprise to violate *§ 1962(c)*, in favor of the view that such a defendant must either have directed or have had "some part in directing" the enterprise's affairs. *Id. at 179* & n.4.

The defendants who argue most vigorously that plaintiffs' allegations do not satisfy the Reves test would most accurately be characterized as either (1) lower-rung participants in the alleged [*43] enterprises or (2) individuals associated with the alleged enterprises. The Court will consider the argument raised by these two types of participants separately.

Several defendants who appear to represent lower-rung participants in the alleged enterprises argue that their alleged involvement in the enterprises does not satisfy the Reves test. In Reves, the Court did not reach the issue of "how far *§ 1962(c)* extends down the ladder of operation." *Id. at 184 n.9*. The Second Circuit has observed, however, that "Reves makes it clear that a defendant can act under the direction of superiors in a RICO enterprise and still 'participate' in the operation of the enterprise within the meaning of *§ 1962(c)*." *United States v. Wong, 40 F.3d 1347, 1373-74 (2d Cir. 1994)*. Nevertheless, the Court of Appeals also has stated that "the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of *§ 1962(c)*." *United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994)*. The difficult task is identifying that something "more" that [*44] makes a lower-level participant liable under RICO as one who operates or manages the enterprise.

Several principles can be gleaned from Second Circuit precedent which provide guidance for this Court's application of the Reves test to the lower-level participants in the alleged enterprises. The cases establish that **HN22**[↑] for a lower-level participant to

operate or manage an enterprise, that participant must actually be on the "management chain" or "ladder of operation." See *Viola, 35 F.3d at 43* (finding defendant not liable under RICO as one who managed or controlled the enterprise because he "was not on the ladder [of operation] at all, but rather . . . was sweeping up the floor underneath it"). Moreover, the lower-level participant acting at the behest of upper-level actors operates or controls an enterprise within the meaning of Reves if the participant (1) is involved in the decisionmaking or management process, see *United States v. Miller, 116 F.3d 641, 673 (2d Cir. 1997)* (finding defendants who had "substantial responsibility for the management of, or discretion in the operation of" enterprise satisfied Reves test); *Azrielli, 21 F.3d at 521-22* [*45] (holding defendant not liable under RICO when plaintiffs offered no proof that defendant participated in management or direction of enterprise); *Viola, 35 F.3d at 43* (noting that defendant not consulted in decisionmaking process and holding that his involvement did not satisfy Reves test); (2) acts with discretion in carrying out orders, see *Miller, 116 F.3d at 673* (citing discretion to act as factor weighing in favor of finding defendant operated or managed enterprise); *Viola, 35 F.3d at 43* (finding that absence of discretion suggested Reves test not satisfied); or (3) provides "substantial assistance" in carrying out the illicit activities of the enterprise, *Napoli v. United States, 45 F.3d 680, 683 (2d Cir. 1995)* (holding that investigators who assisted law firm enterprise in preparing cases involving false witnesses, fabricated evidence and counterfeit claims operated and managed enterprise). Finally, the lower-level actor must act with awareness of the broader enterprise. See id. (finding that defendants who "were thoroughly indoctrinated participants in the criminal activities" of enterprise satisfied [*46] Reves test (internal quotations omitted)); *Viola, 35 F.3d at 42* (citing defendant's apparent lack of knowledge about broader enterprise as factor weighing against finding that he operated or managed enterprise).

As with its discussion of lower-rung RICO participants, the Reves Court did not fully explain how one could be associated with an enterprise and exert control over it in such a way as to satisfy the management and control test. Plaintiffs rely on a case, *Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994)*, that provides some insight on this issue.

In P & B Autobody, the Court was presented with RICO allegations similar to those in this case centering around the submission of false and inflated insurance claims. The appellants in that case argued that they did not

participate in the operation or management of the enterprise under Reves and, therefore, should not have been held liable under RICO. The First Circuit disagreed, explaining that even the insured defendants had met the participation requirement set forth in Reves. In so holding, the P & B Autobody court explained that

> Appraising allegedly [*47] damaged vehicles and investigating, processing, and paying automobile insurance claims are vital parts of Aetna's business. By acting with purpose to cause Aetna to make payments on false claims, appellants were participating in the "operation" of Aetna. . . . Appellants' activities caused Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made. The Court in Reves emphasized that, as in this case, the defendants' "participation" could be "indirect" in the sense that persons with no formal position in the enterprise can be held liable under § 1962(c) for "participating in the conduct of the enterprise's affairs."

Id. at 1559-60 (citations omitted).

Mindful of the Reves Court's observation that someone associated with a RICO enterprise who exerts control over it through bribery meets RICO's operation or management test, this Court finds the P & B Autobody application of this standard persuasive. HN23[⬆] Someone who bribes an upper-level manager of an enterprise to impel criminal behavior that would not otherwise occur certainly plays some part in directing the enterprise's affairs. Although [*48] this part may not be a major one, it may well be sufficient to pass the operation and management test of Reves, depending upon the context of the allegations in question.

The Court remains cognizant, however, that the Supreme Court used the term "control" in the above-noted statement concerning bribery by those "associated with" an enterprise. Courts have found allegations of bribery insufficient to satisfy the Reves test when the factual allegations demonstrate that true "control" of the enterprise resided with the recipients, not the payors, of the bribes. See Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 883-85 (S.D.N.Y. 1997) (holding that law firm that paid kickbacks to enterprise to obtain legal business did not exert sufficient control over enterprise to satisfy Reves test); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, 1996 U.S. Dist. LEXIS 9506, No. 91 Civ. 2923, 1996 WL 383135, at *6-7 (S.D.N.Y. July 9, 1996)

(finding defendant contractors' payment of bribes to enterprise's insiders to induce contract awards didn't satisfy Reves when allegations demonstrated real control resided within insiders). The Court analyzes the [*49] claims asserted against the individual defendant below, in light of the principles discussed above.

1. Aiding and Abetting Liability

In many of their claims, plaintiffs allege that defendants not only managed or operated the alleged enterprises, but also aided and abetted the management or operation of these enterprises. Defendants contend that Reves abolished aiding and abetting liability under § 1962(c) [7] [*51] and that, therefore, these portions of the complaint should be dismissed. In Reves, the Court determined that the term "participate," as used in § 1962(c), had a narrower meaning than aiding and abetting. See Reves, 507 U.S. at 178. The Second Circuit subsequently addressed the issue of aiding and abetting liability in United States v. Viola, 35 F.3d 37 (2d Cir. 1994), and stated that

> under the [Reves] Court's interpretation, HN24[⬆] simply aiding and abetting a violation is not sufficient to trigger liability even though § 1962(c) punishes those who participate "directly or indirectly" in the enterprise's affairs. This is so because "aiding and abetting" liability extends beyond persons who engage, even indirectly, in [*50] a proscribed activity . . . ."

Id. at 40-41 (quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164, 128 L. Ed. 2d 119, 114 S. Ct. 1439 (1994)); see also Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison, 955 F. Supp. 248, 256 (S.D.N.Y. 1997) (holding that individual may not be held liable for aiding and abetting RICO violation); LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1089 (S.D.N.Y. 1996) (same); Rosenheck v. Rieber, 932 F. Supp. 626, 627 n.1 (S.D.N.Y. 1996) (same); Department of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 477 (S.D.N.Y. 1996) (same). The Court therefore dismisses plaintiffs' claims that the defendants aided and abetted

---

[7] Some defendants make the same point by arguing that the Supreme Court's reasoning in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, 511 U.S. 164, 128 L. Ed. 2d 119, 114 S. Ct. 1439 (1994) (holding that there is no aider and abettor liability under § 10 of the Securities and Exchange Act), should be applied to civil RICO by analogy.

the management or operation of a RICO enterprise, or, more generally, the commission of RICO violation. [8]

### G. _Vicarious Liability_

One defendant, M.F. Bank, [9] argues at length that it cannot be held liable under RICO for plaintiffs' damages because it contends that its employees committed fraud without the corporation's knowledge and that, as a result, it should not be held liable for their wrongdoing. More specifically, M.F. Bank argues that it cannot be held vicariously liable under RICO for the wrongdoing of its employees. Plaintiffs acknowledge that vicarious liability "is the principal basis for holding M.F. Bank liable in this case." (Pls.' Mem. Opp. M.F. Bank's Mot. Dismiss at 11.)

  [*52]  Whether an employer may be vicariously liable for alleged RICO violations by its employees has not been definitively resolved in this Circuit. [10] See _In re Ivan F. Boesky Secs. Litig., 36 F.3d 255, 262 (2d Cir. 1994)_ (declining to reach issue of whether respondeat superior liability exists under RICO); _Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 811 n.2 (2d Cir. 1994)_ (same); _State Wide Photocopy v. Tokai Financial Servs., Inc., 909 F. Supp. 137, 142-43 (S.D.N.Y. 1995)_ (citing cases). The courts that have considered the question of vicarious liability under RICO in other districts and circuits have reached differing results. See _Brubaker v. City of Richmond, 943 F.2d 1363, 1379 (4th Cir. 1991)_ (citing cases).

_____

[8] The Court notes that this conclusion does not alter the well-established principle that a defendant may be held liable for committing a predicate act of racketeering activity if he aided and abetted the commission of that act. See _Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1168 (2d Cir. 1993)_ (quoting _McLaughlin v. Anderson, 962 F.2d 187, 192 (2d Cir. 1992)_).

[9] M.F. Bank is a Salvor defendant. Two of M.F. Bank's employees, Joseph Rigney and Kurt Wagner, are also named as defendants in the 92 Complaint.

[10] Prior to Reves, the Second Circuit indicated that in certain circumstances a corporation may be held liable under RICO "'for the conduct of its supervisory employees who had either intentionally disregarded the law or had acted with plain indifference to its requirements.'" _United States v. Paccione, 949 F.2d 1183, 1200 (2d Cir. 1991)_ (quoting _United States v. Demauro, 581 F.2d 50, 54 (2d Cir. 1978)_). As this case predates Reves, however, it does not necessarily resolve the issue presented here.

  [*53]  Although a number of decisions have held that corporations cannot be held vicariously liable for the RICO violations of their employees, _Schofield v. First Commodity Corp., 793 F.2d 28, 32-33 (1st Cir. 1986)_; _First Nat. Bank v. Lustig, 727 F. Supp. 276, 280 (E.D.La. 1989)_; _Rush v. Oppenheimer & Co., Inc., 628 F. Supp. 1188, 1194-95 (S.D.N.Y. 1985)_, these cases do not provide persuasive authority in the context of the complaints at issue here. In each of these cases, the courts dismissed complaints in which the plaintiff impermissibly sought to name the corporate defendant as both the RICO "enterprise" and the RICO "person." Holding a corporation vicariously liable pursuant to a complaint with such a pleading defect, these courts held, was impermissible.

In contrast to the complaints in Schofield, Lustig and Rush, the 92 Complaint does not allege that M.F. Bank is both a RICO enterprise and the RICO person. Indeed, M.F. Bank is not alleged to be an enterprise in either the 92 or the 95 Complaint. Instead, plaintiffs seek to hold M.F. Bank liable as a RICO person for the malfeasance of its employees. The issue here, then, is  [*54]  whether a corporation not alleged to be a RICO enterprise may be held liable for the RICO violations of its employees. M.F. Bank contends that Reves foreclosed such a possibility.

A post-Reves decision from the Eleventh Circuit provides useful guidance on the issue of vicarious liability under RICO. In _Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386_ (11th Cir.), modified on other grounds, _30 F.3d 1347 (11th Cir. 1994)_, the Eleventh Circuit noted that any bar to vicarious liability under RICO "protects only those employers who are also the RICO enterprise for purposes of _§ 1962(c)._" _Id. at 1406_; see also _Brady v. Dairy Fresh Prods. Co., 974 F.2d 1149, 1154 (9th Cir. 1992)_ ("We hold that an employer that is benefitted by its employee's or agent's violations of _section 1962(c)_ may be held liable under the doctrines of respondeat superior and agency when the employer is distinct from the enterprise."). The Cox court then applied its prior holding that "respondeat superior may be applied under _§ 1962(b)_ only to those enterprises that derive some benefit from the RICO violation" and approved the  [*55]  use of general agency principles to determine if a defendant should be vicariously liable for its employee's _§ 1962(c)_ violations. [11] _Cox, 17 F.3d at 1406_ (citing

_____

[11] These principles dictate that a principal will be vicariously liable for an agent's acts if those acts are "(1) related to and

*Quick v. Peoples Bank of Cullman County, 993 F.2d 793, 797-98 (11th Cir. 1993))*.

This position comports with precedents in this circuit. In *Laro, Inc. v. Chase Manhattan Bank, 866 F. Supp. 132 (S.D.N.Y. 1994)*, aff'd without op., *60 F.3d 810 (2d Cir. 1995)*, for instance, the court recognized vicarious liability may be appropriate in civil RICO cases **[*56]** in some situations. See *id. at 140*. The court then relied upon the analysis set forth in *Gruber v. Prudential-Bache Securities, 679 F. Supp. 165 (D. Conn. 1987)*, to determine when such circumstances exist. See *Laro, Inc. v. 866 F. Supp. at 140*.

Recognizing that RICO was designed to protect legitimate corporations against criminal infiltration, the court reasoned in Gruber that

> a corporation may be found vicariously liable under *Section 1962(c)* only where the corporation may fairly be said to be a "central figure" (or "aggressor") in the alleged scheme. What constitutes a "central figure" will vary with the factual circumstances of each case. In order to establish corporate liability under *Section 1962(c)*, however, it is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity. Once knowledge or reckless indifference at this high corporate level has been determined, the court may then consider other factors, among them the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether **[*57]** these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted from the racketeering activity.
> . . . However, the fact that a corporation benefits from an illegal scheme does not in itself establish that the corporation participated as a "central figure" in that scheme.

*Gruber, 679 F. Supp. at 181*.

In Laro, Inc., the court applied this 'central figure' analysis and concluded that the defendant bank could not be held liable for the predicate acts of its loan officers based on the absence of allegations that the

bank "was motivated to aid its employees in [their] scheme" or that the bank in any way benefitted "as a result of its loan officers' actions." *Laro, Inc., 866 F. Supp. at 140*. The court concluded, "since [the bank] was neither a 'central figure' in nor a beneficiary of the alleged fraud, plaintiff's respondeat superior argument fails." Id.

The limiting factors set forth in Gruber's "central figure" test and applied in Laro also have been reflected in other post-Reves decisions from this Circuit that address the question of vicarious **[*58]** liability under RICO. See, e.g., *Burke v. Dowling, 944 F. Supp. 1036, 1069-70 (E.D.N.Y. 1995)* (applying "central figure" test); *Volmar Distributors, Inc. v. New York Post Co., Inc., 899 F. Supp. 1187, 1192 (S.D.N.Y. 1995)* (discussing Gruber and holding that imposition of vicarious liability under RICO requires finding that corporate entity was at fault); *State Wide Photocopy, 909 F. Supp. at 142-43* (denying motion to dismiss on vicarious liability issue when complaint included allegations that "high level agents of [the defendant] authorized the RICO predicate acts"); *De Jesus v. Sears, Roebuck and Co., 1995 U.S. Dist. LEXIS 3556*, No. 93 Civ. 2605, 1995 WL 122726, at *4-5 (S.D.N.Y. March 22, 1995) (applying "central figure" test in case where plaintiffs sought to hold parent corporation liable for actions of its subsidiary), aff'd, *87 F.3d 65*, cert. denied, *519 U.S. 1007, 117 S. Ct. 509, 136 L. Ed. 2d 399 (1996)*. Accordingly, this Court is persuaded that even after Reves, *HN25*[↑] employers may be held vicariously liable under RICO for the malfeasance of their employees under certain circumstances. **[*59]** These circumstances may be identified through the application of the "central figure" test as outlined above.

Turning to the facts set forth in the complaint against M.F. Bank, the Court concludes that M.F. Bank cannot be held vicariously liable under RICO for the acts of its employees. Viewing the 92 Complaint as a whole, the Court recognizes that plaintiffs seek to hold M.F. Bank, a multistate corporation, vicariously liable for the independent wrongdoing of two apparently low- to mid-level employees. Joseph Rigney, an Assistant Branch Manager in the Boonton, New Jersey office of M.F. Bank, (see 92 Compl. P 39), and Kurt Wagner, a Branch Manager in that same office, (see *id. P 40*). The 92 Complaint specifically alleges that these employees prepared fraudulent reports in connection with several commercial claims submitted to Chubb & Son Inc. (See, e.g., *id. PP 81, 156*(b), 177, 184-86, 204(d).) Although the 92 Complaint attributes the preparation of two fraudulent reports to M.F. Bank generally, closer

---

committed within the course of employment; (2) committed in furtherance [of the business] of the corporation; and (3) authorized or subsequently acquiesced in by the [principal]." *Cox 17 F.3d at 1406-07* (quoting *Quick v. Peoples Bank, 993 F.2d 793, 797 (11th Cir. 1993))*.

examination reveals that Wagner was the author of both of the reports in question. (See *id. PP 189, 204, 204*(d).) Thus, despite plaintiffs' broad allegations against [*60] the Salvor Defendants--defined to include M.F. Bank--all specific allegations of wrongdoing directed against M.F. Bank arise from the conduct of either Wagner or Rigney.

Completely absent from the 92 Complaint are the requisite allegations that an officer or director of M.F. Bank had knowledge of, or was recklessly indifferent toward, the unlawful activities of Wagner and Rigney. The closest plaintiffs come to making such a claim is in a statement that Terry St. Denis, a "M.F. Bank General Manager" not named as a defendant in either the 92 or 95 Complaint, transmitted a fraudulent report prepared by Wagner to Chubb & Son Inc. [12] Plaintiffs make no representations, however, that Mr. St. Denis was aware of or recklessly indifferent toward the fraudulent nature of the report which he transmitted or that he participated in any way in Wagner's misdeeds. Thus, even assuming that Mr. St. Denis was an officer of M.F. Bank, plaintiffs' factual allegations fall far short of establishing his knowledge of or reckless indifference toward the fraudulent scheme perpetuated by Wagner.

[*61] Similarly, the 92 Complaint does not allege that any high-level employees of M.F. Bank participated in the racketeering activity or committed predicate acts themselves. Finally, plaintiffs' allegations against M.F. Bank do not show that the company "substantially and directly benefitted" from its employees' fraudulent activities. The only specific allegation concerning monies received by M.F. Bank is that Chubb & Son Inc. paid it $ 1,483.70 for services provided in connection with a purported fraudulent claim. (See 92 Compl. P 159.) Plaintiffs do not explicitly contend that this sum represents the fruits of a M.F. Bank employee's fraudulent scheme. This sum could well represent the

same fee M.F. Bank would have received had the claim been legitimate. Plaintiffs' factual allegations simply provide no basis for a finding that M.F. Bank was a "central figure" or the "aggressor" in the alleged schemes. Holding M.F. Bank vicariously liable for the independent acts committed by two of its low to mid-level employees for their own benefit would be inappropriate in this case.

In the absence of any allegations evidencing M.F. Bank's complicity in Wagner's and Rigney's frauds, moreover, [*62] plaintiffs cannot succeed in their attempts to hold M.F. Bank directly liable under RICO. Consequently, the Court dismisses the substantive RICO counts against M.F. Bank. [13]

[*63] H. *Conspiracy*

Many of the moving defendants argue that plaintiffs have failed to properly allege the existence of a RICO conspiracy. In its October Opinion, the Court dismissed Count Six of plaintiffs' 92 Complaint with leave to replead on the ground that the RICO conspiracy allegations did not comport with *Fed. R. Civ. P. 8*. See October Opinion at 14-18. As Count Six of the 95 Complaint raises concerns identical to those discussed in the October Opinion, the Court now dismisses that claim with leave to replead.

The Court notes, however, that the defendants to the present motions have asserted additional arguments concerning the sufficiency of plaintiffs' conspiracy allegations that were not addressed in the Court's October Opinion. As plaintiffs have leave to replead their RICO conspiracy counts, and in light of the

───────────────

[12] In opposing M.F. Bank's motion, plaintiffs submitted additional materials concerning Terry St. Denis's position at M.F. Bank. The Second Circuit has clearly stated that in considering a motion to dismiss, HN26[↑] "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).* If a district court considers matters outside the pleadings in deciding a *Rule 12(b)(6)* motion, it must treat the motion as one for summary judgment. See *Fed. R. Civ. P. 12(b)(6); Kramer, 937 F.2d at 773.* The Court declines plaintiffs' invitation to consider materials outside the pleadings and therefore will limit its analysis to the facts as alleged in the complaint against M.F. Bank.

───────────────

[13] The Court dismisses these claims without leave to replead. HN27[↑] Although the Court recognizes that leave to amend a pleading "shall be freely given when justice so requires," *Fed. R. Civ. P. Rule 15(a),* leave need not be granted when further amendment would be futile, see *Richardson Greenshields Secs., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987).* Nothing in plaintiffs' submissions, including the materials outside the pleadings not considered in deciding M.F. Bank's motion to dismiss, leads the Court to believe that plaintiffs will be able to establish the degree of complicity of officers or high-level employees at M.F. Bank that is necessary to subject M.F. Bank to either vicarious or direct liability. In particular, plaintiffs have never alleged that Mr. St. Denis, or any other officer at M.F. Bank, participated in or had any knowledge of the frauds committed by Rigney and Wagner. Accordingly, in the Court's view, any further amendment of the 92 Complaint--a pleading which already has been amended on two occasions--would be futile.

1998 U.S. Dist. LEXIS 22542, *63

Supreme Court's recent statement on the issue in *Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)*, a consideration of these arguments at this stage is appropriate.

Defendants submit that plaintiffs' conspiracy claim is pleaded with overly conclusory language and cite *Morin v. Trupin, 747 F. Supp. 1051 (S.D.N.Y. 1990)*, **[*64]** for the proposition that "bare allegations of 'conspiracy' . . . are insufficient to support a civil RICO claim." *Id.* At 1067 (quoting *Grunwald v. Bornfreund, 668 F. Supp. 128, 133 (E.D.N.Y. 1987)*); see also *Laverpool v. New York City Transit Auth., 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991)*. Plaintiffs counter that the particularity requirements of *Fed. R. Civ. P. 9(b)* do not apply to allegations of conspiracy and assert that they have adequately pleaded their RICO conspiracy claim.

*HN28*[↑] Although allegations of conspiracy, unlike any underlying claims of fraud, need not comport with the specificity requirements of *Fed. R. Civ. P. 9(b)*, a complaint must nonetheless "allege some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990)*. Thus, although plaintiffs have included broad general allegations concerning the "Defendants' Conspiracy" in both their 92 and 95 Complaints, the Court must look to the specific allegations against each defendant to determine whether any factual basis exists for plaintiffs' conspiracy claim against **[*65]** that particular defendant.

Until the Supreme Court's recent decision in Salinas, the rule in this Circuit was that a claimant asserting a claim under *§ 1962(d)* based on purported frauds must (1) specifically allege that the defendant entered into an agreement to commit two predicates acts, see *Hecht, 897 F.2d at 25*, (2) show "that the defendant[] understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses," *Morin v. Trupin, 711 F. Supp. 97 at 111* (internal quotations omitted); see also, *Viola, 35 F.3d at 43* (holding that liability for RICO conspiracy requires proof that defendant embraced conspiracy's objectives and agreed to commit two predicates in furtherance thereof), and (3) adequately demonstrate each individual defendant's participation or responsibilities as to the predicate acts, see *Morin, 711 F. Supp. at 111*.

In Salinas, however, the Court ruled that an agreement to commit two predicate act is not required to establish liability for a RICO conspiracy under *§ 1962(d)*. See

*Salinas, 118 S. Ct. at 477*. The Court instructed **[*66]** that general conspiracy principles dictate what is required to establish a RICO conspiracy. See *id. at 476-77*. Thus, "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense," but "the partners in the criminal plan must agree to pursue the same criminal venture." *Id. at 477*. Furthermore, once a conspirator commits to such a criminal venture, he may be held liable even if he only provided support and even if he was incapable of committing the substantive offense. See id.

The Court articulated *HN29*[↑] the following prerequisites of a RICO conspiracy:

A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

*Id.* In light of the Salinas opinion, therefore, the **[*67]** Court will consider the allegations asserted against the individual defendants below to determine if they establish the requisite intent to further a criminal endeavor that would satisfy the elements of a *§ 1962(c)* violation.

## II. PLEADING ISSUES

### A. *Particularity of the Fraud Claims*

*HN30*[↑] Pursuant to *Fed. R. Civ. P. 9(b)*, allegations of mail or wire fraud must be pleaded with particularity. See *Wiener v. Napoli, 760 F. Supp. 278, 283 (E.D.N.Y. 1991)*. Pursuant to *Rule 9(b)*, allegations of fraud must allege the time, place, speaker and, sometimes, the content of the alleged misrepresentations. See *IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993)*; *Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990)*; *DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)*. Scienter may be averred generally, but a plaintiff must articulate some factual basis providing a strong inference of intent. See *Herrmann, 9 F.3d at 1057*. The purpose of these requirements is to give a defendant fair notice of the claim against him, to protect a defendant's reputation **[*68]** from improvident charges of misconduct and to limit strike suits. See id.

A number of defendants contend that plaintiffs have failed to meet this burden in pleading their RICO claims. As rulings under *Rule 9(b)* are fact-bound determinations, the Court cannot make a general conclusion about the overall sufficiency of plaintiffs' complaints. Accordingly, the Court addresses defendants' *Rule 9(b)* arguments individually below.

B. *Multiple Enterprises in a Unitary RICO Cause of Action*

Several defendants allege that plaintiffs impermissibility alleged multiple enterprises unitary causes of action. A review of the 92 and 95 Complaints shows that this problem is created in two different ways. First, each claim for relief incorporates by reference all of the preceding allegations, including all of the previously alleged enterprises. Second, Counts Four and Six of the 92 Complaint, and Count Six of the 95 Complaint, expressly encompass multiple enterprises within their claim for relief.

In its October Opinion, the Court refused to dismiss plaintiffs' RICO claims in their 92 Complaint simply because they utilized overinclusive incorporation by reference clauses. See October **[*69]** Opinion at 15. The Court similarly will not dismiss the RICO Counts in the 95 Complaint on this ground. Moreover, as set forth above, the Court has dismissed Count Six of both the 92 and 95 Complaints (plaintiffs' RICO conspiracy claims) on the grounds that they did not comport with the pleading requirements of *Fed. R. Civ. P. 8*.

Thus, the only remaining claim to be considered that explicitly encompasses multiple enterprises is Count Four of the 92 Complaint. Count Four alleges as follows:

> The persons identified below have been employed by or associated with the corresponding enterprises, and have conducted or participated, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity.

*Go to table1*

(92 Compl. P 361.) Although it might have been preferable to have a separate claim for relief asserted against the participants in each of the public adjuster enterprises--something akin to **[*70]** Count Three and Four of the 95 Complaint, for example--the Court does not find Count Four to be so confusing that it violates the spirit of *Fed. R. Civ. P. 8*. Count Four is sufficiently clear in alleging that the designated employee-

individuals conducted or participated in the conduct of the corresponding employer-enterprises through a pattern of racketeering activity.

III. PENDENT CLAIMS

In addition to the RICO claims discussed above, plaintiffs include a number of state law claims in their complaints. These claims include: common law fraud and conspiracy to commit common law fraud; breach of fiduciary duty and inducing, aiding and abetting a breach of fiduciary duty; conversion; and unjust enrichment. [14] Defendants assert that, should the Court dismiss plaintiffs' pending RICO claims, these state law claims should be dismissed because the Court will be divested of jurisdiction over them. Many defendants also assert that the state law claims are substantively deficient.

**[*71]** A. *Supplemental Jurisdiction*

*HN31*[↑] ] This Court's power to decide state claims is governed by *28 U.S.C. § 1367(a)*. This supplemental jurisdiction can extend to a party over whom there is no original federal jurisdiction, so long as the state and federal claims that remain part of the case share a common nucleus of operative facts. See *Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 971-72 (E.D.N.Y. 1995)*. However, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if [it] has dismissed all claims over which it has original jurisdiction." *28 U.S.C. § 1367(c)*.

Under this standard, this Court clearly will retain supplemental jurisdiction over a defendant if the Court declines to dismiss the RICO claims against him. The more difficult question is whether the Court retains jurisdiction over those defendants against whom there remain no RICO claims but against whom state law claims survive. In other words, the Court must determine whether the claims asserted against a defendant against whom only state causes of action remain arise from the same case or controversy as the surviving federal **[*72]** claims asserted against other defendants. This determination can only be properly made in light of the particular allegations made against defendants against whom only state law claims remain. Consequently, the Court analyzes those faced with this issue individually below.

B. *Common Law Fraud*

_____

[14] The 92 Complaint also includes a claim for money paid by mistake.

1998 U.S. Dist. LEXIS 22542, *72

1. <u>Statute of Limitations</u>

Some defendants contend that the common law fraud claims against them are barred by the statute of limitations. **HN32**[↑] Common law fraud claims are barred if they are brought more than six years from the date of the alleged fraud or two years from when plaintiffs discovered or should have discovered their injury, whichever is longer. <u>See *N.Y. C.P.L.R. 203(g), 213*</u>. As with RICO violations, knowledge of an injury from common law fraud is imputed to plaintiffs upon inquiry notice, absent a showing that despite due diligence they were unable to uncover the fraud. <u>See *Armstrong, 699 F.2d at 88*</u>.

Not surprisingly, the parties make the same arguments with regard to the common law fraud statute of limitations that they made in connection with the RICO statute of limitations issue. The Court, therefore, adopts its RICO statute of limitations **[\*73]** analysis here and applies the same standard to plaintiff's common law fraud claims below.

2. <u>Particularity of Pleading</u>

Defendants claim that the common law fraud claims, like their RICO counterparts, should be dismissed because they are not alleged with sufficient particularity. As defendants correctly point out, **HN33**[↑] "*Rule 9(b)* extends to all averments of fraud or mistake, whatever may be the theory of legal duty--statutory, common law, tort, contractual or fiduciary." *Frota v. Prudential-Bache Secs., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986)*. The Court addresses the defendants' *Rule 9(b)* arguments individually below.

C. <u>*Breach of Fiduciary Duty and Its Inducement*</u>

In Count Eight of the 92 Complaint, plaintiffs allege that the Claims Representative defendants breached a fiduciary duty they owed plaintiffs and that the defendant homeowner and commercial insureds, Salvors and Public Adjusters "knowingly induced, aided and abetted these breaches of fiduciary duty." (92 Compl. P 376.) Count Eight of the 95 Complaint asserts a similar claim. Specifically, it alleges that Claims Representative and Expert defendants breached a fiduciary duty owed to **[\*74]** plaintiffs and that the insured defendants induced, aided and abetted these breaches. (95 Compl. P 219.)

A number of defendants challenge these claims. These challenges assail this cause of action on two grounds: first, that it is barred by the statute of limitations; and

second, that it has not been properly pleaded.

1. <u>Statute of Limitations</u>

**HN34**[↑] New York law does not provide an express statute of limitations for a breach of fiduciary duty. Rather, a cause of action for breach of fiduciary duty may be governed by either a three-year or a six-year limitations period. See *Geren v. Quantum Chem. Corp., 832 F. Supp. 728, 735 (S.D.N.Y. 1993)*; *Ghandour v. Shearson Lehman Bros., Inc., 213 A.D.2d 304, 624 N.Y.S.2d 390, 392 (N.Y. App. Div. 1995)*. In general, "the choice of the applicable Statute of Limitations depends on the substantive remedy which the plaintiff seeks." *Loengard v. Santa Fe Indus., Inc., 70 N.Y.2d 262, 514 N.E.2d 113, 115, 519 N.Y.S.2d 801 (N.Y. 1987)*; see also *Geren, 832 F. Supp. at 735*, such that an action for damages from a breach of fiduciary duty is governed by the three-year period set forth **[\*75]** in *N.Y. C.P.L.R. 214(4)* (action to recover damages for an injury to property), while an action seeking equitable relief is governed by the six-year catch-all period in *N.Y. C.P.L.R. 213(1)*, see *Geren, 832 F. Supp. at 735*; *Philip Morris Inc. v. Heinrich, 1996 U.S. Dist. LEXIS 9156*, *No. 95 CIV. 0328, 1996 WL 363156*, at \*16 (S.D.N.Y. June 28, 1996).

The relevant case law also instructs, however, that a court must take the gravamen of the complaint into consideration in identifying the applicable limitations period. See *Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 19 (2d Cir. 1983)* ("When applying a statute of limitations, courts look at the essence of the stated claim and not the label by which a plaintiff chooses to identify it."); *Varnberg v. Minnick, 760 F. Supp. 315, 333 (S.D.N.Y. 1991)* ("In choosing between the two possible periods of limitations [for breach of fiduciary duty], a court should consider the gravamen of the complaint."). Thus, if a claim for breach of fiduciary duty sounds in fraud, courts apply the analogous six-year statute of limitations to that claim. See *Dolmetta, 712 F.2d at 19* (applying six-year statute **[\*76]** of limitations to aiding and abetting breach of fiduciary duty claim because it "sounded in fraud"); *Menke v. Glass, 898 F. Supp. 227, 233 n.6 (S.D.N.Y. 1995)* (applying six-year statute of limitations to breach of fiduciary duty claim, noting that it sounded in fraud); *Varnberg, 760 F. Supp. at 333* (holding that six-year statute of limitations should apply to breach of fiduciary duty claim because it was most analogous to a claim for fraud); *Fava v. Kaufman, 124 A.D.2d 42, 511 N.Y.S.2d 447, 449 (N.Y. App. Div. 1987)* (applying fraud statute of limitations to breach of fiduciary duty claim because it sounded in fraud).

1998 U.S. Dist. LEXIS 22542, *76

Moreover, the courts in this circuit routinely apply the "discovery rule" generally utilized in the context of fraud claims to breach of fiduciary duty claims governed by a six-year statute of limitations, such that the statute of limitations does not accrue until a plaintiff has actual or constructive knowledge of the defendant's breach of fiduciary duty. See _Menke, 898 F. Supp. at 232_; _Fisher v. Reich, 1994 U.S. Dist. LEXIS 17121_, No. 92 Civ. 4158 (MBM), 1995 WL 23966, at *9 (S.D.N.Y. Jan. 10, 1995); _Ferber v. Ehrlich, 1994 U.S. Dist. LEXIS 4614_, No. 93 CIV. 818 _(MGC), 1994 WL 132168_, **[*77]** at *8 (S.D.N.Y. April 14, 1994); _Dymm v. Cahill, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990)_; _Zola v. Gordon_, 685 F. Supp. 354, 374 (S.D.N.Y. 1988); _Fava, 511 N.Y.S.2d at 449_.

In this case, plaintiffs' claims for breach of fiduciary duty arise from essentially the same course of conduct as their common law fraud claims. Specifically, plaintiffs contend that the Claims Representative and Expert defendants breached their fiduciary duties by accepting bribes and knowingly causing plaintiffs to pay settlements on inflated or fictitious losses. (See 92 Compl. P 376; 95 Compl. P 219.) As these claims sound in fraud, they will be subject to a six-year statute of limitations, with the limitations period accruing when plaintiffs had actual or constructive knowledge of the relevant breach of fiduciary duty.

_HN35_[⬆] New York law also lacks an express statute of limitations for inducing or aiding and abetting a breach of fiduciary duty. At least two courts in this Circuit have applied a three-year statute of limitations to an inducing a breach of fiduciary duty claim. See _Fireman's Fund Ins. Co. v. Fraund, 1989 U.S. Dist. LEXIS 3162_, No. 88 CIV. 2765, 1989 WL 31490, **[*78]** at *9 (S.D.N.Y. March 31, 1989) (noting that parties agreed that three-year statute of limitations should apply to inducing breach of fiduciary duty claim); _Philip Morris Inc., 1996 WL 363156_, at *17 (citing _Fireman's Fund_ and applying three-year statute of limitations). Nevertheless, plaintiffs' claims for inducing or aiding and abetting a breach of fiduciary duty are predicated upon the same fraudulent scheme giving rise the plaintiffs' common law fraud and breach of fiduciary duty claims. The Court can find no basis, in the above-noted cases or elsewhere, for applying a different statute of limitations to the inducing or aiding and abetting claims than that applicable to plaintiffs' fraud and breach of fiduciary duty claims. Plaintiffs' inducing or aiding and abetting a breach of fiduciary duty claims are therefore subject to a six-year statute of limitations that commences upon actual or constructive knowledge of the acts giving rise to the

claim. See _Dolmetta, 712 F.2d at 19_ (applying six-year statute of limitations to aiding and abetting breach of fiduciary duty claim).

2. Sufficiency of the Complaint

In the 92 and 95 Complaints, **[*79]** plaintiffs allege that the Claims Representative and Expert defendants owed Chubb a fiduciary duty which they breached by "knowingly or recklessly" causing Chubb to pay amounts that it did not owe. (92 Compl. P 376; 95 Compl. P 219.) The 95 Complaint further alleges that these defendants breached their fiduciary duty to Chubb by accepting bribes. (See 95 Compl. P 219.) The Expert Defendants named in the 95 Complaint dispute that they owed Chubb any such fiduciary duty.

_HN36_[⬆] Under New York law, "a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." _Penato v. George, 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (N.Y. App. Div. 1976)_; see also _Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co., 785 F. Supp. 411, 425 (S.D.N.Y. 1992)_ (stating that "fiduciary relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another" (quoting _Mobil Oil Corp. v. Rubenfeld, 72 Misc. 2d 392, 339 N.Y.S.2d 623, 632 (N.Y. Sup. Ct. 1972)_, **[*80]** rev'd on other grounds, _48 N.Y.S.2d 428, 370 N.Y.S.2d 943 (N.Y. App. Div. 1975))_; _Broadway Nat'l Bank v. Barton-Russell Corp., 154 Misc. 2d 181, 585 N.Y.S.2d 933, 945 (N.Y. Sup. Ct. 1992)_ (noting that fiduciary duty must arise out of "relationship of confidence, trust, or superior knowledge or control"). New York courts have recognized that a fiduciary duty "may exist where one entity 'is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" _Id._ An arms-length commercial transaction, without more, generally does not give rise to a fiduciary duty. See _Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 739 (2d Cir. 1984)_; _IBJ Schroder Bank & Trust Co., 785 F. Supp. at 426_. Whether plaintiffs' allegations establish such a relationship between Chubb and the Expert Defendants will be considered in the context of the individual defendants below.

The 92 and 95 Complaints also assert that the Salvor, Public Adjuster and Insured Defendants "knowingly induced, aided and abetted" the aforementioned

breaches of fiduciary duty. (See 92 Compl. P [*81] 376; 95 Compl. P 219.) The 95 Complaint further specifies that this inducement was effectuated by entering into arrangements to pay bribes to Chubb's fiduciaries. (See 95 Compl. P 219.) Several of the Insured Defendants to the 95 Complaint assert that this claim is insufficient.

HN37[↑] To plead a claim for inducing a breach of fiduciary duty, a complaint must allege (1) a breach by a fiduciary of obligations to another; (2) the defendant's knowing inducement or participation in the breach; and (3) resulting damage to the plaintiff. See *S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 847-48 (2d Cir. 1987)*; *United States v. Rivieccio, 846 F. Supp. 1079, 1086 (E.D.N.Y. 1994)*. "The gravamen of the claim of participation in a breach of fiduciary duty is the [defendant's] knowing participation . . . in the fiduciary's breach of trust." *S & K Sales Co., 816 F.2d at 848*.

HN38[↑] A slightly different three-part test applies to a claim for aiding and abetting a breach of a fiduciary duty. Specifically, a plaintiff must show "(1) the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation [*82] on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Morin v. Trupin, 711 F. Supp. 97, 112 (S.D.N.Y. 1989)* (internal quotations omitted) (quoting *Samuel M. Feinberg Testamentary Trust v. Carter, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987))*. To the extent that the primary violation is grounded in fraud, the allegations of a defendant's aiding and abetting that violation must comport with the particularity requirements of *Fed. R. Civ. P. 9(b)*. See *711 F. Supp. at 113* (explaining that "conclusory assertions of aider-abettor liability which refer to the general charges of wrongdoing are insufficient" when primary violation is based on fraud). As the allegations against each defendant differ, the Court must apply these tests to each claim individually.

## D. *Conversion*

Chubb's complaints allege that the defendants' scheme "wrongfully appropriated millions of dollars belonging to Chubb," and thus, "constitute[s] conversion under the common law." (92 Compl. P 379; 95 Compl. P 222.) This allegation, defendants argue, does not constitute conversion.

HN39[↑] Under New York law, [*83] "to establish conversion the plaintiff must establish legal ownership or an immediate superior right to the possession to a specific identifiable thing." *Cruickshank & Co., Ltd. v. Sorros, 765 F.2d 20, 25 (2d Cir. 1985)* (internal quotations omitted). "A conversion of property is any unauthorized exercise of dominion or control over the property by one who is not the owner thereof which interferes with another person's superior possessory rights in the property." *United States v. Paladin, 539 F. Supp. 100, 103 (W.D.N.Y. 1982)* (citing *Meese v. Miller, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (N.Y. App. Div. 1981))*. Money may be the subject of a conversion action, but only if the plaintiff can show that "the money was contained in a specific, identifiable fund and was designated for a particular purpose for [the plaintiff's] benefit." *Massive Paper Mills v. Two-Ten Corp., 669 F. Supp. 94, 95 (S.D.N.Y. 1987)*; *Northern Trust Co. v. Chase Manhattan Bank, N.A., 582 F. Supp. 1380, 1386* (S.D.N.Y.), aff'd, *748 F.2d 803 (2d Cir. 1984)*. The "mere claim that a sum of money, not specifically identifiable" [*84] has been wrongfully paid out will not support a claim of conversion. *Columbia Marine Servs., Inc. v. Reffet Ltd., 861 F.2d 18, 23 (2d Cir. 1988)*; see also *Marine Midland Bank v. Russo Produce Co., 65 A.D.2d 950, 410 N.Y.S.2d 730, 733 (N.Y. App. Div. 1978)* ("[A] mere claim of monies paid out by mistake based upon contract will not support an action for conversion.").

Furthermore, New York law provides that a conversion action may be maintained where "there is an obligation to return or otherwise treat in a particular manner" the specific money in question. *G.D. Searle & Co. v. Medicore Communications, Inc., 843 F. Supp. 895, 912 (S.D.N.Y. 1994)*. In light of this precedent, the Court concludes that plaintiffs' complaints do not support a claim for conversion. The money which plaintiffs seek was not kept by defendants in an identifiable fund for plaintiffs' benefit. Moreover, defendants are under no obligation to return the identical funds that they allegedly converted. Plaintiffs' claim is essentially one for monies wrongfully paid out under a contract and therefore will not support a conversion claim.

The case upon which plaintiffs [*85] primarily rely, *United States v. Paladin, 539 F. Supp. 100 (W.D.N.Y. 1982)*, does not dictate otherwise. In Paladin, the court considered a conversion claim asserted by the federal government. The government held four tax liens against defendant Paladin. See *id. at 102*. Paladin, whose business had been destroyed by fire, received insurance proceeds subject to the government's liens. See *id. at 102-03*. Instead of forwarding those proceeds to the government, Paladin gave the proceeds to her brother. See *id. at 102*. The government claimed that

Paladin's brother had converted the proceeds. See *id. at 103*. The Paladin court granted summary judgment on plaintiff's conversion claim, holding that plaintiff had a superior right to possess the insurance proceeds because of the liens it held. See *id. at 103-04*.

In contrast to the government in Paladin, plaintiffs here do not allege that they retained a possessory interest in any of the funds they claim defendants fraudulently acquired once the payments had been made on the insurance claims. Similarly, plaintiffs do not claim that **[*86]** the money at issue, once paid, was specifically identifiable. Plaintiffs must make such allegations if they are to assert a viable conversion claim because *HN40*[⬆] "New York courts are clear that money can be the subject of conversion and a conversion action only when it can be described, identified, or segregated in the manner that a specific chattel can be." *G.D. Searle & Co., 843 F. Supp. at 912*. Because plaintiffs have failed to allege that the funds they claim were converted are specifically identifiable, the Court grants defendants' motion to dismiss plaintiffs' conversion claim." [15]

E. *Unjust Enrichment*

Some defendants assert that the unjust enrichment claims against them are time-barred. *HN41*[⬆] The applicable statute of limitations period for this claim under New York law is six years. See **[*87]** *N.Y. C.P.L.R. 213(1)*. The statute of limitations accrues at the time of the act that gives rise to the duty of restitution. See *Congregation Yetev Lev D'Satmar, Inc. v. 26 ADAR N.B. Corp.*, 192 A.D.2d 501, *596 N.Y.S.2d 435, 437 (N.Y. App. Div. 1993)*.

In response to defendants' arguments, plaintiffs counter that the applicable statute of limitations should be equitably tolled. Plaintiffs rely upon Magistrate Judge Lindsay's March 17, 1995 Memorandum and Order in this action in which the court discussed equitable tolling and/or equitable estoppel and found that further factual development would be required before determining whether a nonmoving defendant should be equitably estopped from asserting a statute of limitations defense.

As an initial matter, the Court notes that although plaintiffs and Magistrate Judge Lindsay use the terms

"equitable tolling" and "equitable estoppel" interchangeably, courts consider the two doctrines to be distinct. See *Zola, 685 F. Supp. at 361 n.6*. Specifically, *HN42*[⬆] equitable tolling concerns the running of the statute of limitations and the circumstances under which the running of the limitations period should be suspended. See *id.* As discussed above, **[*88]** fraudulent concealment operates to toll the limitations period. Equitable estoppel, on the other hand, functions to preclude a defendant from asserting a statute of limitations defense in an untimely action when that defendant's affirmative actions after his wrongdoing induced plaintiff to forebear from bringing suit. See *Renz v. Beeman, 589 F.2d 735, 750 (2d Cir. 1978)*; *Zola, 685 F. Supp. at 361 n.6*; *General Stencils, Inc. v. Chiappa, 18 N.Y.2d 125, 219 N.E.2d 169, 170-71, 272 N.Y.S.2d 337 (N.Y. 1966)* ("Our courts have long had the power . . . to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding."). [16] As the Second Circuit has noted, "[a] common illustration of this kind of equitable estoppel arises where the plaintiff is about to institute suit and is lulled into security by promises which the defendant does not intend to fulfill but upon which the plaintiff relies, only to find the statute has run." *Renz, 589 F.2d at 750*. **[*89]**

It is not entirely clear upon which doctrine plaintiffs rely. The essence of their argument, however, is that defendants made misrepresentations to conceal the fraudulent nature of the claims at issue. Under such circumstances, the doctrines of equitable tolling and equitable estoppel do appear to merge. See *id.* ("Equitable estoppel may also arise when affirmative fraudulent statements are made which conceal from the plaintiff facts essential to make out the cause of action."); *General Stencils, 219 N.E.2d at 171* (allowing defense of equitable estoppel when defendants affirmatively concealed breach of fiduciary duty).

The Court already has found that *HN43*[⬆] plaintiffs' allegations are insufficient to establish that the statute of limitations should be tolled as a result of defendants' fraudulent concealment because plaintiffs **[*90]** do not specify when they uncovered defendants' frauds and do not demonstrate that they exercised due diligence in

---

[15] Defendants also assert that the conversion claims against them are barred by the statute of limitations. As the Court dismisses plaintiffs' conversion claims, it need not address this issue.

[16] The Court notes that the authority cited by Magistrate Judge Lindsay in her discussion of "equitable tolling" exclusively concerns the doctrine of equitable estoppel.

discovering their injuries. Under New York law, a plaintiff advancing an equitable estoppel argument based upon fraudulent misrepresentations bears a similar burden of showing due diligence in bringing suit after discovering the facts giving rise to the estoppel. *Simcuski v. Saeli, 44 N.Y.2d 442, 377 N.E.2d 713, 717, 406 N.Y.S.2d 259 (N.Y. 1978)* ("The burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational.") The absence of any allegations concerning the relevant dates of discovery or plaintiffs' due diligence in commencing suit is therefore also fatal to their equitable estoppel argument. See *Florio v. Cook, 48 N.Y.2d 792, 399 N.E.2d 947, 910, 423 N.Y.S.2d 917 (N.Y. 1979)* (holding that plaintiff could not assert equitable estoppel as defense to statute of limitations where she had not pleaded fraud or fraudulent concealment). [17]

[*91]  IV. MOTIONS OF INDIVIDUAL DEFENDANTS

A. *Jerome Chamlin & Chamlin Spitzer Associates (92 Complaint)*

Defendants Jerome Chamlin ("Chamlin") and Chamlin Spitzer Associates, Inc. ("Chamlin Spitzer") contend that the Court should dismiss plaintiffs' claims against them for the following three reasons: 1) plaintiffs have failed to plead fraud against them with adequate particularity, thereby warranting dismissal of their RICO and common law fraud claims; 2) plaintiffs' complaint fails to adequately allege a RICO conspiracy; and 3) plaintiffs' state law claims are insufficient. Defendant Chamlin also contends that the allegations concerning his guilty plea should be stricken from the 92 Complaint.

The Court addresses these claims below. It is important to note, however, that although the defendants Chamlin and Chamlin Spitzer make a joint motion to dismiss, the allegations against them are not the same in all respects. Where the allegations against Chamlin as an individual differ from those against Chamlin Spitzer as a corporate entity, the Court will analyze their motions

separately.

1. Particularity of Plaintiffs' Fraud Allegations

Defendants first contend that [*92] plaintiffs have failed to plead their RICO and common law fraud claims with adequate particularity. As discussed at greater length supra Part II.A, pursuant to *Rule 9(b)*, allegations of fraud must be pleaded with particularity and therefore must set forth the time, place, speaker and, generally, the content of the alleged misrepresentations.

After reviewing the complaint against defendant Chamlin, the Court concludes that plaintiffs have failed to meet their burden of pleading fraud against him. [18] [*93] Indeed, the 92 Complaint contains not a single substantive allegation against Chamlin, other than that he pleaded guilty to mail fraud in connection with claims submitted to two insurance companies not party to this action and that he pleaded guilty to tax fraud. [19] (See 92 Compl. PP 160-62.) The Court concludes, therefore, that plaintiffs have failed to allege, much less allege with particularity, any relevant conduct against defendant Chamlin. Consequently, the Court dismisses the RICO and common law fraud claims against him. [20]

As for the defendant Chamlin Spitzer, plaintiffs offer substantive allegations alleging that the firm participated in schemes by insured Mitchell Apparel, Inc. ("Mitchell") to defraud Chubb and another insurance company not party to this suit. According to the 92 Complaint, [*94] Chamlin Spitzer and defendant Jacoby, part-owner and

---

[17] The Court recognizes that plaintiffs believe that Magistrate Judge Lindsay's findings on this issue should be dispositive in the context of the pending motions. That Memorandum and Order, however, dealt with different defendants and, for the most part, with a different complaint. Furthermore, the Court is not bound by Magistrate Judge Lindsay's decision and in any event, the primary issue here concerns the pleading requirements for asserting equitable tolling and equitable estoppel based upon fraudulent concealment, an issue that was not fully explored in Magistrate Judge Lindsay's opinion.

---

[18] In opposing Chamlin's motion, plaintiffs have submitted additional materials outside of the pleadings. The Court declines to consider those materials in resolving this motion. See *Fed. R. Civ. P. 12(b)(6)*.

[19] The Court notes that the absence of any allegations that Chamlin's admitted wrongdoing injured plaintiffs raises fundamental questions concerning plaintiffs' standing to assert their RICO claims against this defendant. See *Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992)* (stating that plaintiff lacks standing to sue under RICO in absence of "some direct relation between the injury asserted and the injurious conduct alleged").

[20] This dismissal is without leave to replead. Nothing in plaintiffs' brief or the additional materials not considered in the context of defendant Chamlin's motion to dismiss persuades the Court that plaintiffs will be able to assert a legally sufficient RICO or common law fraud cause of action against this defendant.

Molly DiRago

1998 U.S. Dist. LEXIS 22542, *94

Secretary Treasurer of Chamlin Spitzer, (see 92 Compl. P 35), acted as Mitchell's public adjusters on three different losses. [21] (See *id. PP 170-71*.) The direct allegations against Chamlin Spitzer are that Claims Representative Marchello procured a payment to Mitchell and Chamlin Spitzer of $ 3,500,000 for an allegedly false claim arising from a November 1989 loss, (see *id. P 187*.), and that Chamlin Spitzer sent or received three mailings in late 1991 and early 1992 in connection with other Mitchell claims, (see *id. P 193*). These direct allegations, when read together in a light most favorable to the plaintiffs, do not allege with specificity what role, if any, the defendant Chamlin Spitzer played in instituting the alleged schemes to commit mail fraud.

Plaintiffs further allege, however, that defendant Jacoby pleaded guilty to mail fraud charges arising from his participation [*95] in inflating the three Mitchell claims. (See *id. PP 166-67, 177*.) The Court recognizes that the fraudulent acts of Jacoby, an owner and officer of Chamlin Spitzer, fairly could be deemed to be the actions of the corporation itself. See *Adler v. Berg Harmon Assocs., 816 F. Supp. 919, 929 (S.D.N.Y. 1993)* (refusing to dismiss complaint against corporate entities in light of allegations that "high ranking agent" of corporations managed relevant enterprise in personal and corporate capacity). Such a view is merited in light of plaintiffs' explicit assertion that Chamlin Spitzer was the direct recipient of proceeds resulting from Jacoby's fraudulent adjustment of at least one Mitchell claim. [22] (See 92 Compl. P 187.) Nevertheless, the 92 Complaint does not provide any specific information concerning the misrepresentations underlying Jacoby's conviction. Thus, the Court dismisses the RICO and common law fraud claims against Chamlin Spitzer pursuant to *Fed. R. Civ. P. 9(b)*, but grants plaintiffs leave to replead their allegations in regard to Chamlin Spitzer with greater specificity.

[*96] 2. RICO Conspiracy Claim

Chamlin and Chamlin Spitzer argue that plaintiffs have failed to adequately allege their RICO conspiracy claim. For the reasons outlined above and in the Court's

October Opinion, the Court has dismissed plaintiffs' RICO conspiracy claim against all defendants with leave to replead on the ground that it does not comport with *Fed. R. Civ. P. 8*. Nevertheless, Chamlin and Chamlin Spitzer also argue that the RICO conspiracy claims against them are substantively deficient. These arguments merit further consideration.

With regard to defendant Chamlin, the 92 Complaint is devoid of any factual basis for plaintiffs' conclusory allegations that he agreed to participate in a criminal endeavor that, if completed, would constitute a substantive RICO violation injurious to plaintiffs. See *Salinas, 118 S. Ct. at 477*. Accordingly, the RICO conspiracy count against defendant Chamlin is dismissed in its entirety without leave to replead. [23]

[*97] The allegations against Chamlin Spitzer present a closer question. Although plaintiffs do not specifically allege that Chamlin Spitzer entered into an agreement to inflate the Mitchell claims at issue, a factual basis for their more general conspiracy allegations against this defendant can be found in defendant Jacoby's guilty plea to mail fraud in connection with the Mitchell claims, (see 92 Compl. P 167), and the course of conduct alleged concerning those claims, (see *id. PP 169-193*). Thus, the Court declines to dismiss the RICO conspiracy claim against Chamlin Spitzer on the merits.

3. State Law Claims

The Court has dismissed both the RICO and state law claims against defendant Chamlin without leave to replead. In contrast, the Court has dismissed the RICO claims against Chamlin Spitzer with leave to replead. As noted above, Chamlin Spitzer's ultimate liability is inexorably linked to the conduct of defendant Jacoby. Jacoby has not moved to dismiss the RICO claims against him. As the state law claims asserted against Chamlin Spitzer arise from the same case or controversy as that involving Jacoby, the Court will exercise its supplemental jurisdiction over the [*98] state law claims asserted against Chamlin Spitzer.

With regard to these pendent claims, the defendants' final contention is that Chamlin Spitzer cannot be held liable for inducing a breach of fiduciary duty under Count Eight because the Claims Representatives did not owe a fiduciary duty to plaintiffs. Defendant's claim

---

[21] The losses occurred in November 1989, May 1991 and August 1991.

[22] At the very least, these factors would support a finding that Chamlin Spitzer may be vicariously liable for the acts of Jacoby under the "central figure" analysis outlined supra Part I.G.

[23] The lack of factual development in the allegations against defendant Chamlin is also fatal to plaintiffs' state law claims against this defendant.

is without merit. **HN44[↑]** "New York law establishes that an employee-employer relationship is fiduciary." *City of New York v. Joseph L. Balkan, Inc., 656 F. Supp. 536, 548 (E.D.N.Y. 1987)*. Consequently, Chamlin Spitzer may be held liable for inducing a Claims Representative's breach of his fiduciary duty to plaintiffs.

### 4. Defendant Chamlin's Guilty Plea

Defendant Chamlin's final contention is that this Court should strike references to his guilty plea from the 92 Complaint should this Court permit plaintiffs to replead their complaint against him. The Court's dismissal of the complaint against Chamlin without leave to replead is dispositive of this issue.

### B. *M.F. Bank (92 Complaint)*

Defendant M.F. Bank contends that the Court should dismiss plaintiffs' complaint against it for three reasons: (1) it may not be held vicariously liable **[*99]** under RICO for the actions of its employees; (2) it may not be held liable for "aiding and abetting" a RICO violation and (3) it may not be held liable for the intentional torts of its employees under New York law.

### 1. Vicarious Liability

As discussed at length supra Part I.G, the Court agrees with M.F. Bank's contention that it cannot be held vicariously liable in this case and grants its motion to dismiss the RICO claims against it on this basis.

### 2. Aiding and Abetting

For the reasons articulated supra Part I.F.1, the Court dismisses all of the RICO aiding and abetting claims made by plaintiffs against M.F. Bank.

### 3. Vicarious Liability Under New York Law

M.F. Bank contends that plaintiffs' state law claims against it must be dismissed because under New York law, it cannot be held vicariously liable for the intentional torts of its employees. Plaintiffs respond that as Wagner and Rigney acted within the scope of their employment, M.F. Bank should be liable under a respondeat superior theory.

**HN45[↑]** Under New York law,

an employer is vicariously liable for the torts of its employee, even when the employee's actions are intentional, if the actions **[*100]** were done while the employee was acting within the scope of his or

her employment. However, there is no vicarious liability on the part of the employer for torts committed by the employee solely for personal motives unrelated to the furtherance of the employers' business.

*Kirkman v. Astoria Gen'l Hosp., 204 A.D.2d 401, 611 N.Y.S.2d 615, 616 (N.Y. App. Div. 1994)* (citations omitted); see also *Riviello v. Waldron, 47 N.Y.2d 297, 391 N.E.2d 1278, 1282, 418 N.Y.S.2d 300 (N.Y. 1979)* (recognizing employer may be vicariously liable for intentional torts if conduct was generally foreseeable); *Young Bai Choi v. D & D Novelties, Inc., 157 A.D.2d 777, 550 N.Y.S.2d 376, 377 (N.Y. App. Div. 1990)* (observing that intentional torts may fall within scope of employment); *Island Associated Coop., Inc. v. Hartmann, 118 A.D.2d 830, 500 N.Y.S.2d 315, 316 (N.Y. App. Div. 1986)* (asserting that torts committed for personal motives unrelated to furtherance of employer's business do not support imposition of vicarious liability). Under this standard, courts have refused to hold an employer vicariously liable for the intentional torts **[*101]** of its employees if the wrongful acts were not "incidental" to the furtherance of the employer's business, see *Kirkman, 611 N.Y.S.2d at 616* (holding that security guard's rape of visitor to hospital did not constitute action incidental to employer's business), or if an employer acted in good faith and did not induce the employee to commit the intentional tort in question, see *Banque Worms v. Luis A. Duque Pena E Hijos, Ltda, 652 F. Supp. 770, 773 (S.D.N.Y. 1986)*.

The Court already has found that the allegations in the 92 Complaint establish only that two employees of M.F. Bank committed fraud and received kickbacks in pursuit of personal gain. Plaintiffs' factual assertions do not show that defendants Wagner and Rigney engaged in this independent conduct to further M.F. Bank's business. The Court therefore concludes that M.F. Bank may not be held vicariously liable for the intentional torts of Wagner and Rigney. Accordingly, plaintiffs' claims against M.F. Bank in Counts Seven, Eight and Eleven of the 92 Complaint are dismissed. As M.F. Bank's potential liability to plaintiffs for unjust enrichment is not necessarily predicated on a theory of vicarious **[*102]** liability, however, the Court does not dismiss Count Ten of the 92 Complaint.

### C. *All American Poly Corp. and George Pscherhofer (92 Complaint)*

All American Poly Corp. and George Pscherhofer (the "Poly Corp Defendants") contend that the Court should

dismiss plaintiffs' complaint against them for six reasons: (1) the complaint fails to state a RICO cause of action against them; (2) the complaint fails to state a RICO conspiracy claim against them; (1) the RICO claims are time-barred; (4) the Court lacks jurisdiction over plaintiffs' state law claims; (5) the state law claims are time-barred; and (6) the complaint fails to plead fraud with particularity. These defendants also seek sanctions against plaintiffs under _Rule 11_ and move to have their case severed from those of the other defendants.

1. Sufficiency of Substantive RICO Claims

Defendants claim that the substantive RICO counts against them are insufficient because plaintiffs have failed both to adequately allege that the defendants committed two predicate acts and to properly plead a pattern of racketeering activity, even if the complaint could be construed as alleging two predicates.

a. _Predicate_ **[*103]**   _Acts_

The 92 Complaint against these defendants describes a scheme in which they allegedly conspired with defendants Seymour Berson, Marchello and Wagner to inflate a single claim of damage arising from a fire. (See _id. PP 149-59_.) The 92 Complaint, however, contains only three specific allegations regarding actions taken by the Poly Corp Defendants. First, All American Poly Corp. is alleged to have hired the defendant Public Adjuster Jack DuBoff Associates to prepare a claim before the fire was reported to Chubb. (See 92 Compl. P 152.) Next, plaintiffs allege on information and belief that defendant Pscherhofer met with the defendants Seymour Berson, Marchello and Wagner to further "cement[] and refine[]" "the agreement to defraud Chubb." (_Id. P 153_.) Finally, plaintiffs claim that defendant Pscherhofer executed a false sworn statement in proof of loss that was subsequently mailed to Chubb & Son Inc. on January 5, 1989. (See _id. P 156_(c).)

Turning to the acts of defendants' alleged co-conspirators, plaintiffs allege that on November 16, 1988, Claims Representative Marchello prepared a Formal Report misrepresenting the actual damages American Poly Corp suffered **[*104]** as a result of the fire. (See _id. P 156_(a).) Plaintiffs also contend that on December 12, 1988, a similarly fraudulent report drafted by Salvor Wagner was sent to Chubb & Son Inc. (See _id. P 156_(b).) Finally, plaintiffs submit that Chubb & Son Inc. mailed a draft for $ 421,664.00 payable to All

American Poly Corp., Chemical Bank and Jack Duboff Associates. (See _id. P 158_.)

Viewed as a whole and in a light most favorable to plaintiffs, these allegations suggest that plaintiffs seek to hold the Poly Corp Defendants liable for committing or aiding and abetting three acts of mail fraud. [24] _HN46_[⬆] The federal mail fraud statute, _18 U.S.C. § 1341_, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud . . . for the purpose of executing such scheme . . . places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail . . . any such matter or thing . . . [is guilty of mail fraud].

To state a claim for mail fraud, the plaintiff **[*105]** must allege "1) a scheme or artifice to defraud 2) for the purpose of obtaining money or property . . . and 3) use of the mails in furtherance of the scheme." _United States v. Altman, 48 F.3d 96, 101 (2d Cir. 1995)._ [25]

_HN47_[⬆] A scheme to defraud includes "'everything designed to defraud by representations as to the past or present . . . .'" _Altman, 48 F.3d at 101_ (quoting _Durland v. United States, 161 U.S. 306, 313, 40 L. Ed. 709, 16 S. Ct. 508 (1896))_; **[*106]** see also _Center Cadillac, 808 F. Supp. at 227_ (noting scheme to defraud requires "'fraudulent or deceptive means, such as material misrepresentation or concealment'" (citation omitted)). The scheme to defraud must have been devised with the specific intent to defraud. See _Altman, 48 F.3d at 101_.

Turning to the third element noted above, _HN48_[⬆] the mail fraud statute requires that the defendant, "for the purpose of executing such scheme . . . place" matter in the mail or "knowingly cause[] [the matter] to be delivered by mail." _18 U.S.C. § 1341_. Thus, for plaintiffs to state a claim against these defendants for mail fraud,

---

[24] These acts include the mailings of the proof of loss, the M.F. Bank Report and the draft. As the complaint does not indicate that Marchello's report was sent through the mails or over the wires, it cannot represent an act of mail or wire fraud.

[25] Multiple mailings in furtherance of a single scheme to defraud constitute multiple offenses under the mail fraud statute. See _Center Cadillac v. Bank Leumi Trust Co., 808 F. Supp. 213, 227 (S.D.N.Y. 1992)_, aff'd, **99 F.3d 401 (1995).**

they must allege (1) that they used or caused the use of the mails and (2) that such use was in furtherance of the scheme to defraud.

The first requirement does not mean that a defendant must have actually mailed the material himself. Instead, a defendant "causes" the use of the mails within the meaning of the statute when he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." **[*107]** *Pereira v. United States, 347 U.S. 1, 8-9, 98 L. Ed. 435, 74 S. Ct. 358 (1954)*. The Second Circuit has specifically noted "the courts, when construing the mail fraud statute in the context of schemes to defraud an insurance company, have consistently held that defendants 'caused' mailings that are part of the ordinary claims process." *United States v. Bortnovsky, 879 F.2d 30, 38 (2d Cir. 1989)*.

In alleging that the use of the mails was in furtherance of the scheme to defraud, the Supreme Court has held that this component does not require that use of the mails be an essential part of the scheme. See *Schmuck v. United States, 489 U.S. 705, 710, 103 L. Ed. 2d 734, 109 S. Ct. 1443 (1989)*; *Pereira, 347 U.S. at 8*. Rather, the mailing or transmission need only be "incident to an essential part of the scheme." *Pereira, 347 U.S. at 8*.

The allegations in the 92 Complaint noted above adequately allege at least three acts of mail fraud attributable to the Poly Corp Defendants directly or under an aiding and abetting theory--the mailings of the proof of loss, the Salvor's report and the payment draft. Specifically, **[*108]** plaintiffs have adequately alleged that these defendants and the noted co-conspirators devised a scheme to defraud Chubb by misrepresenting the loss. The object of this scheme was to obtain money. The Poly Corp Defendants fairly can be said to have caused these mailings that were "incident" to the scheme.

Defendants' primary argument with regard to the adequacy of the pleadings of the predicate acts is that the mailings occurred after the fruition of the scheme. The Court finds no merit in this contention. The alleged scheme reached fruition when defendants obtained an inflated settlement from Chubb & Son Inc. The acts of mail fraud noted above all occurred prior to or simultaneously with that event.

b. *Pattern of Racketeering Activity*

As explained at greater length supra Part I.D.2, the

Court must employ a contextual approach in considering whether predicate acts committed by a defendant constitute a "pattern of racketeering activity" under RICO. The issue as to these defendants is whether the allegations that they submitted a single fraudulent claim to Chubb & Son Inc. are sufficient to plead continuity or a threat of continuity as required under RICO.

The three predicates **[*109]** noted above, all of which occurred within the span of a month, clearly do not exhibit continuity. Furthermore, these allegations, even when considered in a light most favorable to the plaintiffs, do not support a claim that the acts of the Poly Corp. Defendants posed a threat of continued criminal activity. All these allegations show is that these defendants may have participated in a single fraud. The 92 Complaint does not establish that these defendants were associated with a legitimate enterprise that regularly engaged in racketeering activity, nor do plaintiffs adduce any "external factors" that suggest that these defendants intended to repeatedly engage in illicit activities. As a result, the Court concludes that the allegations against the Poly Corp. Defendants do not adequately establish that these defendants engaged in a pattern of racketeering activity. The Court, therefore, dismisses the substantive RICO counts against these defendants.

2. Sufficiency of Plaintiffs' RICO Conspiracy Claims

Defendants' next contention is that the RICO conspiracy claims against them are insufficient. Under the standard articulated in *Salinas*, to adequately allege a RICO conspiracy **[*110]** claim against these defendants, plaintiffs must assert that they agreed to further an endeavor that, if completed, would constitute a substantive RICO violation. See *Salinas, 118 S. Ct. at 477*. At most, plaintiffs have set forth factual allegations showing that these defendants may have agreed to submit one fraudulent insurance claim. As the Court already has concluded that the acts the Poly Corp Defendants allegedly conspired to commit in connection with this claim do not represent a substantive RICO violation, it now also finds that plaintiffs' conspiracy allegations are insufficient. The RICO conspiracy count against these defendants is therefore dismissed in its entirety.

3. RICO Statute of Limitations

The Poly Corp Defendants also argue that plaintiffs' RICO claims against them are barred by the applicable statute of limitations. As the Court has dismissed the RICO claims against these defendants on other

grounds, it need not address this argument.

#### 4. Supplemental Jurisdiction

Defendants argue that, because the Court dismisses plaintiffs' RICO claims against these defendants, the Court lacks jurisdiction over the state law claims against them. **[*111]** The state law claims against the Poly Corp Defendants arise from a single alleged inflated insurance claim submitted to Chubb & Son Inc. Plaintiffs assert that the defendant Wagner, among others, participated in this alleged act of fraud.

The state law claims appear to the Court to arise from essentially the same case and controversy as the RICO claims asserted against defendant Wagner. The Court declines, therefore, to dismiss the state law claims against the Poly Corp. Defendants, choosing instead to assert its supplemental jurisdiction over those claims.

#### 5. Timeliness of State Law Claims

The Poly Corp. Defendants contend that the common law claims against them, all of which are alleged to have taken place in New Jersey, are barred by the statute of limitations. The parties agree that _HN49_[⬆️] New Jersey law imposes a six-year statute of limitations on plaintiffs' claims. See _N.J. Stat. Ann. § 2A:14-1_. New Jersey courts apply a "discovery rule" to cases governed by that statute, however, under which a cause of action does not accrue until the plaintiff "discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of **[*112]** a cause of action." _O'Keeffe v. Snyder, 83 N.J. 478, 416 A.2d 862, 869 (N.J. 1980)_; see also _Nester v. O'Donnell, 301 N.J. Super. 198, 693 A.2d 1214, 1217-18 (N.J. Super. Ct. App. Div. 1997)_ (applying discovery rule in action for fraud). [26]

The claims against the Poly Corp Defendants arise from events that took place from October 1988 through January 1989. (See 92 Compl. PP 149-159.) Chubb paid Poly Corp's alleged inflated claim of $ 421,664 on January 10, 1989. (See id. P **[*113]** 158.) Plaintiffs

---

[26] For purposes of deciding this motion, the Court assumes without deciding that New Jersey law would apply to the claims asserted against the Poly Corp. Defendants. The Court notes, however, that even if it ultimately concludes that New York law should apply to these claims, the Court nonetheless would need to consider when plaintiffs should have discovered their injury in deciding whether their common law fraud and inducing, aiding and abetting a breach of fiduciary duty claims are time-barred.

served the Poly Corp Defendants with a summons and complaint in March 1995, over six years after the alleged wrongdoing. (See Poly Corp. Defs.' Mem. of Law at 6.)

In their complaint against the Poly Corp Defendants, plaintiffs assert that a police report on the fire in question indicated that the fire was contained within a limited area and caused only limited damage. (See 92 Compl. P 151.) Plaintiffs further allege that fire department personnel on the scene reported minimal damage. (See id.) As this claim involved a payout of over $ 50,000, the Claims Representative at Chubb & Son Inc. could not have approved a settlement without additional authorization from Chubb & Son Inc. (See id. P 14.) If the above-noted information concerning the limited scope of the loss was before the individual responsible for authorizing the $ 421,664 settlement, the Court could conclude that Plaintiffs should have discovered the facts underlying some of their claims as of the date of the authorization.

Plaintiffs do not indicate, however, when they obtained this information. Without further factual development, the Court cannot determine whether plaintiffs should have **[*114]** discovered the facts underlying their state law causes of action more than six years before they commenced their action against the Poly Corp Defendants. Defendants' motion to dismiss the state law claims against them on statute of limitations grounds are therefore denied without prejudice.

#### 6. Particularity of Fraud Allegations

Defendants next argument is that the state law fraud claim against them is pleaded with insufficient particularity because it does not set forth the time, place and content of a misrepresentation made by defendants. The Court disagrees. As set forth above, plaintiffs have alleged the time, place and content of at least one alleged fraudulent misrepresentation made by defendant Pscherhofer, the President of All American Poly Corp.: the proof of loss mailed on January 5, 1989. This pleading therefore comports with the requirements of _Fed. R. Civ. P. 9(b)_.

#### 7. _Rule 11_ Sanctions and Severance

Finally, the Poly Corp Defendants request that they be granted leave to file a motion pursuant to _Fed. R. Civ. P. 11_ seeking attorney's fees and costs. Defendants also seek to have there case severed from those of the other defendants.

As an initial matter, **[*115]** _HN50_[⬆️] the Court is not aware of any requirement that it grant leave to file a _Rule 11_ motion for a litigant to be able to file such an application. Accordingly, the Court declines to grant such leave. Should the defendants believe that they have a good faith basis upon which to make a _Rule 11_ motion, they should do so in compliance with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of New York.

As for the defendants' application to sever their claims from those of the other defendants, the Court believes that such a severance would not serve to more efficiently adjudicate this case. Consequently, the Court denies defendants' motion to sever.

D. _Joel Spira (92 Complaint)_

Defendant Joel Spira argues that the Court should dismiss plaintiffs' complaint against him for four reasons: 1) plaintiffs fail to allege a pattern of racketeering activity against him; 2) plaintiffs lack standing to assert their RICO claim against him; 3) plaintiffs' RICO conspiracy claim is defective; and 4) the Court lacks jurisdiction over plaintiffs' state law claims.

1. Pattern of Racketeering Activity

According to the 92 Complaint, Spira was a public adjuster **[*116]** who, during the period of time relevant to the 92 Complaint, worked at Interstate Adjusters, Inc. (See 92 Compl. P 27.) Plaintiffs allege that "Spira has pleaded guilty to two counts of mail fraud, and one count of income tax evasion, arising from this scheme." (Id.) The sole specific allegation against Spira in the 92 Complaint is that he participated in adjusting the alleged fraudulent claim of Irving Tanning Co. ("Irving Tanning"). 27

---

27 Paragraph 114 of the 92 Complaint states:

Spira pleaded guilty to two counts of mail fraud and one count of income tax evasion. With respect to the first count, Spira conceded under oath that he

"assisted with others in filing a false and fraudulent claim to the Chubb Insurance Company in connection with an insurance claim . . . with Irving Tanning Company, T-a-n-n-i-n-g in Heartland, Maine, approximately involving $ 610,000, and the mail was sent through the U.S. Mail, Eastern District."

(July 29, 1993 Plea Transcript p. 27.)

(92 Compl. P 114.)

**[*117]** Spira's first argument is that the plaintiffs have failed to properly plead that he engaged in a pattern of racketeering activity as required under RICO. Spira contends that plaintiffs have failed to make the threshold showing that he committed two predicate acts because only one of the acts of mail fraud alleged injured plaintiffs. As _HN51_[⬆️] the Second Circuit has suggested without deciding that predicate acts injuring nonplaintiffs may be considered in evaluating whether a pattern exists, see _Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1347 (2d Cir. 1994)_ (noting that such a view of the pattern requirement "appears to be a correct reading of _§ 1964(c)_"), Spira's argument lacks merit.

Spira also argues that plaintiffs have failed to plead continuity or the threat of continuity. As explained at greater length supra Part I.D.2, the Court must analyze allegations against a RICO defendant in the overall context of the complaint to determine whether the plaintiffs have properly pleaded a pattern of racketeering activity. In particular, the Court may examine the nature of the alleged enterprise, the predicate acts and other external factors in considering whether **[*118]** a pattern exists.

The primary contention of this defendant is that he cannot be said to have engaged in a pattern of racketeering activity because he is alleged to have participated in only one fraudulent claim that injured plaintiffs. However, Spira is alleged to be employed by one of the RICO enterprises set forth in the 92 Complaint. The allegations concerning this enterprise, Interstate Adjusters, Inc., establish it as a legitimate business that took part in racketeering activity in the regular course of its affairs. (See 92 Compl. PP 21-29.) Thus, any step Spira may have taken in furtherance of that company's illicit goals may reasonably be inferred to pose a threat of continuity. See _Khan, 53 F.3d at 515_ (finding requisite threat of continuity based upon clinics' regular practice of defrauding Medicare even though individual defendant only worked at clinics approximately three days a week for nine weeks). At this juncture in the litigation, the Court cannot conclude as matter of law that Spira's actions did not carry a threat of continuity. Accordingly, the Court denies defendant's motion to dismiss on this basis.

2. RICO Standing

Spira's next **[*119]** argument is that the plaintiffs cannot plead an injury sufficient to satisfy the standing requirement of civil RICO. _HN52_[⬆️] Under RICO, a plaintiff "only has standing if, and can only recover to the

extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L., 473 U.S. at 496*. Furthermore, a cause of action does not accrue under RICO until the injury and the resulting damages are provable. See *Bankers Trust Co., 859 F.2d at 1102*. Spira argues that plaintiffs lack standing to assert their RICO claims against him because they can demonstrate no actual, definite injury arising from his alleged conduct.

Specifically, Spira argues that plaintiffs cannot properly allege any actual injury arising from the fraudulent claim he assisted in filing because he may be required to make restitution for the Irving Tanning claim under the terms of his plea of guilty to mail fraud. In other words, because Spira may have to reimburse plaintiffs for the fraud he committed, he asserts that the plaintiffs do not know to what extent they have been damaged by Spira's conduct.

Although the Second Circuit has held that **[*120]** without provable damages no viable RICO cause of action may be maintained, see *Commercial Union Assur. Co. v. Milken, 17 F.3d 608, 612 (2d Cir. 1994)*, Spira's argument is without merit. Plaintiffs have identified a sum certain that stems from the fraudulent claim that Spira helped file. (See 92 Compl. P 114.) Moreover, Spira's admission that he may have to pay Chubb restitution presupposes that Chubb has been damaged. Thus, the Court concludes that plaintiffs have identified a cognizable injury that can support a RICO claim against Spira. [28]

3. RICO Conspiracy Claim

Spira's next contention is that the plaintiffs have failed to properly allege that he participated in a RICO conspiracy. Specifically, Spira argues that plaintiffs' RICO conspiracy claim against him is deficient because the substantive RICO counts against him are deficient.

The Court has **[*121]** found, however, that plaintiffs have adequately stated a substantive RICO claim against Spira. Furthermore, as noted above, in their allegations against Spira, plaintiffs refer to his plea allocution in which admitted that he agreed to work with others to defraud Chubb. This allegation, coupled with plaintiffs' general conspiracy allegations and the other substantive allegations against Spira, lead the Court to

conclude that the RICO conspiracy allegations against Spira are adequate. In particular, plaintiffs have adequately pleaded that Spira intentionally agreed to further a criminal endeavor that would amount to a substantive violation of RICO, thereby satisfying the standard set forth in Salinas. The Court, therefore, denies defendant's motion to dismiss the conspiracy claim on this ground.

4. Jurisdiction over State Law Claims

As the Court has not dismissed the RICO claims against Spira, it retains supplemental jurisdiction over the state law claims against him.

E. *Jacob Adoni (95 Complaint)*

Defendant Jacob Adoni ("Adoni") argues that the Court should dismiss plaintiffs' complaint against him for four reasons: 1) plaintiffs fail to plead a pattern of **[*122]** racketeering activity against him; 2) defendant did not operate or manage a RICO enterprise; 3) plaintiffs' RICO conspiracy claim is insufficient; and 4) plaintiffs' state law claims should be dismissed because the Court lacks jurisdiction over these claims and because these causes of action are time-barred.

1. Pattern of Racketeering Activity

Defendant Adoni contends that the allegations against him do not sufficiently plead a pattern of racketeering activity. Adoni argues that his single alleged instance of fraud, lasting only 9 months, does not pose a sufficient threat of continuity to meet the pattern of racketeering requirement of RICO.

At all relevant times in the 95 Complaint, defendant Adoni was the Chief Executive Officer of L.J. Simone, Inc. ("L.J. Simone"), a commercial insured. (See 95 Compl. P 30.) The complaint against Adoni alleges that he submitted a false insurance claim for the interruption his business suffered when a piece of computer equipment failed. According to the complaint, the equipment truly failed, but the damage to Adoni's business was minimal. (See *id. P 110*.) The complaint further indicates that Adoni's business was "suffering huge **[*123]** financial losses" and was "in desperate need of cash" when Adoni submitted the false claim. (*Id. P 112*.) Adoni, according to the complaint, "resorted to insurance fraud as a means of improving his company's finances." (*Id. P 113*.)

These factual allegations do not assert a claim that the acts of Adoni, even when construed in a light most

---

[28] Whatever merit this argument may have in the future, there is no present contention that Mr. Spira has indeed paid restitution.

1998 U.S. Dist. LEXIS 22542, *123

favorable to the plaintiffs, posed a threat of continued criminal activity. To the contrary, plaintiffs paint a picture of a businessman using fraud as an immediate measure to extricate his company from a difficult financial situation. The complaint against Adoni in no way indicates that he intended to continue his fraudulent practices. Because these pleadings are insufficient to establish a pattern of racketeering activity, the Court dismisses the substantive RICO counts against the defendant Adoni.

## 2. The *Reves* Test

Defendant Adoni next contends that plaintiffs have failed to properly allege that he operated or managed a RICO enterprise as required by <u>Reves</u>. The Court notes that whether the allegations against Adoni satisfy the <u>Reves</u> test presents a close question. Nevertheless, as the Court has dismissed the RICO claims **[*124]** against Adoni on other grounds, it need not resolve this issue.

## 3. RICO Conspiracy Claim

Adoni's next contention is that the plaintiffs have failed to properly allege that he participated in a RICO conspiracy. In their allegations against Adoni, plaintiffs refer to agreements between Adoni and other defendants to inflate the L.J. Simone claim. (See *id.* P 110.) Plaintiffs also use the word "conspired" to describe Adoni's actions. (See id.) Nevertheless, for the reasons outlined above, plaintiffs have failed to show that the criminal objective to which Adoni committed satisfies all of the elements of a RICO violation. The conspiracy allegations against Adoni are, therefore, inadequate and the Court dismisses this RICO conspiracy claim in its entirety. [29]

## **[*125]** 4. State Law Claims

Mr. Adoni's final contention is that the common law causes of action against him must be dismissed for lack of jurisdiction and, in some cases, on statute of limitations grounds.

### a. *Jurisdiction*

The Court will retain supplemental jurisdiction over the state law claims against Adoni if they form part of the

---

[29] In a footnote to his Memorandum of Law in support of his motion to dismiss, Adoni also argues that the RICO claims against him are barred by the statute of limitations. As the Court has dismissed the RICO claims against this defendant, it need not address this additional issue.

same case or controversy as those claims that provide the basis for this Court's original federal jurisdiction. The state law claims against Adoni arise from a single alleged inflated insurance claim submitted to Chubb & Son Inc. Plaintiffs assert that defendants Seymour Berson, Addesa and Simon participated in this alleged act of fraud.

The state law claims against Adoni appear to the Court to arise from essentially the same case and controversy as the RICO claims asserted against Berson, Addesa and Simon. Although the actions against Berson and Addesa have been resolved, plaintiffs continue to assert claims against Simon. The Court declines, therefore, to dismiss the state law claims against Adoni, choosing instead to assert its supplemental jurisdiction over this case.

### b. *Statute of Limitations*

Finally, defendant Adoni challenges **[*126]** the conversion and aiding and abetting a breach of fiduciary duty claims on statute of limitations grounds. As the Court already has dismissed the claims for conversion against all of the defendants, this portion of defendant's motion is moot.

As for defendant's argument regarding the breach of fiduciary duty claims, the Court denies defendant's motion. As noted above, a six-year limitations period applies to the breach of fiduciary duty claims against these defendants. The L.J. Simone claim was submitted to Chubb & Son Inc. in July 1989 and the bribes ostensibly were paid thereafter. (See *id. PP 114, 117*.) Plaintiffs' claim, therefore, is timely and the Court denies this portion of defendant's motion.

## F. *James Kelleher and Prime Decisions (95 Complaint)*

Defendants James Kelleher [30] and Prime Decisions claim that the Court should dismiss plaintiffs' complaint for the following reasons: (1) plaintiffs' RICO claims are barred by the statute of limitations; (2) plaintiffs have inadequately pleaded the association-in-fact enterprises in Counts One, Two and Six of the 95 Complaint; [31] (3)

---

[30] Plaintiffs also refer to Mr. Kelleher as "James Kelly", an alias allegedly used by James Kelleher to conceal the fact that he is the brother of defendant Michael Kelleher, a former Claims Representative for Chubb & Son Inc.. (95 Compl. PP 11-12, 22.)

[31] Although defendants contend that plaintiffs' Fourth Cause of Action also is insufficient, this argument is misplaced. This

plaintiffs have failed to establish that defendants operated or managed the Chubb [*127] enterprise in Count Five; (4) plaintiffs have failed to adequately allege that defendants engaged in a pattern of racketeering activity; (5) the RICO conspiracy claim is insufficient and (6) plaintiffs' state law claims should be dismissed because of lack of jurisdiction, the running of the statute of limitations and, with regard to the breach of fiduciary duty claim, because defendants neither owed a fiduciary duty to plaintiffs nor paid bribes to induce another's breach of fiduciary duty.

 **[*128]** 1. <u>Statute of Limitations</u>

In the 95 Complaint, plaintiffs allege that defendant James Kelleher was involved in multiple fraudulent claims as an engineering expert, including seven claims submitted by defendants to this action. (<u>See</u> 95 Compl. P 11.) [32] The last of these claims was filed in connection with a loss that occurred in December 1989, five years before this case was filed. Defendants assert that these claims should be barred by the statute of limitations.

As noted <u>supra</u> Part I.C, plaintiffs' RICO claims against defendants are governed by a four-year statute of limitations running from the time the plaintiffs discovered or should have discovered the injury stemming from the alleged RICO violation. The Court's [*129] first task in assessing defendants' arguments is to examine whether the allegations in the complaint demonstrate that plaintiffs had inquiry notice of the defendant's frauds before March 1991.

Undeniably, some of plaintiffs' allegations raise questions concerning whether they had such inquiry notice. For example, with regard to a claim submitted by United Utensils Co., Inc. in connection with a January 1989 loss, plaintiffs note that a New York State fire report did not corroborate the Claims Representative's account of the loss, (<u>see</u> *id. P 79*), and suggest that the purported loss may not have been covered under the relevant policy, (<u>see</u> *id. P 80*). In their allegations concerning the claim submitted by L.J. Simone, plaintiffs

---

claim is asserted solely against the defendant Robert Simon and, consequently, does not pertain to these defendants. The Court, therefore, denies defendants' motion to dismiss this claim.

[32] Although plaintiffs state in paragraph 11 of their 95 Complaint that defendant James Kelleher participated in submitting six claims which are the subject of this action, the actual allegations against him establish that he participated in seven such claims. (<u>See</u> *id. at 22*.)

again state that the loss was not covered by the insured's policy, (<u>see</u> *id. P 111, 121*), and note that Chubb & Son Inc.'s "home office" raised questions concerning coverage for the loss, (<u>see</u> *id. P 121*). Plaintiffs also allege that as part of submitting a fraudulent claim on behalf of Irving Tanning, the conspirators intentionally frustrated attempts by other machinery experts employed by Chubb & Son Inc. to examine the loss site. (See *id. [*130] P 147*.)

Nevertheless, in deciding this motion, the Court is bound to draw all inferences in plaintiffs' favor. Without further information regarding whether, when and to what extent personnel at Chubb & Son Inc. were aware of the above-noted inconsistencies, the Court cannot find on this motion that plaintiffs had inquiry notice of defendants' frauds. Accordingly, defendant's motion to dismiss on statute of limitations grounds is denied.

2. <u>The Association-in-Fact Enterprises</u>

The Court has found that plaintiffs have adequately alleged the existence of the association-in-fact enterprises in the 95 Complaint. Thus, defendants' motion to dismiss on this ground is denied.

3. <u>The *Reves* Test as Applied to Chubb the Enterprise</u>

The Court now turns to the defendants' contention that the allegations in the Fifth Cause of Action, in which Chubb is the alleged enterprise, are insufficient because they do not sufficiently establish that defendants participated in the management or operation of the enterprise as required under the <u>Reves</u> test.

As discussed <u>supra</u> Part I.F, a defendant may participate in the operation or management of a RICO enterprise by being: 1) **[*131]** a member of upper-management; 2) a lower-rung participant acting at the direction of upper-management who also participates in the management or decisionmaking of the enterprise, has discretion in carrying out the orders of upper-management, or otherwise provides substantial assistance to the enterprise; or 3) someone "'associated with' a RICO enterprise who exerts control over it, as for example, by bribery." *Reves, 507 U.S. at 184*.

The Court has some questions concerning whether defendants James Kelleher and Prime Decisions satisfy the <u>Reves</u> test with regard to the Chubb enterprise. Defendants, as outside Experts, do not represent either upper- or lower-level management at Chubb. Thus, plaintiffs may show they operated or managed that enterprise only if these defendants, who were

associated with the Chubb enterprise, exerted control over the enterprise in some way.

Defendants did not exert such control through bribery--rather, they were the recipients of the bribes. (See 95 Compl. P 54.) On one view, the allegations in the 95 Complaint essentially show James Kelleher willingly doing the bidding of those actually employed by and having control at Chubb to **[*132]** obtain his portion of the illicit payoffs. Indeed, the 95 Complaint specifically characterizes James Kelleher as a facilitator. (See *id. PP 11-13, 54.*)

Nevertheless, the Court recognizes that the Expert reports submitted by these defendants led Chubb & Son Inc. to pay settlements on fictitious or inflated losses. With regard to the L.J. Simone claim in particular, plaintiffs allege that Chubb & Son Inc. agreed to pay the claim only after James Kelleher submitted a misleading report that supported the conclusion that the loss was covered by the insured's policy. (See *id. P 121*.) By causing Chubb & Son Inc. to pay inflated claims it might not otherwise have paid, James Kelleher and Prime Decisions arguably exerted control over the Chubb enterprise. See *P & B Autobody, 43 F.3d at 1559* ("By acting with purpose to cause [plaintiff insurance company] to make payments on false claims, appellants were participating in the 'operation' of [plaintiff insurance company].") In light of these allegations, the Court cannot conclude that plaintiffs will be unable to prove any set of facts demonstrating that defendants had some role in directing the Chubb enterprise in **[*133]** satisfaction of the Reves test. Accordingly, defendants' motion to dismiss Count Five of the 95 Complaint on this ground is denied.

4. Pattern of Racketeering Activity

Defendants' next argument is that plaintiffs have failed to properly allege that defendants engaged in a pattern of racketeering activity. This argument merits little discussion as the 95 Complaint is clearly sufficient in this regard.

In the 95 Complaint, these defendants are alleged to have participated in no fewer than seven fraudulent claims over at least a two-year period. These acts are related in that they shared the same purpose (defrauding the plaintiff insurance companies to obtain illicit payoffs), methods of commission (fraudulent documentation of losses), and results (inflated payments and bribes). Defendants also generally worked with the same participants and repeatedly targeted the same victims.

Furthermore, plaintiffs' allegations against defendants James Kelleher and Prime Decisions, when considered in the overall context of the complaint, not only are sufficient to show a threat of continuity but also allege continuity itself. The Court, therefore, rejects this argument and denies defendants' **[*134]** motion on this ground.

5. RICO Conspiracy Claim

Defendants' final RICO argument is that the complaint against them insufficiently pleads a RICO conspiracy. This contention is without merit. Plaintiffs' allegations, viewed as a whole, clearly and specifically demonstrate that James Kelleher agreed to further a criminal endeavor that, if completed, would constitute a substantive RICO violation. Thus, these allegations satisfy the standard for pleading a RICO conspiracy as articulated in Salinas. See *Salinas, 118 S. Ct. at 477*. Defendants' motion to dismiss this claim on the merits is denied.

6. State Law Claims

The defendants next argue that the state law claims against them should be dismissed on jurisdictional and substantive grounds. Because the Court denies defendants' motion to dismiss the RICO claims, it is not divested of jurisdiction over the plaintiffs' state law claims against them. The Court, therefore, denies defendants' motion to dismiss the state law claims for lack of jurisdiction.

Defendants next argue that plaintiffs' breach of fiduciary duty claims against them are time-barred. As noted above, there is a six-year limitations period **[*135]** for the breach of fiduciary duty claims against these defendants. Plaintiffs filed the complaint against defendants in March 1995. Accordingly, defendants will not be liable for any breaches of fiduciary duty which occurred before March 1989 unless the Court finds that defendants did not have actual or constructive notice of the facts giving rise to those claims until some point after March 1989.

Plaintiffs' claims for breach of fiduciary duty arising from the December 1989 United Utensils claim and the April 1989 Venus Trimming and Binding claim clearly are timely. Absent further factual development, the Court cannot ascertain whether plaintiffs' breach of fiduciary duty claims premised upon the March 1989 Irving Tanning claim, the February 1989 L.J. Simone claim and the January 1989 United Utensils claims are timely because the allegations in the 95 Complaint do not

identify the precise date on which defendants' alleged breaches of fiduciary duty occurred. Any assertions that defendants breached their fiduciary duties to plaintiffs in connection with the June 1986 United Utensils claim and the July 1987 Elegant Knitted Headwear claim do appear to be time-barred. Nevertheless, the **[*136]** Court declines at this juncture to hold that plaintiffs may not assert their breach of fiduciary duty claims arising from those losses because further factual development in this case may demonstrate that plaintiffs did not have actual or constructive knowledge of those breaches until after March 1989. Defendants' motion to dismiss the breach of fiduciary duty claim on timeliness grounds is denied.

Defendants also argue that plaintiffs' breach of fiduciary duty claim must be dismissed because they owed no fiduciary duty to plaintiffs. The situations in which a fiduciary duty arises are discussed <u>supra</u> Part III.C.2. Defendants' argument against a finding that they owed plaintiffs a fiduciary duty is that a mere contractual arrangement to provide expert advice does not give rise to such a duty. In support of their argument, defendants cite several cases that note that mere expertise does not create a fiduciary relationship. See <u>Hutton v. Klabal, 726 F. Supp. 67, 73 (S.D.N.Y. 1989)</u> ("An expert does not, however, solely by virtue of his expertise, have fiduciary responsibility toward his customers."); <u>Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1431 (S.D.N.Y. 1985)</u> **[*137]** (refusing to hold that "in every case wherein someone with expertise is hired a fiduciary relationship is created").

In each of these cases, however, the court specifically noted the absence of prior dealings between the expert and the plaintiff, ostensibly because such past interactions could give rise to a relationship of trust sufficient to establish a fiduciary duty. See <u>Hutton, 726 F. Supp. at 73</u>; <u>Mechigian, 612 F. Supp. at 1431</u>. The 95 Complaint alleges that James Kelleher provided advice to Chubb & Son Inc. as an Expert engineer consultant on at least 34 different claims, including 7 claims at issue in this action. (See 95 Compl. P 11 & at 22.) The 95 Complaint further alleges that plaintiffs relied on the opinions of Experts in determining the extent and coverage for a loss. (See <u>id. P 7</u>.) In light of these allegations, at the very least, a factual issue exists as to whether the relationship between James Kelleher and plaintiffs was fiduciary in nature. Accordingly, defendants' motion to dismiss this claim is denied.

Finally, defendants argue that the claims for conversion against them should be dismissed. For the reasons

outlined **[*138]** above, the Court grants defendants' motion to dismiss plaintiffs' claims for conversion.

G. *Frank Klein & Carnival Creations (95 Complaint)*

Defendants Frank Klein and Carnival Creations (the "Carnival Creations Defendants") contend that the Court should dismiss plaintiffs' complaint against them for six reasons: (1) plaintiffs fail to plead a pattern of racketeering activity against them; (2) plaintiffs have failed to show that these defendants operated or managed any of the relevant RICO enterprises (3) plaintiffs' RICO conspiracy claim is defective; (4) the RICO claims are time-barred; (5) the Court lacks pendent jurisdiction over plaintiffs' state law claims and (6) certain of plaintiffs' state law claims are either time-barred, substantively insufficient or both.

1. <u>Pattern of Racketeering Activity</u>

Defendants contend that the allegations against them fail to set forth a pattern of racketeering activity as required under RICO. Specifically, these defendants argue that the plaintiffs' allegations do not show continuity or the threat of continuity.

As explained <u>supra</u> Part I.D.2, the Court must utilize a contextual approach in assessing whether the plaintiffs **[*139]** have properly alleged a pattern of racketeering activity. According to the 95 Complaint, defendants Klein and Carnival Creations were commercial insureds who submitted a single false insurance claim to Chubb & Son Inc. (See 95 Compl. PP 150-157.) The complaint alleges that these defendants submitted a false proof of loss statement and otherwise conspired with other defendants to defraud Chubb when they submitted a claim of water damage stemming from a hurricane. (See <u>id. PP 155-56</u>.) The Public Adjuster on this claim, Herbert Levy, subsequently pleaded guilty to mail fraud for "assisting in fraudulently inflating Carnival Creations' claim by primarily suggesting to the insured that others could arrange to get more than the true value of the claim." (<u>Id. P 156</u>.)

Looking at the entire complaint against the Carnival Creations Defendants, the Court concludes that plaintiffs have failed to adequately allege that these defendants engaged in a pattern of racketeering activity. Nothing in the complaint against either of these defendants suggests that their acts posed a threat of continuity, as they participated in a single act of alleged fraud in connection with submitting an insurance **[*140]** claim that appears to have been based, in part, on an

actual loss. The Court, therefore, dismisses the RICO claims against these defendants.

## 2. The *Reves* Test

The Carnival Creations Defendants further contend that the allegations against them do not establish that they operated or managed any of the alleged enterprises. As the Court has dismissed the RICO claims against these defendants on another ground, it need not resolve this issue.

## 3. RICO Conspiracy Claim

The defendants next argue that plaintiffs' conspiracy allegations against them are too conclusory to sustain a RICO conspiracy claim. As noted above, the Second Circuit requires that a complaint asserting a RICO conspiracy claim set forth "some factual basis for a finding of a conscious agreement among the defendants." *Hecht, 897 F.2d at 26 n.4*.

The 95 Complaint against these defendants makes few specific factual allegations to the effect that these defendants agreed to engage in illegal activity. At most, plaintiffs have provided a factual basis for finding that the Carnival Creations Defendants agreed to submit one fraudulent insurance claim. The Court already has found that this endeavor **[*141]** could not constitute a substantive RICO violation. Consequently, under the standard articulated in *Salinas, 118 S. Ct. at 477*, this Court holds that the RICO conspiracy allegations against these defendants are insufficient and dismisses this claim against them.

## 4. RICO Statute of Limitations

Defendants contend that the RICO claims against them are barred by the applicable statute of limitations. The Court need not resolve this issue as it has dismissed plaintiffs' RICO claims against these defendants on other grounds.

## 5. Jurisdiction over State Law Claims

Defendants next contend that this Court, having dismissed plaintiffs' RICO claims against them, lacks jurisdiction over plaintiffs' remaining state law claims against them. The state law claims against these defendants arise from a single allegedly fraudulent insurance claim submitted to Chubb & Son Inc. As part of this alleged scheme to defraud, these defendants worked with defendants Rigney, M.F. Bank and

Interstate Adjusters, among others.

These state law claims appear to the Court to arise from essentially the same case and controversy as the RICO claims asserted against defendants still party **[*142]** to this action. The Court declines, therefore, to dismiss the state law claims against these defendants, choosing instead to assert its supplemental jurisdiction over them.

## 6. State Law Claims

Defendants next argue that the breach of fiduciary duty claim against them should be dismissed because this claim is time-barred. As the loss underlying this claim occurred in September 1989, plaintiffs' claim is timely under the applicable six-year limitations period. The Court therefore denies this portion of defendants' motion.

Defendants next argue that the claims for conversion against them should be dismissed as time-barred. For the reasons outlined above, the Court grants defendants' motion to dismiss plaintiffs' claims for conversion.

Defendants continue that plaintiffs' claim for fraud and conspiracy to commit fraud must be dismissed because it fails to adhere to the particularity requirements of *Fed. R. Civ. P. 9(b)*. As noted supra Part II.A, to comport with the requirements of *Rule 9(b)*, an allegation of fraud must allege the time, place, speaker and sometimes the content of the alleged misrepresentation. Scienter may be alleged more generally so long as **[*143]** the allegations are supported by facts giving rise to a strong inference of intent.

Viewed as a whole, the allegations against the Carnival Creations defendants comport with the requirements of and the purposes underlying *Rule 9(b)*. Plaintiffs allege that these defendants received $ 430,888 in settlement of a fraudulent claim. (See 95 Compl. PP 150, 156.) The Public Adjuster on the claim, in pleading guilty to mail fraud, specifically stated that that amount represented an inflated loss. (See *id. P 156*.) Plaintiffs further allege that to obtain this settlement, defendant Klein, in his capacity as President of Carnival Creations, signed a sworn proof of loss in the allegedly inflated amount of $ 430,888. (See *id. P 155*.) This proof of loss was submitted to Chubb & Son Inc. via the mail on or about January 15, 1990. (See *id.*) These allegations, in particular the testimony of the Public Adjuster, strongly suggest that these defendants participated in the scheme and therefore had the requisite intent. (See *id. PP 150, 156*.) Accordingly, these allegations set forth

the necessary particulars of a fraud claim and are plainly sufficient to give the Carnival Creations Defendants **[*144]** adequate notice of the misrepresentation with which they are charged. Defendants' motion to dismiss the Seventh Claim for Relief is denied.

Finally, the Carnival Creations Defendants assert that plaintiffs have failed to state a cause of action for inducing breach of fiduciary duty. Plaintiffs allege all of the defendants insureds induced such breaches by entering into arrangements to pay bribes to the Claims Representatives and Experts. See *id. P 219*.) Plaintiffs' allegations against these particular defendants, however, are devoid of any allegation that they bribed a Claims Representative or Expert. Only the Public Adjuster on the Carnival Creations claim allegedly received a "cash payment" for inflating this claim. (See *id. P 156*.) This allegation does not sustain a claim for inducing a breach of fiduciary duty against these defendants. Count Eight of the complaint against the Carnival Creations Defendants is therefore dismissed.

## H. *Rich & Simon (95 Complaint)*

Defendants Rich & Simon and Robert M. Simon (the "Rich & Simon Defendants") contend that the Court should dismiss plaintiffs' complaint for the following reasons: (1) plaintiffs' **[*145]** RICO claims are defective because they do not properly plead the elements of an enterprise; (2) plaintiffs' allegations do not demonstrate that defendants operated or managed the alleged enterprises; (3) plaintiffs have failed to adequately plead a pattern of racketeering activity; (4) plaintiffs' RICO claims are barred by the statute of limitations; (5) the RICO conspiracy charge is barred by the doctrine of intra-corporate conspiracy; and (5) Rich & Simon owed no fiduciary duty to plaintiffs.

### 1. Enterprise Allegations

These defendants argue that the RICO allegations against them are insufficient because plaintiffs' enterprise pleadings are insufficient. Defendants challenge the sufficiency of the enterprises alleged in Counts One, Two, Five and Six of the 95 Complaint. As set forth supra Part I.E, the Court already has found that plaintiffs adequately pleaded the enterprises in Counts One, Two and Five. Although the Court has dismissed Count Six with leave to replead, it notes that that claim merely incorporates the enterprises alleged in the previous Counts. Accordingly, the Court denies defendants' motion to dismiss insofar as it is based on the argument that plaintiffs **[*146]** have failed to

adequately plead their RICO enterprises.

### 2. The *Reves* Test

Defendants argue that plaintiffs have not demonstrated that they operated or managed the enterprises in Count One, Two and Five of the 95 Complaint. Turning first to the enterprises in Counts One and Two, in the Court's view, plaintiffs allegations against these defendants clearly demonstrate that they operated or managed those association-in-fact enterprises as lower-rung participants following the instructions of the upper-level participants.

The 95 Complaint repeatedly shows that these defendants prepared false reports to substantiate fraudulent claims at the behest of the Claims Representatives at Chubb & Son Inc. or the Public Adjusters. (See 95 Compl. PP 87-88, 97, 100, 115-16, 141.) These defendants did more than blindly follow orders, however, they also participated in a significant sense in the determinations concerning the extent to which a claim should be inflated. (See *id. PP 88, 102*.) Thus, under the standard discussed above, these lower-rung participants had some part in directing the affairs of the association-in-fact enterprises in Counts One and Two of the **[*147]** 95 Complaint.

Whether plaintiffs have shown that these defendants operated or managed the Chubb enterprise in Count Five presents a closet question. As discussed above in the context of the motion to dismiss filed by James Kelleher and Prime Decisions, these Expert defendants represent outsiders to the Chubb enterprise. Thus, plaintiffs may show they operated or managed that enterprise only if these defendants exerted control over it in some way.

Like James Kelleher and Prime Decisions, these Experts did not exert such control by making bribes. Moreover, as was the case with James Kelleher, the allegations in the 95 Complaint do not conclusively establish that these defendants controlled the Chubb enterprise. Indeed, in connection with the L.J. Simone claim, the 95 Complaint alleges that Addesa, a Chubb & Son Inc. Claims Representative, revised defendant Simon's estimate of the business interruption loss. (See 95 Compl. P 115.) Nevertheless, plaintiffs allege that they relied on the expert reports of these defendants in assessing whether to pay a settlement on a claim. (See *id. P 8*.) Thus, the Court declines to dismiss plaintiffs' complaint on this ground at this time. The **[*148]** Court so holds, however, recognizing that further factual development on this issue may in fact establish that

defendants did not control the Chubb enterprise in any significant sense.

### 3. Pattern Requirement

Defendants' next contention is that the RICO allegations them against them are insufficient because plaintiffs have failed to adequately plead a pattern of racketeering activity. Specifically, defendants argue that the plaintiffs have failed to demonstrate continuity or the threat of continuity.

According to the 95 Complaint, these defendants are experts who are alleged to have participated in the fraudulent claims submitted by Irving Tanning, L.J. Simone, United Utensils and Venus Trimming & Binding, among others. (See 95 Compl. at 22.) These events took place over an 11-month period.

Defendants argue that they cannot be said to have engaged in a pattern of racketeering activity because they are alleged to have participated in only a limited number of fraudulent claims over a short period of time. Defendants correctly note that, HN53[↑] generally speaking, "acts extending over a few weeks or months" do not satisfy the pattern [*149] requirement. H.J., Inc., 109 S. Ct. at 2902. However, when conduct alleged in a complaint is that which threatens future criminal conduct, RICO's pattern requirement is satisfied. See id.

As stated previously, in considering whether a threat of continuity exists, a court may look to see whether external facts "amplify the full character of the predicate acts and thus provide[] sufficient evidence that those predicate acts entail a threat of continuity sufficient to support a finding of a RICO pattern." Kaplan, at 543. Here, the defendants are alleged to have facilitated multiple fraudulent claims. Their participation in these claims is alleged to have been integral to the success of the various frauds set forth in the complaint. (See, e.g., 95 Compl. PP 10, 26.) Moreover, these defendants are alleged to have had close and ongoing relationships with the alleged leaders of the schemes to defraud. (See, e.g., id. PP 25-26, 88.) Defendant Seymour Berson, a Public Adjuster, testified at the trial of James Kelleher that he "frequently" bribed defendant Simon. (See id. P 88.) The 95 Complaint also reveals that defendant Simon and his partner, [*150] Edward Rich, have both pleaded guilty to mail fraud in submitting fraudulent insurance claims not at issue in this litigation. (See id. P 26.) The Court concludes that these allegations, when read in the overall context of the complaint, are adequate to plead a threat of continuity.

### 4. Statute of Limitations

#### a. RICO Claims

As noted above, the Rich & Simon Defendants are Expert Defendants named in the 95 Complaint. (See 95 Compl. PP 25-26.) The 95 Complaint includes allegations that they participated in the submission of four fraudulent claims to Chubb & Son Inc. in 1989. (See id. at 22.) Defendants argue that plaintiffs' complaint, which was filed in March 1995, must be dismissed on timeliness grounds.

Plaintiffs' RICO claims will be dismissed if plaintiffs had inquiry notice of defendants' frauds at some point more than that years before they commenced suit (i.e., before March 1991) and then failed to exercise due diligence in discovering the fraud. As noted above in the context of James Kelleher's motion to dismiss, (see supra Part IV.F.1), plaintiffs' allegations concerning the January 1989 United Utensils claim, the Irving Tanning [*151] claim and the L.J. Simone claim raise serious questions concerning the timeliness of plaintiffs' complaint. These defendants raise additional questions in this regard by stating in their brief that "media reports, criminal indictments of the various defendants, and the intensive independent investigations into these scheme funded by insurance companies such as Chubbs should have put plaintiffs on notice of the alleged frauds before May of 1991. (See Rich & Simon Mem. Supp. Mot. Dismiss at 29.) Nevertheless, such material is outside the scope of this motion and based on the limited factual development on the statute of limitations issue, the Court declines to dismiss plaintiffs' RICO claims on this ground. The Court notes, however, defendants are not precluded from raising this defense in a subsequent summary judgment motion.

#### b. State Law Claims

Defendants argue that plaintiffs' conversion and breach of fiduciary duty claims are untimely. For the reasons outlined above, the Court dismisses plaintiffs' claims for conversion. Defendant's statute of limitations argument regarding this claim is, therefore, moot.

As for the defendants' argument regarding the [*152] breach of fiduciary duty claim, as noted above, this claim is governed by a six-year limitations period. All of the insurance claims underlying plaintiffs' breach of fiduciary duty claim arose from losses that occurred in

1989. [33] To the extent that plaintiffs seek to recover for a breach of fiduciary duty arising from the December 1989 United Utensils loss, their claim is clearly timely. The Court assumes that plaintiffs also base this claim on defendants activities in connection with the claims submitted for the three other losses. Absent additional evidence concerning when these alleged breaches of duty took place and when plaintiffs had actual or constructive knowledge of the breaches, the Court cannot conclusively determine that any of these claims should be time-barred. The Court therefore denies this portion of defendants' motion.

**[*153]  5.** Intracorporate Conspiracy Doctrine

Defendants next contend that plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine. Under the intracorporate conspiracy doctrine, a corporation may not conspire with its own officers or directors. See *Rush v. Oppenheimer & Co., Inc., 628 F. Supp. 1188, 1198 n.5 (S.D.N.Y. 1985)*.

Defendants' argument need not detain the Court long. These defendants did not work for or in a corporation. Instead, they were members of a partnership. (See 95 Compl. PP 25-26.) *HN54*[⬆] The Second Circuit has held that the intracorporate conspiracy doctrine does not apply to partnerships. See *New York v. 11 Cornwell Co., 695 F.2d 34, 41 (1982)*, mod. on other grounds, *718 F.2d 22 (2d Cir. 1983)*. As the Court of Appeals explained:

> certain courts have stated that there is no conspiracy when two or more agents of a corporation take action on behalf of the corporation. But this reasoning does not apply at all to a partnership. A corporation is a distinct and fictional legal entity; a partnership is not distinct from its members at all.

Id. (citations omitted).

Thus, the Court rejects **[*154]** defendants' contention that the RICO conspiracy claims against them are barred by the intracorporate conspiracy doctrine. This portion of defendants' motion, therefore, is denied.

6. Fiduciary Duty

Defendants' final contention is that the breach of fiduciary duty claim against them should be dismissed

because they did not owe plaintiffs any such duty. Defendants argument in this regard is virtually identical to that asserted by James Kelleher and Prime Decisions. As with the claim against those defendants, plaintiffs' allegations the Rich & Simon Defendants are sufficient to survive a motion to dismiss for they allege an ongoing relationship between plaintiffs and defendants in which plaintiffs relied upon defendants' expertise in assessing business interruption losses. (See, e.g., 95 Compl. PP 14, 219.) Accordingly, the Court denies defendants' motion to dismiss Count Eight of the 95 Complaint.

I. *Louis Rosenkranz (95 Complaint)*

Defendant Louis Rosenkranz contends that the Court should dismiss the complaint against him primarily for the following reasons: (1) plaintiffs have not demonstrated that he operated or managed any of the relevant enterprises; (2) **[*155]** plaintiffs have failed to allege the requisite pattern of racketeering activity (3) the state law claims against him must be dismissed for lack of jurisdiction; and (5) the conversion and breach of fiduciary duty claims are barred by the statute of limitations. Defendant Louis Rosenkranz also seeks to have plaintiffs' request for punitive damages in connection with their RICO claim stricken from the 95 Complaint.

1. The *Reves* Test and the Pattern Requirement

Defendant Louis Rosenkratz first argues that the RICO claims against him must be dismissed because plaintiffs have not adequately alleged that he operated or managed any of the relevant enterprises and they have failed to show that he engaged in a pattern of racketeering activity. The Court agrees.

Louis Rosenkranz was allegedly a principal and senior officer of United Utensils Co., Inc., one of the commercial insureds in this action. (95 Compl. P 28.) As such, plaintiffs implicate defendant in three of the fraudulent claims underlying plaintiffs' cause of action. (See *id. at 22*.)

The specific allegations against Louis Rosenkranz in the 95 Complaint are sparse. They include four general allegations **[*156]** (See *id. PP 29, 60, 76, 107)*, and two specific allegations regarding defendant's involvement in two alleged fraudulent insurance claims submitted in 1989, (see  *id. PP 92, 106)*. Both specific allegations regarding Louis Rosenkranz assert that on two occasions, he provided his son, defendant Alan Rosenkranz, with money to bribe Expert, Salvor and

---

[33] These losses include the January 1989 United Utensils loss, the February 1989 L.J. Simone loss, the March 1989 Irving Tanning loss and the December 1989 United Utensils loss.

Public Adjuster defendants.

These allegations clearly do not satisfy the <u>Reves</u> management or operation test. Plaintiffs do not allege that Louis Rosenkranz participated in any decision to inflate a claim, or that he in any way assisted in submitting a fraudulent claim. Rather, the 95 Complaint plainly reveals that it was his son Alan Rosenkranz who was deeply enmeshed in the alleged racketeering activity. The Court cannot see how this defendant exerted any control over any of the alleged enterprises simply by providing his son with funds for bribes that apparently were prearranged. (See <u>id. P 106</u>.)

Similarly, as plaintiffs have alleged no fact suggesting that Louis Rosenkranz was anything more than an after-the-fact source of financing for his son's wrongdoings, the Court cannot infer **[*157]** that his actions on two occasions within one year posed a threat of continuing criminal activity. As a result, the Court concludes that the pleadings against this defendant are insufficient to sustain the substantive RICO charges against him. The Court, therefore, grants defendant's motion to dismiss plaintiffs' substantive RICO claims.

2. <u>RICO Conspiracy</u>

Louis Rosenkranz next contends that the RICO conspiracy allegations against him are insufficient and should be dismissed. Plaintiffs offer no allegations to the effect that Louis Rosenkranz, as opposed to his son, entered an agreement to inflate any of the claims at issue. No basis exists for a finding that this defendant committed to a criminal endeavor which, if completed, would constitute a RICO violation. Plaintiffs' RICO conspiracy claim against Louis Rosenkranz is dismissed.

3. <u>Statute of Limitations</u>

Louis Rosenkranz also contends that RICO's four-year statute of limitations bars the RICO claims against him. As the Court has dismissed the RICO claims against this defendant on other grounds, it need not reach this issue.

4. <u>Jurisdiction Over State Law Claims</u>

The defendant contends that plaintiffs' **[*158]** state law claims against him should be dismissed because the Court no longer retains jurisdiction over these claims. As discussed at greater length <u>supra</u> Part III.A, the Court will retain supplemental jurisdiction over the state law claims against Louis Rosenkranz if they arise from the

same case or controversy as the claims providing the basis for this Court's original federal jurisdiction in this action.

The state law claims against Louis Rosenkranz arise from the same case or controversy as the RICO claims asserted against defendants Addesa and Alan Rosenkranz, among others. Indeed, it is impossible to understand the state law charges against Louis Rosenkranz without also explaining the scheme by RICO defendants to engage in insurance fraud. Consequently, the Court will exercise its supplemental jurisdiction over the state law claims asserted against Louis Rosenkranz.

5. <u>Statute of Limitations</u>

Defendant Louis Rosenkranz's final argument in support of his motion to dismiss is that the conversion and the inducing, aiding and abetting a breach of fiduciary duty claims are time-barred. The Court already has dismissed plaintiffs' claims for conversion. Defendant's statute **[*159]** of limitations argument regarding this claim is, therefore, moot.

As discussed <u>supra</u> Part III.C.1, a six-year statute of limitations applies to plaintiffs' claim against defendant for inducing, aiding and abetting a breach of fiduciary duty. The 95 Complaint only links Louis Rosenkranz to claims arising from losses in January 1989 and December 1989.

Any breach of fiduciary duty claim arising from the December loss is timely. However, the Court cannot discern from plaintiffs' allegations when Louis Rosenkranz gave his son money to pay the alleged bribes in connection with the January 1989 claim, or when those bribes were in fact paid. Thus, the resolution of defendant's statute of limitations argument with regard to those allegations must await further factual development.

6. <u>Punitive Damages</u>

Defendant argues that plaintiffs' demand for punitive damages under RICO should be stricken. This Court's decision to grant defendant's motion to dismiss the RICO claims against him is dispositive of this motion.

J. <u>*Alan Rosenkranz (95 Complaint)*</u>

Defendant Alan Rosenkranz has argued that the Court should dismiss the complaint against him because (1) plaintiffs **[*160]** have failed to adequately allege the existence of a RICO enterprise; (2) plaintiffs have not

1998 U.S. Dist. LEXIS 22542, *160

demonstrated that defendant engaged in a pattern of racketeering activity; (3) plaintiffs' RICO claims are time-barred; and (4) the Court lacks jurisdiction over any remaining state law claims.

## 1. RICO Enterprise

As discussed supra Part I.E, the Court has found that plaintiffs have adequately alleged the existence of the RICO enterprises in the 95 Complaint. Accordingly, defendant Alan Rosenkranz's motion to dismiss on this ground is denied.

## 2. Pattern of Racketeering Activity

Defendant contends, without significant elaboration, that plaintiffs have failed to plead a pattern of racketeering activity against him. The Court disagrees. In the 95 Complaint, plaintiffs allege that defendant participated in the inflation of three different claims submitted on behalf of United Utensils over a span of over three years. (See 95 Compl. P 61-63.) Defendant pleaded guilty to mail fraud in connection with one of those claims, (see id. P 63), and allegedly submitted fraudulent proofs of loss and paid bribes on all three of the claims, (see id. PP 73, 77, 85, 91, 92, 95, 104-06.) **[*161]**

These predicates clearly demonstrate relatedness in that they involved the same participants, victims, methods of operation and results. Moreover, as discussed supra Part I.D.2, numerous predicates spanning over three years demonstrate the requisite continuity to support a RICO claim. Plaintiffs allegations are plainly sufficient to establish a pattern of racketeering activity against this defendant. Accordingly, defendant's motion to dismiss on this ground is denied.

## 3. RICO Statute of Limitations

Defendant argues that the RICO claims against him are time-barred because plaintiffs should have discovered their injuries resulting from the United Utensils claims-- the last of which arose from a December 1989 loss--at some point before March 1991. As noted above in the context of James Kelleher and Prime Decisions' motion to dismiss, certain of plaintiffs' factual allegations concerning the January 1989 United Utensils claim suggest that plaintiffs might have had inquiry notice of defendant's fraud before that date. Nevertheless, the resolution of the statute of limitations issue must await further factual development. The Court declines to dismiss the complaint against **[*162]** this defendant on statute of limitations grounds at this juncture.

## 4. State Law Claims

Defendant contends that this Court lacks jurisdiction over the state law claims against him because plaintiffs' RICO claims are insufficient. As the Court has denied defendant's motion to dismiss the RICO claims, however, it retains supplemental jurisdiction over the state law claims asserted against him.

## K. *Steven Chernoff (95 Complaint)*

Defendant Steven Chernoff argues that the Court should dismiss plaintiffs' complaint against him for six reasons: (1) the 95 Complaint fails to allege a pattern of racketeering activity against him; (2) the 95 Complaint fails to plead fraud with particularity; (3) the 95 Complaint fails to plead proper association-in-fact enterprises; (4) plaintiffs have failed to show that defendant operated or managed the Chubb enterprise as required under Reves; (5) the RICO conspiracy claim is inadequate; and (6) plaintiffs' state law claims must be dismissed. Chernoff also argues that plaintiffs are not entitled to punitive damages.

## 1. Pattern of Racketeering Activity

Defendant's first contention is that the pleadings against him do not **[*163]** set forth allegations that, if proven, would establish that he engaged in a pattern of racketeering activity. Specifically, Chernoff argues that his participation in the submission of a single alleged false claim does not represent continuity or the threat of continuity as required under RICO.

At the time of the relevant events in the 95 Complaint, defendant Chernoff was "the principal and senior officer of Helene Undergarment, Inc." ("Helene Undergarment"). (95 Compl. P 31.) The complaint against Chernoff stems from a claim submitted by Helene Undergarment for hurricane damage sustained by five of the company's manufacturing facilities in Puerto Rico. (See id. P 125.) Plaintiffs contend that the losses Helene Undergarments sustained were fraudulently inflated. (See id. P 126.) Chernoff allegedly committed the predicate acts set forth in the following allegation:

> Defendant Chernoff, in his capacity as Helene's President and Chief Executive Officer, signed two proofs of loss in connection with the inventory claim, one on October 31, 1989 and the other on January 9, 1990. Chernoff, on information and belief, also authorized the payment of bribes to Kelleher and Rigney, **[*164]** and participated in the

preparation of fraudulent claim documents setting forth the extent of the inventory and inventory damage that allegedly existed.

(Id. P 130.)

Chernoff argues that a single claim, the work for which too, place during a three-month period, cannot give rise to a finding of a pattern under RICO. As explained supra Part I.D.2, the Court must utilize a contextual approach to discern whether a RICO pattern exists.

Looking at the entire context of the complaint against Chernoff, the Court concludes that plaintiffs have failed to adequately allege that this defendant engaged in a pattern of racketeering activity. Nothing in the 95 Complaint suggests that Chernoff's acts posed a threat of continuity. He participated in a single act of alleged fraud in submitting an insurance claim. He is not alleged to be a member of a legitimate enterprise that is regularly engaged in racketeering or fraud, nor do his activities demonstrate an "inherently unlawful" nature that the Second Circuit has found poses a threat of continuity. Moreover, plaintiffs have not alleged any "external facts" which support a finding that Chernoff's activities posed a threat of continuity. [*165] The Court, therefore, dismisses the RICO claims against the defendant Chernoff for failure to plead a pattern of racketeering activity.

2. Particularity of Fraud Claims

The defendant Chernoff's next contention is that the fraud allegations against him should be dismissed because they are pleaded with insufficient particularity under Rule 9(b). As discussed supra Part II.A, pursuant to Rule 9(b), allegations of fraud must allege the time, place, speaker and, sometimes, the content of the alleged misrepresentations. Scienter may be averred generally, but a plaintiff must articulate some factual basis providing a strong inference of intent.

The Court finds that the 95 Complaint states the allegations of fraud against Chernoff with particularity. Plaintiffs allege that Chernoff signed two proofs of loss-- one in October 1989 and one in January 1990--that contained inflated figures. (See 95 Compl. P 130.) One, and in all likelihood both, of these documents were sent to Chubb & Son Inc.'s office in New York. (See id. P. 127.) These allegations give adequate notice to defendant of the time, place, speaker and content of the purported misrepresentations.

The factual allegations [*166] also generate a strong

inference of fraudulent intent. Defendants correctly point out that two factual allegations supportive of such an inference--the claims that Chernoff conspired with others to inflate the claim and that he authorized bribes paid to defendants Kelleher and Rigney--are made on information and belief. (See id. P 130.) As a general rule, allegations of fraud pleaded on "information and belief" will not satisfy the particularity requirements of Rule 9(b). See Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 999 n.1 (2d Cir.), cert. denied, 488 U.S. 852, 102 L. Ed. 2d 109, 109 S. Ct. 137 (1988).

Nevertheless, other factual allegations in the 95 Complaint that are not made on information and belief generate the requisite inference of fraudulent intent. In particular, defendant Kelleher pleaded guilty to mail fraud in connection with this claim and admitted in his allocution that he caused "false and fraudulent representations" to be made to Chubb & Son Inc. concerning the extent of the loss that Helene Undergarment suffered. (95 Compl. P 127.) The mailing underlying this conviction was Chernoff's January 1990 proof of loss. (See id. [*167] ) Chernoff and Helene Undergarments obviously stood to benefit from this inflated settlement. Defendant's contention that he was the unwitting participant in a scheme devised by the Public Adjuster and Claims Representative appears, to the Court, to be counterintuitive. Making all inferences in favor of plaintiffs in this instance, the Court denies defendant's motion to dismiss the complaint against him for failure to plead fraud with the requisite particularity.

3. RICO Enterprise

Defendant Chernoff next argues that the enterprise allegations against him are insufficient. Defendant argues that the complaint does not sufficiently allege the existence of any of the association-in-fact enterprises. As the Court has held that plaintiffs have adequately pleaded the association-in-fact enterprises in the 95 Complaint, defendant's motion to dismiss the complaint on this ground is denied.

4. The Reves Test

Next, defendant contends that he has not been alleged to have conducted the affairs of the Chubb enterprise as required under Reves. As the Court has dismissed the substantive RICO claims against this defendant on another ground, it need not address the Reves [*168] issue.

5. RICO Conspiracy Claim

1998 U.S. Dist. LEXIS 22542, *168

Chernoff's next claim is that the RICO conspiracy claim against him is insufficient. The Court agrees. The 95 Complaint alleges on information and belief that defendant Chernoff conspired with others to inflate one claim. For the reasons articulated above, the activities in connection with the submission of this one claim do not constitute a RICO violation. This conclusory allegation of conspiracy therefore falls far short of showing that Chernoff committed to a criminal endeavor which, if completed, would satisfy all of the elements of a RICO violation. See *Salinas, 118 S. Ct. at 477*. The Court therefore dismisses the RICO conspiracy claim against defendant Chernoff.

6. State Law Claims

Defendant next argues that the state law claims against him must be dismissed because: (a) the complaint fails to plead fraud with particularity; (b) the complaint fails to properly allege inducing a breach of fiduciary duty; (c) the complaint does not properly allege an actionable conversion; and (d) the state law claims are not within the jurisdiction of this Court. The Court addresses these arguments in turn below.

The defendant **[*169]** first argues that the complaint against him fails to plead common law fraud with particularity. As discussed in greater length above, however, the Court concludes that the complaint does plead fraud with particularity against Chernoff and, therefore, does not dismiss this claim against him.

Next, defendant contends that the complaint fails to properly allege a claim for inducing or aiding and abetting a breach of fiduciary duty. Plaintiffs generally allege that defendant knowingly induced, aided and abetted such a breach by paying bribes to Claims Representatives and Experts. The specific allegations against Chernoff, however, state that he authorized payment of a bribe to defendant Kelleher, a Claims Representative, and defendant Rigney, a Salvor. Under the terms of Count Eight, only the alleged bribe to Kelleher could support this claim. Accepting as true that Chernoff knowingly authorized payment of a bribe to Kelleher to induce Kelleher to breach his fiduciary duty to his employer by misrepresenting a loss and procuring an inflated settlement on a claim, plaintiffs have sufficiently alleged a claim for inducing or aiding and abetting a breach of fiduciary duty against Chernoff.

**[*170]** Defendant's next assertion is that the conversion claim against him should be dismissed. For the reasons outlined above the Court grants defendant's motion and dismisses plaintiffs' claims for conversion.

Finally, defendant argues that, because this Court has dismissed the RICO charges against him, the Court lacks subject matter jurisdiction over his claims. The Court will retain supplemental jurisdiction over the state law claims against Chernoff if they form part of the same case or controversy as the claims providing the basis for this Court's original federal jurisdiction in this case.

Looking at the allegations against Chernoff in the context of the overall complaint, the Court concludes that the state law claims against Chernoff arise from the same case or controversy over which it has original subject matter jurisdiction. To be sure, the case against Chernoff is inextricably intertwined with a portion of the RICO case against the defendant Rigney. The Court, therefore, retains supplemental jurisdiction over the state law claims against Chernoff.

7. Punitive Damages

Defendant next argues that plaintiffs' demand for punitive damages under RICO should be stricken. **[*171]** As the Court grants defendant's motion to dismiss the RICO claims against him, the Court need not consider this application.

L. *Jerry Clair, Stanley Sloan, Venus Trimming & Binding, Inc. (95 Complaint)*

Defendants Jerry Clair, Stanley Sloan and Venus Trimming (the "Venus Trimming Defendants") contend that the Court should dismiss the complaint against them for seven reasons: (1) the 95 Complaint does not allege a pattern of racketeering against them; (2) the RICO claims are not pleaded with particularity; (3) the 95 Complaint fails show that they managed or operated any of the relevant RICO enterprises; (4) the RICO conspiracy claim is inadequate; (5) plaintiffs' RICO claims are barred by the statute of limitations; (6) plaintiffs' demand for punitive damages must be dismissed; and (7) plaintiffs' state law claims are defective.

1. Pattern of Racketeering

The Venus Trimming Defendants first contend that the RICO claims against them should be dismissed because the plaintiffs have failed to properly allege that they engaged in a pattern of racketeering activity. Specifically, defendants argue that the allegations against them are insufficient to establish continuity **[*172]** or a threat of continuity.

Applying the contextual approach to this issue described

in length _supra_ Part I.D.2, the Court concludes that plaintiffs have failed to adequately allege that these defendants engaged in a pattern of racketeering activity. Jerry Clair and Stanley Sloan were, respectively, the Chairman of the Board and the President of Venus Trimming and Binding, Inc. at the time of the relevant events in the 95 Complaint. (See 95 Compl. P 33.) The Venus Trimming Defendants are named in this action for their role in submitting one purported inflated claim to Chubb & Son Inc. arising from a fire at a manufacturing facility on April 13, 1989. (See _id. P 158._)

Nothing in the 95 Complaint against these defendants suggests that their acts posed a threat of continuity. They participated in the submission of one fraudulently inflated insurance claim. All of the relevant events in connection with this claim took place over a period of months. These defendants are not alleged to be members of a legitimate enterprise that was regularly engaged in racketeering activity or fraud, nor do their activities represent the type of "inherently unlawful" activity the Second Circuit **[*173]** has found poses a threat of continued criminal activity by its very nature. Similarly, the 95 Complaint contains no "external facts" that would support a finding that these defendants' activities represented anything more than an isolated instance of criminal activity. The Court, therefore, dismisses the substantive RICO claims against the Venus Trimming Defendants.

## 2. Particularity of RICO Fraud Claims

The Venus Trimming defendants' next contention is that the RICO claims against them should be dismissed because they are pleaded with insufficient particularity. The Court denies defendants' motion to dismiss on this ground. The 95 Complaint makes the requisite allegations of time, place, speaker and content of misrepresentation in regard to the proofs of loss signed by defendants Sloan and Clair and submitted to Chubb & Son Inc. (See _id. PP 161, 167._) Moreover, the allegations against the Venus Trimming Defendants, when viewed as a whole, generate a strong inference of fraudulent intent. In particular, the Court notes that the Claims Representative on this claim, defendant Addesa, admitted to United States Postal Inspection Service investigators that this claim was inflated. **[*174]** (See _id. P 166._) Defendants Sloan and Clair both executed proofs of loss in which they attested to the veracity of these purported inflated figures. (See _id. PP 161, 167._) Accordingly, the Court declines to dismiss the RICO claims against these defendants on this ground.

## 3. The _Reves_ Test

The defendants next argue that the allegations against them fail to properly set forth a claim that they managed or operated the affairs of any of the enterprises alleged in the complaint. The Court agrees and also dismisses the RICO claims against the Venus Trimming Defendants on this ground.

Plaintiffs advance very few specific factual allegations concerning actions taken by the Venus Trimming Defendants in submitting their inflated insurance claim to Chubb & Son Inc. Essentially, these defendants are alleged to have signed four proofs of loss verifying inflated losses and "caused" four mailings in connection with their claim. (See _id. PP 161, 167-68._) They do not appear to have participated in any making any decisions for the relevant enterprises, nor do they appear to have exercised any discretion in their activities taken on behalf of these enterprises.

Moreover, these **[*175]** defendants are not alleged to have paid any bribes. Indeed, defendant Addesa specifically stated to investigators that he received a bribe from the public adjuster on the claim--he did not mention the insured. (See _id. P 166._) Based on these allegations, the Court cannot find that defendants operated or managed any of the relevant enterprises, either as lower-rung participants acting at the direction of upper-management or as those associated with the enterprises exerting control over them through bribery. Accordingly, plaintiffs have failed to state a RICO claim against these defendants.

## 4. RICO Conspiracy Claim

Defendants next contend that the RICO conspiracy allegations against them are insufficient and should be dismissed. As noted above, although RICO conspiracy allegations need not comport with _Rule 9(b) of the Federal Rules of Civil Procedure,_ "the complaint must allege some factual basis for a finding of conscious agreement among the defendants." _Hecht, 897 F.2d at 26 n.4._ After _Salinas,_ that factual basis must show that the defendants agreed to engage in a criminal endeavor which, if completed, would satisfy all of the elements of a RICO **[*176]** violation. See _Salinas, 118 S. Ct. at 477._

In the complaint against the Venus Trimming Defendants, plaintiffs make no specific allegations that these defendants conspired with any of the other defendants, much less that they agreed to engage in conduct amounting to a RICO violation. In light of the

complete absence of a factual basis for plaintiffs' RICO conspiracy claim, the Court grants defendants' motion to dismiss the RICO conspiracy allegations against them.

5. Statute of Limitations

Plaintiffs allege that the Venus Trimming defendants submitted a single false claim in 1989, over four years before the filing of this suit. They argue that plaintiffs' RICO claims against them are therefore barred by the applicable statute of limitations. The Court declines to reach this issue as it has dismissed the RICO claims against these defendants on other grounds.

6. Punitive Damages

Defendants next argue that plaintiffs' demand for punitive damages under RICO should be stricken. As the Court grants defendants' motion to dismiss the RICO claims against them, it need not resolve this issue.

7. State Law Claims

a. Particularity **[*177]** of Common Law Fraud Claims

Defendants challenge the common law fraud claim against them, arguing that it has been pleaded with inadequate particularity. For the reasons set forth above, the Court holds that the fraud claim set forth against these defendants has been pleaded with sufficient particularity.

b. Breach of Fiduciary Duty Claim

Next, the defendants contend that the complaint fails to properly allege a claim for inducing, aiding and abetting a breach of fiduciary duty against them. In the allegations against the Venus Trimming defendants, plaintiffs do not allege that these defendants bribed anyone or that they knowingly induced or participated in a breach of any fiduciary duty in any other way. Consequently, the Court concludes that the breach of fiduciary duty claim against these defendants is deficient and dismisses this claim against them.

c. Conversion Claim

Defendants' next assertion is that the conversion claim against them should be dismissed. For the reasons outlined supra Part III.D, the Court grants defendants' motion and dismisses plaintiffs' claims for conversion.

d. Jurisdiction

Finally, defendants argue that, because this **[*178]**

Court has dismissed the RICO charges against them, the Court lacks subject matter jurisdiction over plaintiffs' state law claims against them. Looking at the allegations against the Venus Trimming Defendants in the context of the overall complaint, the Court concludes that the state law claims against them arise from the same case or controversy over which it has original subject matter jurisdiction. The case against these defendants involves virtually the same operative facts as portions of the RICO case against defendant James Kelleher. The Court, therefore, retains supplemental jurisdiction over the state law claims against the Venus Trimming Defendants.

M. Julius Templer & Elegant Knitted Headwear, Inc. (95 Complaint)

Defendants Julius Templer and Elegant Knitted Headwear the "Elegant Headwear Defendants") contend that the Court should dismiss the complaint against them primarily for the following reasons: (1) plaintiffs have failed to allege that defendants engaged in a pattern of racketeering activity; (2) plaintiffs have failed to allege defendants operated or managed the relevant enterprises; (3) plaintiffs have failed to adequately plead a RICO enterprise; (4) **[*179]** plaintiffs have failed to allege a RICO conspiracy; (5) plaintiffs' RICO claims are barred by the statute of limitations; and (6) plaintiffs' state law claims should be dismissed for lack of jurisdiction and because they are time-barred. Defendants also seek to have plaintiffs' request for punitive damages under RICO stricken from the 95 Complaint.

1. Pattern of Racketeering Activity

Defendants first contention is that the RICO claims against them should be dismissed because the plaintiffs have failed to properly allege that they engaged in a pattern of racketeering activity. Defendants argue, inter alia, that the allegations against them are insufficient to establish continuity or a threat of continuity.

At all relevant times in the 95 Complaint, defendant Templer was the President of Elegant Knitted Headwear, Inc., a New York corporation. (See 95 Compl. P 34.) Plaintiffs' RICO claims against the Elegant Headwear Defendants are predicated on their alleged participation in the submission of one inflated claim arising from a fire in the company's facility in July 1987. (See id. P 169.) All of the relevant events in connection with this claim occurred over a period **[*180]** of less than two months.

The defendants' alleged activities clearly do not demonstrate continuity. Moreover, the complaint against these defendants fails to establish that acts posed a threat of continuity. The Elegant Headwear Defendants participated in the submission of one fraudulent insurance claim. Nothing in the context of this scheme--the enterprises, the acts themselves or other external factors--suggest that these defendants' acts constituted anything other than a one-time endeavor. The Court, therefore, dismisses the RICO claims against the Elegant Headwear Defendants. [34]

### 2. The *Reves* Test

Defendants next argue that the allegations against them fail to properly set forth a claim that they managed or operated the affairs of any of the enterprises [*181] alleged in the 95 Complaint. As articulated throughout this opinion, a defendant may participate in the operation or management of a RICO enterprise by being: 1) a member of upper-management; 2) a lower-rung participant acting at the direction of upper-management who also participates in the management or decisionmaking of the enterprise, has discretion in carrying out the orders of upper-management, or otherwise provides substantial assistance to the enterprise; or 3) someone "'associated with' a RICO enterprise who exerts control over it, as for example, by bribery." *Reves, 507 U.S. at 184*.

The Elegant Headwear Defendants clearly did not hold positions in the upper-management of any of the alleged enterprises. Moreover, the specific allegations against these defendants fail to show that they satisfy the Reves test either as lower-level participants or as those associated with the enterprises. Although the allegations demonstrate that the Claims Representative, Expert and Salvor defendants worked in tandem to effectuate a scheme to inflate a claim through the submission of fraudulent reports and estimates, the only acts attributed to the Elegant Headwear Defendants [*182] in the perpetuation of this scheme involved the execution of two proofs of loss. (See 95 Compl. P 178.) Defendant Kelleher, the Claims Representative on the claim, told investigators that he inflated the claim with the Public Adjustor and that that adjustor paid him a bribe. (See *id. P 177*.) These allegations provide an insufficient basis

for a finding that these insureds had some role in directing the relevant enterprises. The Court therefore dismisses the RICO claims against the Elegant Headwear Defendants on this ground. [35]

### 3. RICO Conspiracy

Defendants next contend that the RICO conspiracy allegations against them are insufficient and should be dismissed. In the 95 Complaint, plaintiffs make no [*183] specific allegations that the Elegant Headwear Defendants conspired with any of the other defendants or, more specifically, that they agreed to a criminal endeavor which, if completed, would satisfy all of the elements of a substantive RICO violation. Plaintiffs must allege some factual basis for their conclusory allegations that all of the insureds conspired to violate RICO. See *Hecht, 897 F.2d at 26 n.4*. In the light of the complete absence of such factual allegations against these defendants, the Court grants defendants' motion to dismiss the RICO conspiracy claims against them.

### 4. Statute of Limitations

The Elegant Headwear Defendants contend that the RICO claims against them are barred by the applicable statute of limitations. As the Court has dismissed these claims on other grounds, it need not consider whether they would be barred by the statute of limitations.

### 5. Punitive Damages

Defendants next argue that plaintiffs' demand for punitive damages under RICO should be stricken. The Court has dismissed the RICO claims against these defendants, thereby rendering this issue moot.

### 6. State Law Claims

Finally, defendants argue that any [*184] dismissal of the RICO charges against them deprives the Court of subject matter jurisdiction over plaintiffs' pendent state-law claims. As discussed in greater length above, the Court will retain supplemental jurisdiction over the state law claims against the Elegant Headwear Defendants if they form part of the same case or controversy as that

---

[34] Defendants also contend that plaintiffs have not properly alleged two predicate acts against them. As the Court concludes that the substantive RICO counts against them are without merit on other grounds, the Court need not reach this issue.

[35] Defendants also challenge plaintiffs' claim that they may be held liable for aiding and abetting the operation or management of a RICO enterprise. As discussed in greater length supra Part I.F.1, the Court dismisses all of the RICO aiding and abetting claims made by plaintiffs.

1998 U.S. Dist. LEXIS 22542, *184

litigated in the claims providing the basis for this Court's original federal jurisdiction in this case.

The complaint against these defendants involves the same operative facts as those underlying the RICO claims asserted against defendants James Kelleher and Rigney. The Court therefore will exercise its supplemental jurisdiction over the remaining state-law claims against the Elegant Headwear Defendants.

These defendants also argue that plaintiffs' state law claims are time-barred because they accrued almost eight years before the filing of the 95 Complaint. The state law claims against these defendants arise from the submission of one alleged fraudulent claim in 1987. (See 95 Compl. PP 169-179.) The Court recognizes the very real possibility that these claims are time-barred. However, with one exception, the Court cannot dismiss the **[*185]** state law claims on this ground in light of the limited factual development in the 95 Complaint.

The exception is plaintiffs' claim for unjust enrichment. This claim is unquestionably untimely under the applicable six-year limitations period. As the Court previously determined that plaintiffs may not invoke equitable tolling or equitable estoppel in opposition to defendants' statute of limitations argument, (see supra Part III.E), this claim is dismissed.

Finally, with regard to plaintiffs' claim against these defendants for inducing, aiding and abetting a breach of a fiduciary duty, the Court finds that plaintiffs have failed to set forth factual allegations sufficient to support this claim. Specifically, plaintiffs claim that defendants induced, aided and abetting such a breach through entering arrangements to bribe Experts and Claims Representatives. (See 95 Compl. P 219.) The 95 Complaint is devoid of any allegations that these particular defendants paid any bribes or entered any arrangements to pay bribes. Accordingly, the Court dismisses Count Eight of the 95 Complaint against the Elegant Headwear Defendants.

Conclusion

The attached chart summarizes the Court's **[*186]** rulings on the pending motions to dismiss. Except as otherwise indicated, the claims dismissed in this Memorandum and Order are dismissed without leave to replead.

SO ORDERED.

Dated: Brooklyn, New York

February 26, 1998

Carol Bagley Amon

United States District Judge

MOTIONS TO DISMISS: Chubb & Son Inc., et al. v. Kelleher et al., 92 CV 4484

Go to table2

Go to table3

**[*187]** MOTIONS TO DISMISS: Chubb & Son Inc., et al. v. Kelleher et al., 95 CV 0951

Go to table4

**[*188]**

Go to table5

**[*189]**

1998 U.S. Dist. LEXIS 22542, *189

**Table1 (**_Return to related document text_**)**

| | Enterprise | Individual Adjusters |
|---|---|---|
| (a) | JDA | Berson |
| (b) | Interstate | Greenberg, Horowitz, Davis, Zerring, Weinstock and Spira |
| (c) | G.B. Atlantic | Beckerman, Rishty |
| (d) | United Adjusters | Rishty |
| (e) | Chamlin Spitzer | Chamlin, Jacoby |

**Table1 (**_Return to related document text_**)**

---

**Table2 (**_Return to related document text_**)**

| | Count One | Count Two | Count Three | Count Four | Count Five | Count Six |
|---|---|---|---|---|---|---|
| Jerome Chamlin | Dismissed | Dismissed | Dismissed | Dismissed | Dismissed | Dismissed |
| Chamlin Spitzer Assocs. | Dismissed with leave to replead | Dismissed with leave to replead | Dismissed with leave to replead | N/A | Dismissed with leave to replead | Dismissed with leave to replead |
| M.F. Bank | Dismissed | Dismissed | Dismissed | N/A | Dismissed | Dismissed |
| George Pscherhofer | Dismissed | Dismissed | Dismissed | N/A | Dismissed | Dismissed |
| All American Poly Corp. | Dismissed | Dismissed | Dismissed | N/A | Dismissed | Dismissed |
| Joel Spira | Not dismissed | Not dismissed | Not dismissed | Not dismissed | Not dismissed | Dismissed with leave to replead |

**Table2 (**_Return to related document text_**)**

---

**Table3 (**_Return to related document text_**)**

| | Count Seven | Count Eight | Count Nine | Count Ten | Count Eleven |
|---|---|---|---|---|---|
| Jerome Chamlin | Dismissed | Dismissed | Dismissed | Dismissed | Dismissed |
| Chamlin Spitzer | Dismissed with leave to replead | Not dismissed | Dismissed | Not dismissed | Not dismissed |

Molly DiRago

1998 U.S. Dist. LEXIS 22542, *189

| Assocs. | Count Seven | Count Eight | Count Nine | Count Ten | Count Eleven |
|---|---|---|---|---|---|
| M.F. Bank | Dismissed | Dismissed | Dismissed | Not dismissed | Dismissed |
| George Pscherhofer | Not dismissed | Not dismissed | Dismissed | Not dismissed | Not dismissed |
| All American Poly Corp. | Not dismissed | Not dismissed | Dismissed | Not dismissed | Not dismissed |
| Joel Spira | Not dismissed | Not dismissed | Dismissed | Not dismissed | Not dismissed |

**Table3** (*Return to related document text*)

---

**Table4** (*Return to related document text*)

| | Count One | Count Two | Count Three | Count Four | Count Five |
|---|---|---|---|---|---|
| Jacob Adoni | Dismissed | Dismissed | N/A | N/A | Dismissed |
| James Kelleher | Not dismissed | Not dismissed | Not dismissed | N/A | Not dismissed |
| Prime Decisions | Not dismissed | Not dismissed | N/A | N/A | Not dismissed |
| Frank Klein | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Carnival Creations | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Robert Simon | Not dismissed | Not dismissed | N/A | Not dismissed | Not dismissed |
| Rich & Simon | Not dismissed | Not dismissed | N/A | N/A | Not dismissed |
| Louis Rosenkranz | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Alan Rosenkranz | Not dismissed | Not dismissed | N/A | N/A | Not dismissed |

1998 U.S. Dist. LEXIS 22542, *189

|  | Count One | Count Two | Count Three | Count Four | Count Five |
|---|---|---|---|---|---|
| Steven Chernoff | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Jerry Clair | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Stanley Sloan | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Venus Trimming & Binding | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Julius Templer | Dismissed | Dismissed | N/A | N/A | Dismissed |
| Elegant Knitted Headwear | Dismissed | Dismissed | N/A | N/A | Dismissed |

**Table4 (***Return to related document text***)**

---

**Table5 (***Return to related document text***)**

|  | Count Six | Count Seven | Count Eight | Count Nine | Count Ten |
|---|---|---|---|---|---|
| Jacob Adoni | Dismissed | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| James Kelleher | Dismissed with leave to replead | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| Prime Decisions | Dismissed with leave to replead | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| Frank Klein | Dismissed | Not dismissed | Dismissed | Dismissed | Not dismissed |
| Carnival Creations | Dismissed | Not dismissed | Dismissed | Dismissed | Not dismissed |
| Robert Simon | Dismissed with leave to replead | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| Rich & Simon | Dismissed with leave to replead | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| Louis | Dismissed | Not dismissed | Not dismissed | Dismissed | Not dismissed |

Molly DiRago

1998 U.S. Dist. LEXIS 22542, *189

|  | Count Six | Count Seven | Count Eight | Count Nine | Count Ten |
|---|---|---|---|---|---|
| Rosenkranz |  |  |  |  |  |
| Alan Rosenkranz | Dismissed with leave to replead | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| Steven Chernoff | Dismissed | Not dismissed | Not dismissed | Dismissed | Not dismissed |
| Jerry Clair | Dismissed | Not dismissed | Dismissed | Dismissed | Not dismissed |
| Stanley Sloan | Dismissed | Not dismissed | Dismissed | Dismissed | Not dismissed |
| Venus Trimming & Binding | Dismissed | Not dismissed | Dismissed | Dismissed | Not dismissed |
| Julius Templer | Dismissed | Not dismissed | Dismissed | Dismissed | Dismissed |
| Elegant Knitted Headwear | Dismissed | Not dismissed | Dismissed | Dismissed | Dismissed |

**Table5 (** *Return to related document text* **)**

---

**End of Document**

Molly DiRago